## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SUNDEEP KISHORE** | ) | |
| | ) | |
| **Plaintiff - *Pro Se*,** | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 07-1299 (RMC)** |
| | ) | **(ECF)** |
| **U.S. DEPARTMENT OF JUSTICE, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

United States Department of Justice components, the Executive Office for United States Attorneys ("EOUSA") and the Federal Bureau of Investigation ("FBI") (collectively "Defendants"), through and by undersigned counsel, hereby submit this Motion to Dismiss and for Summary Judgment pursuant to Rule12(b)(1) and 12(b)(6), and Rule 56 of the Federal Rules of Civil Procedure, on the grounds that the Court lacks jurisdiction as to the FBI, and that no genuine issue of material fact exists and Defendants are entitled to judgment as a matter of law.

Plaintiff should take notice that any factual assertions contained in the affidavits and other attachments in support of Defendants' motion will be accepted by the Court as true unless the Plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the Defendants' attachments.  *See Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992), Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit

> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits.  When a motion for
> summary judgment is made and supported as provided in this rule,
> an adverse party may not rest upon the mere allegations or denials
> of the adverse party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is a genuine issue for trial.  If the
> adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

In support of this motion, Defendants respectfully refer the Court to the accompanying Statement of Material Facts Not In Genuine Dispute, Memorandum of Points and Authorities in Support and declarations from the agencies.  A proposed Order consistent with this Motion is attached hereto.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N. W.
Washington, D.C.  20530
202-305-4851

*Of Counsel:*

Sarah Jirousek-Wint
Assistant General Counsel
Federal Bureau of Investigation

and

John F. Boseker
Attorney-Advisor
Executive Office of Untied States Attorneys

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUNDEEP KISHORE | ) | |
| | ) | |
| Plaintiff - *Pro Se*, | ) | |
| v. | ) | |
| | ) | **Civil Action No. 07-1299 (RMC)** |
| | ) | **(ECF)** |
| U.S. DEPARTMENT OF JUSTICE, et al. | ) | |
| | ) | |
| Defendant. | ) | |
| ————————————————————— | ) | |

STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to LCvR 7(h), Defendants hereby submit the following statement.

I.  Plaintiff's FOIA Requests to EOUSA

FOIA NO. 05-1036 (re: self/specific record)

1.  On March 31, 2005, EOUSA received a letter dated March 25, 2007, from "Sundeep-Kishore" via forwarding from the U.S. Attorney's Office for the Western District of Oklahoma ("USAO/WDOK"), to which office Mr. Kishore initially directed his letter.  This referenced an internal Federal Bureau of Investigation ("FBI") file number and "requested to be informed, to which U.S. Attorney, an FBI Special Agent reported to, in connection with the investigation, under this file number, and which allegedly ended on 3-1-03."  John F. Boseker Declaration ("Boseker Decl."), ¶ 6 and Exh. A.

2.  The March 31, 2005 letter was not accompanied by the required proof of identity. Therefore, EOUSA notified Mr. Kishore by letter dated April 15, 2005, that he was required to provide such proof of identity  to correct the deficiency, enclosed a form to facilitate that correction, and also advised him that it had closed  above-referenced FOIA file as a result.

1

Boseker Decl. ¶7 and Exh. B.

3. EOUSA provided Mr. Kishore with notice of his right to appeal this determination to the Department of Justice Office of Information and Privacy ("OIP") within 60 days, and the information necessary for him to exercise that right. *Id.* No documents appealing this decision were discovered. *Id.* ¶ 8.

FOIA NO. 05-2020 (re: self/specific record)

4. On April 12, 2005, EOUSA received a letter from Mr. Kishore dated March 4, 2005, in which he referenced the forwarding of his earlier letter (Exhibit A above) from the USAO/ WDOK, and sought an expedited response from EOUSA. Id. ¶ 9 and Exh. C. Again, the request sought "the name of the federal prosecutor", cited to an FBI internal file number, as well as a federal grand jury subpoena. *Id.*

5. On June 8, 2005, EOUSA received the completed certification of identity form from Mr. Kishore bearing the date of May 31, 2005, which had been sent to him in connection with FOIA No. 05-1036 above. *Id.* ¶ 10 and Exh. D.

6. By letter dated July 21, 2005, EOUSA notified Mr. Kishore that it had received his request letter, opened the above-numbered file, and was expediting efforts to locate the specific record that he sought. *Id.* ¶ 11 and Exh. E.

7. By letter dated August 8, 2005, Mr. Kishore was advised that the USAO/WDOK had searched for and located no records responsive to his request. *Id.* ¶ 12 and Exh. F. Mr. Kishore was further advised that he could appeal this determination to OIP within 60 days. *Id.*

8. By letter dated August 15, 2005, Mr. Kishore filed an administrative appeal with OIP. *Id.* ¶13 and Exh. G.

9.  By letter dated August 26, 2005, OIP notified Mr. Kishore that it had received his appeal letter on August 17, 2005, and assigned it number 05-2587.  *Id.* ¶ 14 and Exh. H.

10.  By letter dated March 2, 2006, OIP notified Mr. Kishore that EOUSA's response to his request for "the name of the federal prosecutor to whom the Federal Bureau of Investigation reported to during its investigation of you " had been correct, and affirmed that no responsive records could be located.  *Id.* ¶ 15 and Exh. I.15 and Exh. I.

FOIA NO. 06-2345 (re:  series of questions)[1]

11.  On February 6, 2006, EOUSA received a six-page letter from Mr. Kishore, again via forwarding from the USAO/WDOK to whom the letter was initially addressed, in which he sought answers to a series of questions, focused upon an FBI investigation of him.  *Id.* ¶ 16 and Exh. J.

12.  By letter dated August 2, 2006, EOUSA notified Mr. Kishore that "the Freedom of information Act only applies to records already in existence and does not require an agency to conduct research, create new records, or answer questions disguised as FOIA requests."  *Id.* ¶ 17 and Exh. K.  Mr. Kishore was advised of his right to appeal within 60 days to OIP.  *Id.*

13.  Simultaneously by letter of this same date, EOUSA suggested that  Mr. Kishore contact the FBI directly for the information that he sought through the questions, given their specific content, providing him with the address to which that request should be directed.  *Id.* ¶ 18 and Exh. L.

14.  Mr. Kishore sent an appeal letter dated August 16, 2006 to OIP regarding these EOUSA

---

[1]    The inclusion of this request and response is for the purpose of setting forth a complete record of Mr. Kishore's relationship with EOUSA.  A review of the complaint raises a question as to whether this particular request is, in fact, at issue.

determinations, which OIP received on September 22, 2006. *Id*. ¶ 19 and Exh. M.

15. By letter dated October 10, 2006, OIP notified Mr. Kishore that it had received his appeal letter and assigned it number 06-3204. *Id*. ¶ 20 and Exh. N.

16. By letter dated November 14, 2006 OIP notified Mr. Kishore that it was affirming EOUSA's response to his numerous questions posed, and recited the legal rationale therefore. *Id*. ¶ 21 and Exh. O.

FOIA NO. 07-2264 (re: self)

17. EOUSA received a letter dated May 21, 2007 from Mr. Kishore on June 4, 2007, in which reference was made to an unanswered letter dated March 2007. This letter purportedly requested information related to the afore-referenced investigation in February/March 2003. *Id*. ¶ 22 and Exh. P.

18. By letter dated July 23, 2007, EOUSA notified Mr. Kishore that he needed to provide a certification of identity and more sufficiently describe the records sought to allow for their location. *Id*. ¶ 23 and Exh. Q. He was notified that his file was being closed, and was advised of his right to appeal this determination to OIP within 60 days. *Id*.

19. Mr. Kishore filed the above-captioned action on July 23, 2007, and filed no appeal of this determination. *Id*. ¶19 and Complaint.

20. In response to a request from Mr. Boseker at EOUSA, the USAO/WDOK conducted an exhaustive search and located records responsive to Mr. Kishore's request. *Id*. ¶¶ 25-26.

21. By letter dated September 5, 2007 EOUSA notified Mr. Kishore that it had performed another search, had located records, and had made the following determinations respecting disclosure of those records: released fourteen (14) pages in their entirety, and one (1) with a

portion redacted by application of 5 U.S.C. 552(b)(5).  Privacy Act exemption 5 U.S.C.

552a(j)(2) was also applied to these records.  Respecting documents identified as originating

with the FBI, 11 pages were referred for the FBI's  review and determination regarding

disclosure, and direct response to Mr. Kishore.  *Id*. ¶ 27 and Exh. S.

22.  All of the records reviewed by EOUSA in response to Mr. Kishore's request(s) were located

in the USAO/WDOK.  The records are maintained in the Criminal Case File System

(Justice/USA-007) and in the criminal case file *State of Oklahoma v. Kishore, Sundeep.*  Two

USAO internal numbers 2005v00437, and 2003R00126 were located within the documents.  The

nature of the file was a criminal investigation and immediate declination, and response to State

subpoena in connection with its criminal prosecution of Mr. Kishore.  *Id.* ¶ 28.

## II.  Plaintiff's FOIA Requests to the FBI

Plaintiff's March 3, 2005 Request, FOIPA No. 1018793

23.  By letter dated March 3, 2005, Plaintiff submitted a request to FBI Head Quarters

("FBIHQ") for "an expedited review, of 'any and all' information vital for the best interests of my

'due-process' rights, under the F.O.I. Act, or the 'Open-Records Act.'"  Plaintiff stated in the letter

to FBIHQ that the FBI Oklahoma City Field Office ("OKFO") was in possession of the relevant

subject matter in the FBI's internal file 166C-OC-64741.  Plaintiff further advised in this letter

that he had submitted a request to the "F.B.I.'s OK City Division" of the FBI, in early December

2004, for similar records and received no response.  David M. Hardy Declaration ("Hardy

Decl.") ¶ 5 and Exh. 1.

24.  By letter dated March 11, 2005, FBI returned Plaintiff's March 3, 2005 letter notifying him

that he failed to provide sufficient information to conduct an accurate search of the Central

Records System ("CRS") at FBIHQ. The FBI requested that he provide further identifying information and that Plaintiff sign and return a penalty of perjury statement. *Id.* ¶ 6 and Exh. 2.

25. In response to FBI's March 11, 2005 letter, Plaintiff provided the requested information and perjury statement, which was signed and dated March 23, 2005. *Id.* ¶ 7 and Exh. 3.

26. By letter dated April 15, 2005, the FBI notified Plaintiff that a search of the automated indices to the CRS at FBIHQ failed to locate records responsive to his request. Plaintiff was also advised of his right to file an administrative appeal with the OIP. *Id.* ¶ 8 and Exh. 4.

27. By letter dated March 28, 2005, Plaintiff submitted a letter to OIP thanking them for interceding on his behalf with regard to his March 3, 2005 FOIA/Privacy Act request to the FBI. In this letter, he also requested that OIP intercede on his behalf with regard to his requests for records submitted to Oklahoma City Metro Violent Crimes Task Force and the Prague City Police Department. *Id.* ¶ 9 and Exh. 5.

28. By letter dated May 31, 2005, Plaintiff advised the FBI that he had not received a response to his FOIA request for a release of records concerning himself. *Id.* ¶ 10 and Exh. 6.

29. By letter dated June 6, 2005, OIP advised Plaintiff that it had considered Appeal Number 05-1481 and was affirming the FBI's "no records" response to Plaintiff for records concerning himself. OIP further informed Plaintiff of his right to seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B). *Id.* ¶ 11 and Exh. 7.

30. By letter dated June 20, 2005, Plaintiff submitted a letter to OIP stating that he had yet to receive a response from the FBI regarding his FOIA/Privacy Act request and asked that OIP intercede on his behalf. *Id.* ¶ 12 and Exh. 8.

31. By letter dated August 1, 2005, OIP responded to Plaintiff's letter dated June 20, 2005. This

letter advised Plaintiff that the FBI had responded to his March 3, 2005 request in a letter dated April 15, 2005.  Plaintiff was also advised that if he was dissatisfied with the FBI's action on his request, he could appeal again to OIP, and that his appeal was given number 05-2361. In a telephone conversation, OIP confirmed that this letter was sent in error.  OIP stated that Appeal No. 05-2361 was "closed out as not a valid appeal."  The appeal of FOIPA Request No. 1018793, dated March 3, 2005, was handled earlier in a letter dated June 6, 2005, with Appeal No. 05-1481.  *See* Hardy Decl. ¶ 11.  Plaintiff was further advised of his right to seek judicial review in accordance with 5 U.S.C. § (a)(4)(B) if he considered DOJ's action to be a denial of his appeal.  *Id*. ¶ 13 and Exh. 9.

32.  By letter dated August 15, 2005, Plaintiff submitted a letter to OIP appealing OIP's August 1, 2005 response.  *Id*. ¶ 14 and Exh. 10.  Appeal No. 05-2361, considered in the letter dated August 1, 2005, was "closed out as not a valid appeal" by OIP.  *Id*. ¶ 13.  The appeal of FOIPA Request No. 1018793, dated March 3, 2005, was handled earlier in a letter dated June 6, 2005, with Appeal No. 05-1481.  *Id.* ¶ 11.

33.  By letter dated December 14, 2005, OIP advised Plaintiff that it had received his administrative appeal and assigned it appeal number 06-0655.  *Id*. ¶ 15 and Exh. 11.  In a telephone conversation, OIP stated that on or about January 5, 2006, OIP's letter to Plaintiff, dated December 14, 2005, was returned to OIP via United States Postal Service stamped "return to sender."  Furthermore, it appears that appeal number 06-0655 was assigned in error, since the appeal of FOIPA Request No. 1018793, dated March 3, 2005, was handled earlier in a letter dated June 6, 2005, with Appeal No. 05-1481.  *Id*. ¶ 11.

Plaintiff's August 8, 2005 Request, FOIPA No. 1027586

34. By letter dated August 8, 2005, Plaintiff submitted a request to OKFO for documents related to the FBI's February 2003 investigation concerning himself. Plaintiff provided a signed and notarized verification of identity form with this request letter. *Id*. ¶ 16 and Exh. 12.

35. By letter dated August 25, 2005, the FBI acknowledged receipt of plaintiff's FOIA/Privacy Act request and assigned it FOIPA Request No.1027586. The FBI also advised Plaintiff that it was searching the indices to the CRS for the information he requested, and that he would be informed of the results as soon as possible. *Id*. ¶ 17 and Exh. 13.

35. On or about September 8, 2005, the FBI advised Plaintiff, by letter, that the material responsive to his request was exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A) and (b)(7)(C). Plaintiff was advised of his right to file an administrative appeal with OIP. *Id*. ¶ 18 and Exh. 14.

36. By undated letter, received by OIP on October 3, 2005, Plaintiff appealed FBI's September 8, 2005 decision. *Id*. ¶ 19 and Exh. 15.

37. By letter dated October 13, 2005, OIP acknowledged receipt of Plaintiff's administrative appeal and assigned it appeal number 06-0048. *Id*. ¶ 20 and Exh. 16.

38. By letter dated August 31, 2007, OIP advised Plaintiff that his request for information from the OKFO was being remanded for further processing. Plaintiff was advised that as a result of discussions between FBI personnel and OIP, it had been determined that Exemption (b)(7)(A) was "no longer applicable to withhold these records in their entireties." Plaintiff was also advised that the FBI would send any and all releasable portions of the records to Plaintiff directly and that the release of these records was subject to fees. Further, Plaintiff was advised that he could appeal any future adverse determination made by the FBI and advised of his right to seek

judicial review in accordance with 5 U.S.C. § 552 (a)(4)(B) if he was dissatisfied with OIP's action on his appeal.  *Id*. ¶ 21 and Exh. 17.

39.  By letter dated October 25, 2007, OIP advised Plaintiff that pursuant to 28 C.F.R. § 16.9(a)(3) it was vacating its decision on Appeal No. 06-0047, which was detailed in its letter to Plaintiff dated August 31, 2007.  OIP based the decision to vacate on the fact that Plaintiff had filed the instant Complaint on or about July 23, 2007.  *Id*. ¶ 22 and Exh. 18.

Plaintiff's October 17, 2005 Request, FOIPA No. 1018793-001

40.  By letter dated October 17, 2005, Plaintiff submitted a letter to the OKFO requesting "any and all records" related the FBI investigation of himself.  *Id*. ¶ 23 and Exh. 19.  This request was for the same records as the Plaintiff requested in his letter dated August 8, 2005, which was assigned FOIPA Request No. 1027586.

41.  By letter dated December 13, 2005, the FBI notified Plaintiff that the records responsive to his request were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A) and (b)(7)(C). Plaintiff was further advised of his right to file an administrative appeal with DOJ OIP.  *Id*. ¶ 24 and Exh. 20.

42.  On or about January 30, 2006, FBI's letter to Plaintiff, dated December 13, 2005, was returned to the FBI via the United States Postal Service stamped "return to sender".  *Id*. ¶ 25 and Exh. 21.

Plaintiff's January 30, 2006 Request, FOIPA Number: 1067407

43.  By letter dated January 30, 2006, Plaintiff submitted a request to the OKFO for documents concerning himself.  Plaintiff advised that he had written to the FBI several times in the last two years to no avail.  Plaintiff went on to provide an extended list of questions he had with regard to

the FBI's investigation of himself. *Id*. ¶ 26 and Exh. 22.

44. By letter dated February 14, 2006, the FBI returned Plaintiff's January 30, 2006 request and notified Plaintiff that he failed to provide sufficient information to conduct an accurate search of the CRS. The FBI also requested that he sign and return a penalty of perjury statement. *Id*. ¶ 27 and Exh. 23.

45. Plaintiff provided the requested information and the penalty of perjury statement, signed January 3, 2007. *Id*. ¶ 28 and Exh. 24.

46. By letter dated January 18, 2007, the FBI assigned FOIPA number 1067407 to Plaintiff's January 30, 2006 request and advised him that a search of the automated indices of the CRS at FBIHQ failed to locate any records responsive to his request. Further, Plaintiff was advised of his right to file an administrative appeal with OIP. *Id*. ¶ 29 and Exh. 25.

47. By letter dated March 5, 2007, Plaintiff appealed the FBI's January 18, 2007 "no records response" to OIP. *Id*. ¶ 30 and Exh. 26.

48. By letter dated April 6, 2007, OIP acknowledged receipt of Plaintiff's administrative appeal and assigned it Appeal No. 07-1001. *Id*. ¶ 31 and Exh. 27.

49. By letter dated June 19, 2007, OIP advised Plaintiff that it was affirming the FBI's "no records" response. OIP notified Plaintiff that, although the FBI could locate no records responsive to his request at FBIHQ, OIP had determined that the OKFO might have records responsive to his request. OIP directed Plaintiff to make a new request to OKFO pursuant to 28 C.F.R. §§ 16.3(a) and 16.41(a). Additionally, OIP advised Plaintiff of his right to appeal any future adverse determination made by the FBI. OIP provided the address for OKFO and advised Plaintiff of his right to seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B) if he was

dissatisfied with DOJ OIP's action on his appeal. *Id.* ¶ 32 and Exh. 28.

50. In a letter dated August 21, 2007, the FBI advised Plaintiff that they had reopened his January 30, 2006 request due to the fact that the FBI had inadvertently searched its indices for FBIHQ files only. Because of this administrative error, the FBI erroneously gave Plaintiff a "no records" response in its letter dated January 18, 2007. Furthermore, the FBI stated that records responsive to his request to the OKFO were no longer being withheld pursuant to Exemption 7(A) and that these responsive records were being scanned for processing and release to Plaintiff on a priority basis. *Id.* ¶ 33 and Exh. 29.

<u>FBI's Release of Responsive Documents to Plaintiff</u>

51. In response to Plaintiff's January 30, 2006 request, the FBI released documents to Plaintiff as an enclosure to letter dated November 19, 2007. Plaintiff was advised that 320 pages were reviewed and 308 pages were being released. The FBI also noted that information was being withheld in these responsive records pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions 2, 3, 5, 6, 7(C), 7(D), and 7(E), and that pursuant to 28 C.F.R. §§ 16.11 and 16.49, there was a fee of ten cents per page for duplication, but that no fees were assessed for the first 100 pages of material. Further, FBI requested Plaintiff to remit a check or money order payable to the Federal Bureau of Investigation in the amount of $20.80. In addition, Plaintiff was advised of his right to file an administrative appeal with OIP. *Id.* ¶ 34 and Exh. 29.

52. As of the date of this declaration, Plaintiff has failed to pay the duplication fee of $20.80 for the records responsive to his request to the OKFO and 30 days have passed since November 19, 2007, the date of the letter releasing responsive records to Plaintiff. *Id.* ¶ 35.

<u>EOUSA Referral to FBI</u>

53.  On November 7, 2007, eleven pages of material responsive to Plaintiff's request to the
Executive Office of United States Attorneys ("EOUSA") was received by the FBI via facsimile.
Information normally provided with a cover letter was instead discussed during a telephone
conversation between EOUSA and FBI.  As this material was faxed without a cover letter, no
further documentation exists.  *Id*. ¶ 36.

54.  The FBI processed the records referred to it by EOUSA on November 7, 2007, for direct
response to Plaintiff.  These records were released as an enclosure to a letter to Plaintiff dated
November 19, 2007, as part of the 308 pages of records released out of 320 pages reviewed, and
are attached to Mr. Hardy's Declaration as Exhibit 30.  *Id*. ¶ 37.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N. W.
Washington, D.C.  20530
202-305-4851

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUNDEEP KISHORE | ) | |
| | ) | |
| Plaintiff - *Pro Se*, | ) | |
| v. | ) | |
| | ) | Civil Action No. 07-1299 (RMC) |
| | ) | (ECF) |
| U.S. DEPARTMENT OF JUSTICE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

INTRODUCTION

Plaintiff sought to obtain documents, pertaining to a criminal matter with which he was charged and subsequently convicted, in possession of EOUSA and the FBI. *See* Compl. p. 1. He alleges that the Defendants have improperly withheld the records that he seeks. *See* Compl. p. 2. At this juncture, however, there is no question that Defendants, after conducting reasonable searches, have released all responsive documents found. Specifically, Plaintiff initiated this Freedom of Information Act ("FOIA") action, against EOUSA and the FBI, seeking all records concerning a murder-for-hire and embezzlement investigation in which he was believed to have been involved.[2]

Due to an administrative error and an on-going investigation, EOUSA and the FBI initially denied his request for documents. After the exchange of additional correspondence with the Plaintiff and further searches however, the two agencies located responsive documents and duly notified Plaintiff of this development via separate letters in 2007. *See* Boseker and Hardy

---

[2] The Plaintiff was ultimately tried by the local authorities in Oklahoma.

Decls. ¶¶ 27 and 34 (with Exh. 30) respectively. The Plaintiff cannot now deny that adequate searches have been conducted and all responsive, non-exempt documents have been released to him by both agencies. Additionally, the Court lacks jurisdiction as to the FBI, because Plaintiff has failed to pay for related search and copying fees, thereby failing to exhaust his administrative remedies. *See* Hardy Decl. ¶¶ 34-35. Accordingly, the Defendants are entitled to judgment as a matter of law.

## STATEMENT OF FACTS

Defendants hereby incorporate the Statement of Material Facts Not In Genuine Dispute, filed contemporaneously with this Memorandum.

## ARGUMENT

### I. Standard of Review

#### A. Lack of Jurisdiction

When reviewing a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Where a motion to dismiss, however, presents a dispute over the factual basis for the Court's jurisdiction, the Court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). "The plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C.1998).

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court

must determine whether the plaintiff has alleged sufficient facts in its complaint to state a cause of action. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court must accept all well-pleaded facts as true. *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). If, after reviewing the complaint, the Court finds "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the Court must dismiss the complaint. *Conley*, 355 U.S. 45-46. Generally Speaking, the Court should not consider matters beyond the pleadings without converting the motion for summary judgment. Fed. R. Civ. P. 12(b)(6).

### B. Summary Judgment Standard

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *Id.* at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, the Plaintiff (as the non-moving party) must present some objective

3

evidence that would enable the Court to find he is entitled to relief.  In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  477 U.S. 317, 322-23 (1986).  In *Anderson* the Supreme Court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff."  *Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir.  1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).

In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.  *See Cappabianca v. Commissioner, U.S. Customs Serv.*, 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure.  *Students Against Genocide v. Dept. of State*, 257

F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the documents in question were produced or are exempt from disclosure. *Hayden v. NSA*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *Church of Scientology v. U.S. Dept. of Army*, 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). *See also Public Citizen, Inc. v. Dept. of State*, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

## II.     Dismissal of this Action is Warranted as to the FBI Because Plaintiff Has Failed to Exhaust the Administrative Remedies Prescribed by the FOIA.

Pursuant to the FOIA, administrative remedies must be exhausted prior to seeking judicial review. *See Oglesby v. United States Dept. of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990). Here, as demonstrated below, the undisputed facts establish that Plaintiff has not exhausted his administrative remedies, which deprive this Court of subject matter jurisdiction, or alternatively entitle the FBI to judgment as a matter of law.

Under pertinent regulations a FOIA requester must satisfy the prerequisites in order for the Agency to process his or her request. 28 C.F.R. § 16.11(i)(4). Specifically, DOJ regulations,

in accordance with the FOIA, provide that agency components "shall charge for processing requests under the FOIA" and "ordinarily shall collect all applicable fees before sending copies of requested records to a requester." 28 C.F.R. § 16.11(a). When a requester has failed to pay an assessed fee, he has failed to comply with a necessary administrative requirement of the FOIA and has thereby failed to exhaust his administrative remedies. As the Court held in *Trueblood v. United States Dept. of the Treasury*, 943 F. Supp. 64, 67 (D.D.C. 1996), a plaintiff must exhaust his administrative remedies by paying any applicable fees as "a condition precedent to judicial review of a FOIA suit." *Accord Stebbins v. Nationwide Mutual Ins.*, 757 F.2d 364, 366 (D.C. Cir. 1985) (noting that "exhaustion of [administrative] remedies is required under the Freedom of Information Act before a party can seek judicial review."); *see also Center to Prevent Handgun Violence v. Department of the Treasury*, 981 F. Supp. 20, 23 (D.D.C. 1997) (finding that requester failed to exhaust administrative remedies by not paying assessed fee), *appeal dismissed*, No. 97-5357 (D.C. Cir. Feb. 26, 1997).

Moreover, a FOIA plaintiff is not relieved of his obligation to pay the assessed fee because he has subsequently filed a FOIA lawsuit. *See Pollack v. Dept. of Justice*, 49 F.3d 115, 119-20 (4th Cir. 1995) (holding that commencement of a FOIA action does not relieve requester of obligation to pay fees). Indeed, exhaustion of administrative remedies does not occur until the outstanding fees are paid. *See Trueblood*, 943 F. Supp. at 67; *see also Oglesby*, 920 F.2d at 66 (holding that exhaustion of administrative remedies occurs when "the required fees are paid or an appeal is taken from the refusal to pay fees").

A FOIA lawsuit "is subject to dismissal for lack of subject matter jurisdiction if [the plaintiff] fails to exhaust all administrative remedies." *Trueblood*, 943 F. Supp. at 67; *see also*

*Dettmann v. United States Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986); *Center to Prevent Handgun Violence*, 981 F. Supp. at 23; *Crooker v. United States Secret Serv.*, 577 F. Supp. 1218, 1219 (D.D.C. 1983). Indeed, "strict enforcement of the exhaustion doctrine is favored in FOIA cases." *Center to Prevent Handgun Violence*, 981 F. Supp. at 23. Plaintiff's failure to pay the assessed fee is therefore fatal to his claim. As the Court has concluded in a similar case:

> In a FOIA case, exhaustion of administrative remedies is a condition precedent to judicial review. *Stebbins v. Nationwide Mutual Insurance*, 757 F.2d 364, 366 (D.C. Cir. 1985). Thus, a plaintiff's FOIA claims are subject to dismissal for lack of subject matter jurisdiction if he fails to exhaust administrative remedies. *Dettmann v. U.S. Dept. of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986). Exhaustion of administrative remedies does not occur until the required fees are paid or an appeal is taken from the government's refusal to waive fees. *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 66 (D.C. Cir. 1990); *Trueblood v. U.S. Dept. of the Treasury*, 943 F.Supp. 64, 68-69 (D.D.C. 1996). In support of its motion for summary judgment, the government argues that the Court lacks jurisdiction because Jeanes failed to pay the assessed search fees and also failed to appeal the denial of his request for a fee waiver. Jeanes responds that this Court has subject matter jurisdiction because he constructively exhausted his administrative remedies when the agency did not respond to his request within the statutory period, and then only notified him of the estimated fees for processing his request after he had already filed suit. Moreover, Jeanes asserts that after the government filed its motion for summary judgment, he attempted to pay the estimated fees, but was unable to do so.
>
> The Court finds that it lacks subject matter jurisdiction over this action because there is no evidence in the record that Jeanes has properly paid the fees assessed by the agency to process his request.

*Jeanes v. U.S. Dept. of Justice*, 357 F. Supp. 2d 119, 122-23 (D.D.C. 2004). This same conclusion applies to the instant action, where Plaintiff has failed to pay the requisite fees.

In response to Plaintiff's January 30, 2006 request, the FBI released documents to Plaintiff as an enclosure to letter dated November 19, 2007. Hardy Decl. ¶34. Plaintiff was advised that 320 pages were reviewed and 308 pages were being released. *Id*. The FBI also noted that, pursuant to 28 C.F.R. §§ 16.11 and 16.49, there was a fee of ten cents per page for duplication, but that no fees were assessed for the first 100 pages of material. *Id*. Further, FBI requested Plaintiff to remit a check or money order payable to the Federal Bureau of Investigation in the amount of $20.80. *Id*. In addition, Plaintiff was advised of his right to file an administrative appeal with OIP. *Id*. and Exh. 29. As of January 4, 2008, Plaintiff had failed to pay the duplication fee of $20.80 for the records responsive to his request to the OKFO. More than 30 days have passed since November 19, 2007, the date of the letter releasing responsive records to Plaintiff. Pursuant to 28 C.F.R. § 16.11(i)(3), which provides:

> Where a requester has previously failed to pay a properly charged FOIA fee to any component or agency within 30 days of the date of billing, a component may require the requester to pay the full amount due, plus any applicable interest, and to make an advance payment of the full amount of any anticipated fee, before the component begins to process a new request or continues to process a pending request from the requester.

Therefore, Plaintiff cannot deny that he has failed to exhaust his administrative remedies pursuant to the regulations. 28 C.F.R. § 16.11(i). Accordingly, the FBI respectfully submits that the Court lacks jurisdiction in this lawsuit and that dismissal of Plaintiff's Complaint is appropriate.

## III.     Defendants are Entitled to Judgment as a Matter of Law Because Adequate Searches Were Conducted and Responsive Materials Have Been Released.

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records. *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Cleary,*

*Gottlieb, Steen & Hamilton v. Dept. of Health, et al.*, 844 F. Supp. 770, 776 (D.D.C. 1993); *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983). This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce responsive information. *Id.* at 777 n.4. An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. *Oglesby*, 920 F.2d at 68. Consistent with the reasonableness standard, the adequacy of the search is "dependent upon the circumstances of the case." *Truitt v. Dept. of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." *Steinberg v. Dept. of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent and reasonable. *Nation Magazine*, 71 F.3d at 892 n.7. Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. *Maynard v. CIA*, 986 F.2d 547, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68; *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed,

non-conclusory and submitted in good faith." *Miller*, 779 F.2d at 1383; *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980). Although the agency has the burden of proof on the adequacy of its search, the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" *Carney v. Dept. of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) (quoting *SafeCard Servs.*, 926 F.2d at 1200). Thus, once the agency has met its burden regarding adequacy of its search, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. *Miller*, 779 F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations. *See Carney*, 19 F.3d at 813; *SafeCard*, 926 F.2d at 1200; *Maynard v. CIA*, 986 F.2d 547, 559-560 (1st Cir. 1993). As discussed below, both EOUSA and the FBI meet the reasonableness standard in conducting their searches and are therefore entitled to summary judgment.

## A. Plaintiff's FOIA Requests to EOUSA

Plaintiff submitted FOIA requests for documents concerning himself, dated March 4, and 25, 2005, which sought "the name of the federal prosecutor" to whom the FBI Special Agents reported in connection with a certain investigation. *See* Boseker Decl., Exhs. A and C. The initial search performed by the USAO/WDOK located "no records responsive" to the specific request for the name of the AUSA involved in the declined prosecution and discussions with identified FBI Special Agents, nor any record "of him" (*i.e.*, Mr. Kishore). *Id.* ¶ 29. The FOIA contact at the USAO/WDOK advised that Mr. Kishore should possibly be directed by EOUSA to contact the FBI/OKC directly. *Id.*

The FOIA contact at the USAO/WDOK advised Mr. Boseker that he undertook the search in the following manner, as documented (*i.e.*, "Certification of Search") within the

EOUSA file identified to this number, and of which EOUSA was advised on or about July 22, 2005:  the name searched under was "Mr. Sundee-Kishore", and the FBI internal file number through use of the EOUSA computer systems LIONS and PROMIS, (which databases track all cases within a given USAO by defendant's name, and district court/USAO internal case numbers), and a manual review of card file indexes, (which track records and case files prior to the creation of these computer database systems).  *Id.* ¶ 30.  Further, there was no record of such file having been sent to the Federal Records Center ("FRC") via a search of the log of cases shipped and maintained in the USAO, or any evidence that records had been destroyed.  *Id.* Finally, the FOIA contact telephoned the Lead Legal Assistant in the USAO Criminal Division regarding whether or not there was a record of any file, which also resulted in nothing being located.  *Id.*  Mr. Boseker noted that

> It appears from a review of the documentation provided by the USAO/ WDOK that upon receipt of Exhibit J [], the "list of questions" later forwarded to EOUSA, the FOIA contact undertook another search for records and located, after e-mailing various Criminal Division persons in the USAO, that a misspelling had occurred in Mr. Kishore's name (*i.e*., "Shundeep-Kishore") as the result of a communication between the District Attorneys Office for Oklahoma County and the USAO containing that error, that in fact, records did exist in the USAO, and through the LIONS database renewed search, the fact of an immediate declination in a criminal case investigation was ascertained.  It further appears that this was a State of Oklahoma prosecution file *State v. Shundeep (sic) Kishore, CF 2003-1331, Oklahoma County*, created as a result of a subpoena that the District Attorney served upon the USAO for records.  The request letter which triggered this follow-up search was, as set forth above, denied at intake, and not sent to the USAO/WDOK for any further action, which is where matters remained until the instant  litigation caused a review of all of the Kishore FOIA files, as set forth above.[3]

---

[3]  The USAO/WDOK opened its file to reflect a *Touhy* request from the District Attorney, who misspelled the name, and that misspelling was reflected in the USAO's LIONS database entry.  What was located through this extraordinary search was not responsive to the specific request, then the only FOIA file connected to the USAO/WDOK and EOUSA.  As this

*Id.*

There was initially no search performed in connection with Plaintiff's letter of May 21, 2007, (file number 07-2264) because EOUSA received the request letter from Mr. Kishore without a certification of identity, and without recognizing the connection between the letter and previous files, reacted per policy of closing the file and sending out the form by which identity of the requester could be verified, curing the defect. Once again, the USAO/WDOK had no opportunity to respond to Mr. Kishore's request. *Id.* ¶ 32. When Mr. Boseker reviewed all files gathered together in determining the appropriate response to the instant Complaint, "it became apparent that what was determined defective initially, was in fact, discernable from other files." *Id.* ¶ 33.

Mr. Boseker then asked the USAO/WDOK to conduct another search for records responsive to Plaintiff's request. *Id.* According to Mr. Boseker, the file was located in the following manner: "the USAO/WDOK contact searched for USAO number 2003R00126 and the file was located in one of the three file rooms used to maintain older records in the USAO. The file had been opened as *"State of Oklahoma v. Kishore, Shundeep"* (misspelling by the District Attorney), *2005v00437*, a *Touhy* request." According to Mr. Boseker, the complete contents of this file were forwarded to EOUSA for review and determination as set forth above. *Id.* The review process is set forth as follows.

---

matter had been an immediate declination on the part of the USAO/WDOK, pursuant to policy, no independent file had been opened prior to the *Touhy* request from the District Attorney. In addition, there was an erroneous assumption made that there would therefore be no records where there had been an immediate declination of criminal prosecution, as here. Boseker Decl. ¶ 30.

EOUSA processes requests made by individuals for records pertaining to themselves under both the FOIA and Privacy Act ("PA") in order to provide the requester with the maximum disclosure authorized by the Acts. *Id.* ¶ 34. The Criminal Case Files (Justice/USA-007) are part of the DOJ Privacy Act System of Records. The Attorney General has promulgated rules exempting these records from the PA's access provisions as authorized by 5 U.S.C.§552a(j)(2), which appears at 28 C.F.R. §16.81. *Id.* Subsection (j)(2) exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws. Because the entire case file here pertained to a criminal prosecution, it was necessarily compiled for law enforcement purposes. Therefore, EOUSA determined that the responsive records withheld were not disclosable under the PA. Accordingly, the records were then reviewed under the provisions of the FOIA. *Id.*

Generally, exemption (b)(5) protects disclosure of privileged documents, which are not ordinarily available to a party in litigation. *Wood v. FBI,* 432 F.3d 78 (2nd. Cir. 2005). In *Wood* the Second Circuit affirmed the district court's order upholding nondisclosure under FOIA exemption 5, of a Department o Justice Criminal Division memorandum concerning a potential prosecution. Specifically, the circuit court agreed with the government that the prosecution memorandum was protected by the attorney work-product privilege incorporated into FOIA exemption 5, and that under the holding in *National Council of La Raza v. United States Dept. of Justice*, 411 F.3d 350 (2d Cir. 2005), the memorandum had not been "adopted" into the final decision not to prosecute; the court also specifically left open the question of whether the

"adoption" doctrine even applies to the work-product privilege, notwithstanding broad language in *La Raza*. *Id.* 83-43.

Exemption (b)(5) encompasses the traditional discovery privileges of attorney work product, deliberative process, and attorney-client. 5 U.S.C. §552(b)(5). EOUSA asserted this exemption to protect information pursuant to the attorney work product and deliberative process privileges to a portion of a single document in which the AUSA set forth and identified reasons and rationale for the immediate declination of prosecution by the federal government. Boseker Decl. ¶ 36. The portion of the record to which the attorney work product privilege was applied reflect such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to Mr. Kishore's criminal case. *Id.* ¶ 37. The records were prepared by or at the request or direction of an attorney, and made in anticipation of or during litigation. *Id.* The substance of the records withheld in part or in their entirety are exempt from disclosure pursuant to this privilege. *Id.*

In addition, this same portion contains deliberative process of the USAO/WDOK and implicitly other federal and state agencies in their consideration of possible criminal actions against Mr. Kishore. *Id.* ¶ 38. To disclose this information would reveal pre-decisional communications among government personnel such as discussions of various litigation issues, alternatives, and strategies. Disclosure would jeopardize the candid and comprehensive considerations essential for efficient and effective agency decision-making. The attorney work product and deliberative process are so interwoven as to make it all, in essence, attorney work product in this case. *Id.* Furthermore, each document was evaluated to determine if any information could be segregated and released. *Id.* ¶ 39. No document was withheld in its

entirety, and only one document contained any redactions. *Id.* Accordingly, here as in *Wood*, the application of exemption (b)(5) is appropriate.

It should be noted that each step in the handling of Mr. Kishore's request, despite unusual facts attending the various request letters, has been consistent with the EOUSA and the USAO's procedures adopted to ensure an equitable response to all persons seeking access to records under the FOIA/PA. *Id.* ¶ 40. In summary, EOUSA has now conducted an adequate search of its files for responsive information to Plaintiff's requests and released all available pages with one minor redaction. *Id.* ¶¶ 27 and 29-33. Specifically, although some administrative confusion initially delayed a proper response to Plaintiff's requests (*see id.* ¶¶ 28 and 33 – based on a misspelling of Plaintiff's name), ultimately, 14 pages were release in their entirety and one page was released with a redacted portion pursuant to FOIA exemption 5. *Id.* ¶¶ 27 and 33-38. An additional 11 pages were referred to the FBI for its review as these documents originated with that agency. *Id.* ¶ 27.

Clearly, the diligent searches recently conducted here were reasonable. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995); *Miller v. Dept. of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) ("'the search need only be reasonable; it does not have to be exhaustive.'") (citing *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). Because the reasonableness standard for searches has been met and the records released, with only one minor redaction, EOUSA is entitled to judgment as a matter of law. 5 U.S.C. § 522, and Fed. R. Civ. P. 56.

### B. **Plaintiff's FOIA Requests to the FBI**

From March 2005 through January 2006, Plaintiff submitted four FOIA requests to the FBI, two of which were, in essence a request for the same information. *See* Hardy Decl. Exhs. 1, 12, 19 and 22.[4] The FBI responded to each of the FOIA requests submitted by Plaintiff. *See* Hardy Decl. ¶¶ 8, 18, and 24. [5] At the heart of all his Complaint is Plaintiff's claim that he has been unable to obtain records pertaining to the FBI Oklahoma Field Office investigation of certain criminal matters in which he was involved.

Although an initial determination that the materials Plaintiff sought was exempt from disclosure pursuant to certain FOIA exemptions (*see* Hardy Decl. ¶¶ 18, 21 and 24), and because of an administrative error (*see id*. ¶ 29, n. 12 – search of the wrong indices),[6] there had been a delay in disclosing materials to Plaintiff, it is indisputable now that the FBI has provided all responsive documents. *Id.* ¶ 34.

---

[4] The Plaintiff stated in this March 28, 2005 letter to OIP that he was thanking them "for answering my letter from 3-10-05." FBIHQ contacted OIP in order to locate this March 10, 2005 letter and any response by OIP to this letter. OIP could not locate any such documents. *See* Hardy Decl. ¶ 9, n. 2. Additionally, the Plaintiff stated, in this May 31, 2005 letter that he faxed a request in at the "end April 2005." The FBI could not locate a request submitted by plaintiff at the end of April. The only request from plaintiff that was received by FBI prior to this May 31, 2005 letter was plaintiff's March 3, 2005 request. Furthermore, the FBI did respond to plaintiff's March 3, 2005 request with a "no records" response. *Id.*, ¶ 8. The FBI contacted DOJ OIP in order to locate plaintiff's appeal from FBI's response to his March 3, 2005 request. DOJ OIP could not locate this appeal letter. *Id*. ¶ 11 n. 4.

[5] One of these responses was returned to the FBI by the United States Postal Service as undeliverable. *Id*. ¶ 25.

[6] In response to Plaintiff's January 30, 2006 request, due to administrative error, the FBI searched its FBIHQ indices. *See,* Hardy Decl. ¶ 33. That request was made to the OKFO, and consequently OKFO indices should have been searched for records. *Id.*

### 1.  The FBI Properly Invoked Privacy Act Exemption (j)(2)

Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . . ."  5 U.S.C. § 552a(j)(2).  The investigatory records at issue in this matter are part of the FBI's CRS and concern criminal investigations of plaintiff conducted by the FBI and the State of Oklahoma.  The criminal charges against Plaintiff include murder for hire and embezzlement.  Accordingly, the documents contained in this file, insofar as they pertain to Plaintiff, are exempt from disclosure pursuant to the Privacy Act, 5 U.S.C. § 552a(j)(2), in conjunction with 28 C.F.R. § 16.93.  Although access to these records was denied pursuant to the Privacy Act, they were then considered for release pursuant to the access provisions of the FOIA.  *Id*. ¶¶ 54-55.

### 2.  The FBI Properly Applied FOIA Exemptions 2, 3, 6 and 7

#### a.  Exemption 2

Exemption 2 under FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Not long after FOIA was passed, the Supreme Court declared that Exemption 2 was intended to relieve agencies of the burden of assembling and providing access to any "matter in which the public could not reasonably be expected to have an interest" and matters of public interest "where disclosure may risk circumvention of agency regulation."  *Dept. of Air Force v. Rose*, 425 U.S. 352, 369-70 (1976).  Subsequently, courts have approved two general categories of withholdings under Exemption 2: (1) internal matters of a relatively trivial nature (sometimes

referred to as "low-2"); and (2) more substantial internal matters for which disclosure would risk circumvention of a legal requirement (sometimes called "high-2"). *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992); *see Crooker v. ATF*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc) (setting forth a two part test for high-2 material). In short, this exemption protects routine internal administrative matters and functions of the FBI which have no effect on the public at large.

Here, Disclosure of information claimed exempt under (b)(2) could impede the effectiveness of the FBI's internal law enforcement procedures. Hardy Decl. ¶ 56. Specifically, exemption (b)(2)-1 has been asserted to protect FBI telephone and facsimile numbers. *Id*. ¶ 57. These telephone and facsimile numbers relate directly to the internal practices of the FBI in that these numbers are routinely used by FBI Special Agents and support employees during the performance of their investigative duties. Disclosure of the internal telephone and facsimile numbers used by these FBI employees could subject the FBI to harassing telephone calls and facsimiles which could disrupt the official business of the FBI by impeding their ability to conduct and conclude law enforcement investigations in a timely manner. *Id*. Additionally, in the current technological environment, it is now possible for persons so inclined to utilize an automated dialing system to repeatedly dial the same telephone numbers resulting in an inundation of facsimiles and telephone calls thus rendering the telephones and facsimile machines useless to the FBI. *Id*.

In sum, disclosure of routine internal administrative information such as FBI telephone and facsimile numbers would not result in any benefit to the public at large and there is no legitimate public interest to be served in the disclosure of these numbers. *Id*. ¶ 58. Accordingly,

these internal FBI telephone and facsimile numbers have been exempted from disclosure

pursuant to Exemption (b)(2)-1 on the following pages of Hardy Declaration, Exh. 30, Bates

numbers Kishore 24, 26, 29, 46, 63, 73, 103, 105, 107, 110-112, 122-123, 125, 130, 133, 142,

151, 153, 155-156, 227, 243, 245, 253-254, 259-260, and 275.

Further, internal rules and practices are exempt from disclosure, pursuant to Exemption

(b)(2). Here portions of Form FD-515, a form used by FBI investigative SAs to report

investigative accomplishments were withheld. Hardy Decl. ¶ 59. This form is submitted at

various stages of an investigation to report statistical accomplishments such as an arrest, the

recovery of stolen property, and other law enforcement achievements. *Id.* At the upper right

hand side of this form is a block captioned "Investigative Assistance and Techniques Used."

This block lists investigative techniques, some of which were used by the investigative personnel

during the investigation of plaintiff and others. Opposite each investigative technique is a rating

column that records a numerical rating from 1 to 4 to rate each technique used by investigative

personnel during the course of the investigation. *Id.* The numerical rating evaluates the

effectiveness of each technique used in bringing the investigation to a successful conclusion.

The entire rating column has been deleted to protect from release the various techniques used in

the investigation of Plaintiff and others in the records responsive to plaintiff's request. *Id.* If the

rating columns were released along with the ratings of each technique used, plaintiff and others

involved in similar criminal enterprises could change their activities and modus operandi in

order to avoid detection and/or surveillance in the future. *Id.* Therefore, protection of these

rating columns is essential to prevent future circumvention of the law by criminals. *Id.* The FBI

will use the same or similar techniques to bring similar future investigations to a successful conclusion. *Id.*

Exemption (b)(2) has also been asserted at times in conjunction with (b)(7)(E) to protect the detailed description of the manner in which the FBI arranged and executed arrest and search operations during the criminal investigation of Plaintiff. *Id.* ¶ 60. The details of the arrest and search operations are clearly an internal practice and are memorialized on a form entitled Oklahoma City Division Operations Order. *Id.* If the FBI were to disclose the procedures of how it conducts arrest and search operations and release details of the specific techniques used, it could jeopardize the effectiveness of any future FBI arrest and search operations by providing the criminal element with a birds eye view of what to anticipate with relation to FBI arrest and search procedures. Exemption (b)(2) has been asserted on the following pages of Exhibit 30: Kishore 40, 42-44, 69, 71-73, 75-76, 301-302, 304, and 307. *Id.*

### b. Exemption 3

FOIA Exemption 3 allows for the deletion of information specifically exempted from disclosure by statute (other than section 552(b) of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

Rule 6(e) of the Federal Rules of Criminal Procedure explicitly bars disclosure of "matters occurring before the grand jury", and serves to preserve the secrecy of the grand jury proceedings.[7] It has long been recognized that Fed. R. Crim. P. 6(e) qualifies as a FOIA

---

[7] In relevant part, Rule 6(3)(2) provides: "General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded

Exemption (b)(3) statute.  *See, e.g., Church of Scientology International v. U.S. Dept. of Justice*, 30 F.3d 224, 235 (1st Cir. 1994); *Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856, 867-68 (D.C. Cir. 1981) (the argument that the Federal Rules of Criminal Procedure are not "statutes" for FOIA Exemption (b)(3) purposes was soundly rejected with respect to Rule 6(e).)

Rule 6(e) is precise in its description of the circumstances under which grand jury information may be disclosed, none of which are applicable here.  *See* Fed. R. Crim. P. 6(e)(3).  First, disclosure may be made to a government attorney "for use in the performance of such attorney's duty", Fed. R. Crim. P. 6(e)(3)(A)(i).  Second, limited disclosure may be made to "government personnel" deemed necessary by a federal government attorney to assist federal government counsel in the "performance of such attorney's duty to enforce federal criminal law." Fed. R. Crim. P. 6(e)(3)(A)(ii).  Three other exceptions permit disclosure only by court order.  Fed. R. Crim. P. 6(e)(3)(C)(i),(ii), and (iv).  The last exception permits a federal government attorney to disclose otherwise secret material "to another federal grand jury".  Fed. R. Crim. P. 6(e)(3)(C)(iii).  Thus, Rule 6(e) establishes particular criteria as to the withholding of information.  None of the criteria are applicable in this case.  Thus, because none of the Rule 6(e) exceptions apply, the rule's "ban on disclosure is for FOIA purposes absolute and falls within subpart (A) of Exemption 3."  *Fund for Constitutional Government*, 656 F.2d at 868.

Therefore, the sole issue for decision in this case is whether the withheld material logically falls within the scope and coverage of Rule 6(e).  In order to effectuate Rule 6(e)'s

---

testimony, an attorney for the government, or a person to whom disclosure is made pursuant to paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury....  A knowing violation of Rule 6 may be punished as a contempt of court."

objectives, "the scope of the secrecy is necessarily broad.  It encompasses not only the direct

revelation of grand jury transcripts but also the disclosure of information which would reveal 'the

identities of witnesses or jurors, the substance of the testimony, the strategy or direction of the

investigation, the deliberations or questions of the jurors, and the like.'" *Fund for Constitutional*

*Government*, 656 F.2d at 869 (quoting *SEC v. Dresser Industries Inc.*,628 F.2d 1368, 1382 (D.C.

Cir. 1980)).

The FBI applied this exemption to grand jury materials in its investigative files.  Hardy

Decl. ¶ 62.  This information included names and identifying information of individuals

subpoenaed to testify before the Federal Grand Jury and information that identifies specific

records subpoenaed by the Federal Grand Jury.  *Id*.  Accordingly, the application of this

Exemption was proper and should be upheld by the Court.

### c.  Exemption 6

Exemption 6 of the FOIA protects "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all

information that applies to a particular individual."  *Lepelletier v.  FDIC*, 164 F.3d 37, 46 (D.C.

Cir. 1999), *quoting Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).  The Court

has also emphasized that "both the common law and the literal understanding of privacy

encompass the individual's control of information concerning his or her person."  *U.S. Dept. of*

*Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989).

In order to determine whether there would be a "clearly unwarranted invasion of

personal privacy," the Court must balance the interests of protecting "an individual's private

affairs from unnecessary public scrutiny," and "the public's right to governmental information." *Lepelletier*, 164 F.3d at 46 (interior quotation marks omitted), citing *United States Dept. of Defense v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992), *quoting Dept. of Air Force v. Rose*, 425 U.S. 352, 372 (1976). In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he *only* relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted), quoting *United States Dept. of Defense v. FLRA*, 510 U.S. 487, 497 (1994). *See also Reporters Committee*, 489 U.S. at 773. Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id.* at 775. Further, "something, even a modest privacy interest, outweighs nothing every time." *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989); *but see Lepelletier*, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption 6 must include consideration of that interest).

Here, the FBI used this Exemption to withhold information about six categories of individuals that fall within the protection of Exemption 6's rubric of "invasion of personal privacy." *See* Hardy Decl. ¶¶ 64-76. First names and/ or other identifying information of FBI special agents and support personnel were withheld. *Id.* ¶ 65. Second, the names and/or other identifying information of non-FBI, federal law enforcement personnel, such as Drug

Enforcement Agency and Immigration and Customs Enforcement agents, were withheld. *Id*. ¶ 67. Next, to protect state and local law enforcement personnel who participated in the investigation in question, the FBI invoked this exemption. *Id*. 68. Further, the name of a victim was withheld under this exemption to protect his privacy. *Id*. ¶ 72. Fifth the names and/or identifying information of third parties who provided information were withheld, pursuant to this exemption. *Id*. ¶ 74. Sixth, and finally, names and/or identifying information of third parties merely mentioned were withheld in conjunction with (b)(7)(C)(6). *Id*. ¶ 76. Each time Exemption 6 was invoked the FBI performed a balancing test to ensure that the public interest did not outweigh the privacy interest of the individual involved. *Id*. ¶¶ 66, 69, 71, 73, 75, and 77.

### d.        Exemption 7(C)

Exemption7(C) authorizes the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) " show the information is likely to advance that interest." *Boyd v. Criminal Division of U.S. Dept. of Justice,* 475 F.3d 381, 366, (D.C. Cir. 2007), *citing Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172, (2004). If the public interest is government wrongdoing, then the requester must "produce evidence that would

24

warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish* at 174.

The FBI satisfies the standard for invoking Exemption 7 of the FOIA because of its law enforcement mission and responsibilities for enforcement of criminal statutes. *Rugiero v. United States Dept. of Justice*, 257 F.3d 534, 550 (6th Cir. 2001) (explaining that the "Court has adopted a per se rule" that applies not only to criminal enforcement actions, but to "records compiled for civil enforcement purposes as well."). Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Supreme Court affirmed the broad scope of Exemption 7(C) in *National Archives and Records Admin. v. Favish*, 541 U.S. 157 (2004). When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dept. of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987), citing <u>Pratt</u>, 673 F.2d at 418. A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" *Keys*, 830 F.2d at 340, quoting *Pratt*, 673 F.2d at 421. Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. *See, e.g., U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 776-80 (1989). Only where the requester

25

can produce meaningful evidence  –  "more than a bare suspicion" – which would cause a reasonable person to believe that the government had engaged in impropriety should the Court even consider balancing the privacy interests against the public interest in disclosure. *Favish*, 124 S. Ct. at 1581.  Plaintiff here cannot allege any such impropriety.

A Review of the Declaration provided by FBI's David Hardy, demonstrates that the excisions made relate to protecting the identity of agents and employees of the agencies as well as third parties whose names appear in the records and for whom no privacy waivers have been supplied. *See* chart provided in Hardy Decl. ¶¶ 51-52, and ¶¶ 79- 95.  The law is well settled that all of these individuals, ranging from FBI Special Agents and support staff, to third parties and victims, have substantial, protectable privacy interests in their anonymity. *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893, 895-96 (D.C. Cir. 1995); *Computer Professionals for Social Responsibility*, 72 F.3d at 904; *Farese v. U.S. Dept. of Justice*, 683 F. Supp. 273, 275 (D.D.C. 1987); *Lesar v. U.S. Dept. of Justice*, 636 F.2d 472, 487-88 (D.C. Cir. 1980).  The Hardy Declaration reflects clearly that Exemption 7(C) was appropriately applied in this case to protect names and personal information of the forgoing individuals.

### e.  Exemption 7(D)

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information compiled for law enforcement purposes if the disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" "is to keep open the

Government's channels of confidential information."  *Birch v. United States Postal Serv.*, 803

F.2d 1206, 1212 (D.C. Cir. 1986).[8]

When invoking Exemption 7(D), the agency must demonstrate that the information was

compiled for a law enforcement purpose, that an informant provided the information under either

an express or an implied promise of confidentiality and, under the first clause of 7(D), that

disclosure could reasonably be expected to disclose the source's identity.  *United States Dept. of*

*Justice v. Landano*, 508 U.S. 165, 171-72 (1993).  If an individual has not been given an *express*

promise of confidentiality, the agency may demonstrate that a source has been given an *implied*

promise of confidentiality based upon the circumstances of the case.  *Landano*, 508 U.S. at

179-80.  The government may establish implied assurances of confidentiality by describing

"generic circumstances in which an implied assurance of confidentiality fairly can be inferred."

*Id*. at 179.  However, once an agency establishes an express or implied promise of

confidentiality, it is extremely difficult to overcome.  In order to do so, the plaintiff must come

forward with "'absolutely solid evidence showing that the source . . . in a law enforcement

investigation has manifested complete disregard for confidentiality.'"  *Parker*, 934 F.2d at 378,

---

[8]  The term "confidential source" is broadly construed.  *See, e.g., Gula v. Meese*, 699 F.
Supp. 956, 960 (D.D.C. 1988) (crime victims); *Putnam v. United States Dept. of Justice*, 873 F.
Supp. 705, 716 (D.D.C. 1995) (medical personnel).  Moreover, the term "confidential" signifies
that the information was provided in confidence or in trust, with the assurance that it would not
be disclosed to others.  *Dow Jones & Co. v. Dept. of Justice*, 917 F.2d 571, 575-76 (D.C. Cir.
1990).  As such, "the question is not whether the requested document is of the type that the
agency usually treats as confidential, but whether the particular source spoke with an
understanding that the communication would remain confidential."  *United States Dept. of*
*Justice v. Landano*, 508 U.S. 165, 172 (1993).

27

quoting *Dow Jones & Co. v. Dept. of Justice*, 908 F.2d 1006, 1011 (D.C. Cir.), *reh'g denied en banc*, 917 F.2d 571 (D.C. Cir. 1990).

The Court in *Landano* stressed two factors to be considered in determining whether an implied promise of confidentiality exists: "the nature of the crime investigated and the witness' relation to it." *Id*. at 181. In applying these factors, a key consideration is the potential for retaliation against the source. *Id*. at 179-80; *see also, Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (implied assurance of confidentiality found where crimes investigated were serious and violent and sources were "sufficiently close to" targets of investigation); *Hale v. Dept. of Justice*, 99 F.3d 1025, 1031 (10th Cir. 1996).

Once the agency has demonstrated that information was given by a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other information as well. The first clause of Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would tend to reveal the source's identity. *Pollard v. FBI*, 705 F.2d 1151, 1155 (9th Cir. 1983); *see also Stone v. Defense Investigative Serv.*, 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"); *Doe v. U.S. Dept. of Justice*, 790 F. Supp. 17, 21 (D.D.C. 1992) (when source is well known to individual investigated, agency must protect "even the most oblique indications of identity"). The second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.

Importantly, and unlike some other FOIA exemptions, Exemption 7(D) does not require a balancing of public and private interests. *Parker v. Dept. of Justice*, 934 F.2d 375, 380 (D.C.

28

Cir. 1991) (the "judiciary is not to balance interests under Exemption 7(D)"); *Jones v. FBI*, 41

F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and

private interests; if the source was confidential, the exemption may be claimed regardless of the

public interest in disclosure").  Therefore, "once the agency receives information from a

'"confidential source" during the course of a legitimate criminal investigation . . . all such

information obtained from the confidential source receives protection."'  *Parker*, 934 F.2d at 380

(editing by the court, *quoting Lesar v. United States Dept. of Justice*, 636 F.2d 472, 492 & n. 114

(D.C. Cir. 1980)).  Moreover, Exemption 7(D) continues to apply even after an investigation has

been closed, *Ortiz v. HHS*, 70 F.3d 729, 733 (2d Cir. 1995), *cert. denied*, 517 U.S. 1136 (1996),

and after the death of the source.  *Campbell v. Dept. of Justice*, 164 F.3d 20, 33 n.14 (D.C. Cir.

1998).

     Here, the FBI utilized confidential informants in the course of its investigation of the

criminal matter in which Plaintiff was involved.  *See* Hardy Dec. ¶¶ 97-99.  Disclosure of their

identities would not only risk exposing the confidential informants to harassment and possible

danger but also hamper the FBI's ability to elicit cooperation from future confidential sources.

*Id*. ¶99.  Accordingly, the FBI's withholding of certain information under Exemption 7(D) was

proper.

     The FBI asserted this Exemption in conjunction with Exemption (b)(6), in this matter, to

protect information furnished by a third party who was interviewed during the course of the FBI

investigation.  Hardy Decl. ¶¶ 100-101.  In this case, the third party who provided highly

detailed information specifically requested that his/her identity not be disclosed.  *Id*.  Prior to

conducting the interview, the FBI expressly promised this interviewee that his/her identity and

29

the information he/she provided would not be released.  This is evidenced by the word "PROTECT" when this individual's name is referenced in the file.  *Id.* ¶ 100.  The word "PROTECT" is a positive indication supporting an express assurance of confidentiality.  *Id.*  The FBI has found that it is only with the understanding of complete confidentiality that the aid of such sources can be enlisted, and only through this confidence that these sources can be persuaded to continue providing valuable assistance in the future.  The FBI has released as much segregable information as possible without disclosing the source's identity. Thus, the FBI has properly withheld this information pursuant to Exemption (b)(7)(D) on the following pages of Exhibit 30: Kishore 301–320.  *Id.* ¶ 101.

The FBI also asserted Exemption (b)(7)(D) as to information about a third party who was interviewed under circumstances from which an assurance of confidentiality can be implied based on the violent nature of the crime for which plaintiff was being investigated.  Hardy Decl. ¶ 102.  Namely, murder for hire.  Interviews conducted under such assurances of confidentiality warrant the protection of the interviewee's name as well as the information provided by the interviewee, but only to the extent that the information would identify the interviewee.  *Id.*  Any specific information provided by this source could possibly reveal his/her identity to persons knowledgeable of the circumstances surrounding this investigation. When processing these records concerning Plaintiff, the objective was to release as much segregable information as possible without revealing the identity of the individual who was interviewed.  *Id.*  Therefore, the primary concern in processing these documents became the protection of the interviewee's identity.  If the interviewee's identity was released, it could subject him/her to embarrassment, humiliation, or possible physical harm not only for him or herself but also for his/her family.  *Id.*

Protection extends beyond the name of the interviewee, and includes all other possible identifying information about the interviewee.  To breach the anonymity that this witness expected when he/she agreed to cooperate with the FBI in this investigation could seriously undermine any credibility the FBI would have in getting cooperation in future investigations.  *Id.*  Thus, the FBI has properly withheld this information pursuant to Exemption (b)(7)(D) on the following pages of Exhibit 30: Kishore 89-92 and 133-134.  *Id.*

Finally, Exemption (b)(7)(D) was asserted to protect local law enforcement agencies' investigative information.  Hardy Decl. ¶ 103.  This information was provided on a confidential basis, and was not intended for dissemination outside of the law enforcement community.  *Id.*  To disseminate this information to the general public could breach the level of trust that these law enforcement agencies have with the FBI and could sever the FBI's relationship with these state and local agencies.  *Id.*  Accordingly, it is clear that these state and local law enforcement agencies provided this information with the expectation of complete confidentiality.  Thus, the FBI has properly withheld this information pursuant to Exemption (b)(7)(D) on the following pages of Exhibit 30: Kishore 107, 110, and 230-231.  *Id.*

### f.  Exemption 7(E)

Exemption 7(E) of the FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations

or prosecutions. *Smith v. Bureau of Alcohol, Tobacco and Firearms*, 977 F. Supp. 496, 501

(D.D.C. 1997), *citing Fisher v. United States Dept. of Justice*, 772 F. Supp. 7, 12 n. 9 (D.D.C.

1991), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).  While Exemption 7(E)'s protection is generally

limited to techniques or procedures that are not well known to the public, even commonly known

procedures may be protected from disclosure if the disclosure could reduce or nullify their

effectiveness.  *See, e.g., Coleman v. FBI*, 13 F. Supp. 2d. 75, 83 (D.D.C. 1998) (applying 7(E) to

behavioral science analysis and details of polygraph examination); *Butler v. Treasury*, 1997 WL

138720 at *4 (D.D.C. 1997) (applying 7(E) to types of monitoring and type of equipment used in

surveillance); *Perrone v. FBI*, 908 F. Supp. 24, 28 (D.D.C. 1995) (applying 7(E) to type of

polygraph test, type of machine used, polygraph questions and sequence).  In justifying the

application of Exemption 7(E) the agency may describe the general nature of the technique while

withholding the full details.  *See e.g., Bowen v. FDA*, 925 F.2d 1225, 1228 (9th Cir. 1991).  The

agency is not, however, required to describe secret law enforcement techniques, even in general

terms, if the description would disclose the very information sought to be withheld.  *Coleman*, 13

F. Supp. 2d at 83; *Smith*, 977 F. Supp. at 501; *Butler*, 1997 WL 138720 at *4.

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement

investigations or prosecutions if [their] disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Accordingly, this clause of the Exemption

protects any "law enforcement guideline" that pertains to the prosecution or investigative stage

of a law enforcement matter whenever its disclosure "could reasonably be expected to risk

circumvention of the law."  *See, e.g., PHE, Inc. v. United States Dept. of Justice*, 983 F.2d 248,

251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available

32

to its agents might encourage violators to tamper with those sources of information and thus

inhibit investigative efforts"); *Jimenez v. FBI*, 938 F. Supp. 21, 30 (D.D.C. 1996) (applying

Exemption 7(E) to gang-validation criteria used by Bureau of Prisons to determine whether

individual is gang member).

Here, Exemption (b)(7)(E) has been asserted in conjunction with (b)(2) to protect certain

information on FBI Form FD-515, which is a form used by FBI SAs to report investigative

accomplishments.  Hardy Decl. ¶ 105. This form is submitted at various stages in an

investigation to report statistical results such as an arrest, the recovery of stolen property, and

other law enforcement achievements.  *Id*.  At the upper right hand side of this form is a block

captioned "Investigative Assistance and Technique Used."  *Id*.  This block lists 27 publicly

known investigative techniques and/or assistance of which some were used by the investigative

personnel during this murder for hire investigation.  Opposite each investigative technique and

assistance is a rating column which records a numerical rating from 1-4 for each

technique/assistance used by investigative personnel during the course of the investigation into

Plaintiff's criminal activity.  *Id*.  The numerical rating evaluates the effectiveness of each

technique/assistance used in bringing the investigation of Plaintiff to a successful conclusion.  *Id*.

The entire rating column is deleted in order to protect from release the techniques and assistance

used in the investigation of Plaintiff and others in records responsive to his request.  *Id*.  If the

rating column were released along with the ratings of each technique and assistance used,

Plaintiff and others involved in similar criminal enterprises could change their activities and

modus operandi in order to avoid detection and/or surveillance in the future.  Therefore,

protection of this rating column is essential in order to prevent future circumvention of the law

by criminals. *Id.* The FBI will use the same or similar techniques to bring similar future

investigations to successful conclusions. *Id.* Thus, the FBI has properly withheld this

information pursuant to (b)(7)(E) on the following pages of Exhibit 30: Kishore 40, 42-44. *Id.*

Exemption (b)(7)(E) has been asserted in conjunction with (b)(2) to protect the detailed

description of the manner in which the FBI arranged and executed arrest and search operations

during the criminal investigation of Plaintiff. *Id.* ¶ 106. The details of the arrest and search

operations are clearly an internal practice and are memorialized on a form entitled Oklahoma

City Division Operations Order. *Id.* If the FBI were to disclose the procedures of how it

conducts arrest and search operations and release details of the specific techniques used, it could

jeopardize the effectiveness of any future FBI arrest and search operations by providing the

criminal element with a birds-eye view of what to anticipate with relation to FBI arrest and

search procedures. Exemption (b)(7)(E) has been asserted on the following pages of Exhibit 30:

Kishore 69, 71-72, 302, 304, and 307. *Id.*

### C.     All Reasonably Segregable Material Has Been Released to Plaintiff.

The FOIA requires that if a record contains information that is exempt from disclosure,

any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions."

5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. United States Dept. of the Air Force*, 566 F.2d 242,

260 (D.C. Cir. 1977). The Court of Appeals for the District of Columbia Circuit has held that a

District Court considering a FOIA action has "an affirmative duty to consider the segregability

issue *sua sponte.*" *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d

1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." *Mead Data*, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. *Id*. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data*, 566 F.2d at 261, n.55.

A review of Mr. Hardy's declaration submitted reveals that the FBI carefully reviewed the information and confirms that all reasonably segregable non-exempt material has been released. Hardy Decl. ¶¶ 49, 64, 82, 101 and 107. *Armstrong*, 97 F.3d at 578-79; *Mead Data*, 566 F.2d at 26.

## CONCLUSION

For all the foregoing reasons, the Agency's Motion to Dismiss and for Summary

Judgment should be granted and Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N. W.
Washington, D.C.  20530
202-305-4851

*Of Counsel:*

Sarah Jirousek-Wint
Assistant General Counsel
Federal Bureau of Investigation

and

John F. Boseker
Attorney-Advisor
Executive Office of Untied States Attorneys

Dated: January 7, 2008.

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of January, 2008, I caused the foregoing *Motion to Dismiss and for Summary Judgment and all attachments,* to be served on *pro se* Plaintiff, postage prepaid, addressed as follows:

SUNDEEP KISHORE
#517067-LCF-GED 1D116
8607 S.E. FLOWER MOUND ROAD
LAWTON, OK 73501-9765

                                              _____/s/_____
                                              MERCEDEH MOMENI
                                              Assistant United States Attorney
                                              555 4th Street, NW
                                              Civil Division
                                              Washington, D.C.  20530
                                            (202) 305-4851
                                            (202) 514-8780 (facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,               )
                                        )
                   Plaintiff,        )
                                          )
             v.                   )     Civ. No. 07-1299-RMC
                                          )
UNITED STATES DEPARTMENT OF     )
     JUSTICE, et al..,                )
                       Defendants.    )
_____)

## <u>DECLARATION OF JOHN F. BOSEKER</u>

I, John F. Boseker,  declare the following to be a true and correct statement of facts:

1)      I am an Attorney Advisor in the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ").  I am specifically assigned to the component of EOUSA designated to administer the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 (1988), and the Privacy Act of 1974, 5 U.S.C.§552a (1988).

2)      Due to the nature of my official duties, I am personally familiar with the FOIA/PA requests made to EOUSA by Mr. Kishore, which forms the basis for this litigation. [1]

3)      My official duties include: having the authority to make final disclosure determinations on records requested by an individual using the FOIA/PA, to assure compliance with the provisions of the FOIA and PA and DOJ Regulation 28 CFR§16.3 et seq., and §16.40 et seq., as well as to defend EOUSA's position in litigating challenges to EOUSA's actions.

4)      My official duties also include: acting as liaison between EOUSA and the

---

[1] EOUSA created four distinct files in the course of its FOIA/PA relationship with Mr. Kishore, which preceded the present action.

components within the DOJ regarding FOIA/PA requests; reviewing requests for records sought

from EOUSA and /or the 94 U.S. Attorneys offices ("USAO's"); reviewing request-related

correspondence; reviewing searches performed in response to requests; and reviewing responses

made to those requests.

     5)     The statements that follow are made on the basis of my review of EOUSA's

official files and records, my own personal knowledge, and the information I acquired in

performing my official duties.

## BACKGROUND

### FOIA NO. 05-1036 [re:self/specific record/defective]

     6)     On March 31, 2005,  EOUSA received a letter dated March 25, 2007, from

"Sundeep-Kishore" via forwarding from the U.S. Attorney's Office for the Western District of

Oklahoma ("USAO/WDOK"), to which office Mr. Kishore initially directed his letter.  This

referenced an internal Federal Bureau of Investigation ("FBI") file number (*number omitted)* and

"requested to be informed, to which U.S. Attorney, FBI S.A. [*agents' names omitted*] reported to,

in connection with the investigation, under this file number, and which supposedly ended on 3-1-

03."  **Exhibit A attached.**

     7)     As this letter was accompanied by no proof of identity, EOUSA notified Mr.

Kishore by letter dated April 15, 2005, that he was required to provide such proof of identity  to

correct the deficiency, enclosed a form to facilitate that correction, and also advised him that it

had closed  above-referenced FOIA file as a result.  **Exhibit B attached.**

8)      EOUSA provided Mr. Kishore with notice of his right to appeal this determination to the Office of Information and Privacy ("OIP") within 60 days, and the information necessary for him to exercise that right. *Id*. Mr. Kishore did not appeal this determination.

**FOIA NO. 05-2020 [re:self/specific record/no records]**

9)      On April 12, 2005, EOUSA received a letter from Mr. Kishore dated March 4, 2005, in which he referenced the forwarding of his earlier letter (Exhibit A above) from the USAO/WDOK, and sought an expedited response from EOUSA. **Exhibit C attached.** Again, the request sought "the name of the federal prosecutor", cited to an FBI internal file number (*number omitted*), as well as a federal grand jury subpoena. *Id.*

10)      On June 8, 2005, EOUSA received the completed certification of identity form from Mr. Kishore bearing the date of May 31, 2005, which had been sent to him in connection with FOIA No. 05-1036 above. **Exhibit D attached.**

11)      By letter dated July 21, 2005, EOUSA notified Mr. Kishore that it had received his request letter, opened the above-numbered file, and was expediting efforts to locate the specific record that he sought. **Exhibit E attached.**

12)      By letter dated August 8, 2005, Mr. Kishore was advised that the USAO/WDOK had searched for and located no records responsive to his request. **Exhibit F attached.** Mr. Kishore was further advised that he could appeal this determination to OIP within 60 days. *Id.*

13)      By letter dated August 15, 2005, Mr. Kishore filed an administrative appeal with OIP. **Exhibit G attached.**

14)      By letter dated August 26, 2005, OIP notified Mr. Kishore that it had received his appeal letter on August 17, 2005, and assigned it number 05-2587. **Exhibit H attached.**

15)    By letter dated March 2, 2006, OIP notified Mr. Kishore that EOUSA's response to

his request for "the name of the federal prosecutor to whom the Federal Bureau of Investigation

reported to during its investigation of you " had been correct, and affirmed that no responsive

records could be located. **Exhibit I attached.**

**FOIA NO. 06-2345 [re: series of questions][2]**

16)    On February 6, 2006, EOUSA received a six-page letter from Mr. Kishore, again

via forwarding from the USAO/WDOK to whom the letter was initially addressed, in which he

sought answers to a series of questions, focused upon an FBI investigation of him.  **Exhibit J**

**attached.**

17)    By letter dated August 2, 2006, EOUSA notified Mr. Kishore that "the Freedom of

Information Act only applies to records already in existence and does not require an agency to

conduct research, create new records, or answer questions disguised as FOIA requests."  **Exhibit**

**K attached.**  Mr. Kishore was advised of his right to appeal within 60 days to OIP.  **Id.**

18)    Simultaneously by letter of this same date, EOUSA suggested that  Mr. Kishore

contact the FBI directly for the information that he sought through the questions, given their

specific content, providing him with the address to which that request should be directed.

**Exhibit L attached.**

19)    Mr. Kishore sent an appeal letter dated August 6, 2006 to OIP regarding these

EOUSA determinations, which OIP received on September 22, 2006. **Exhibit M attached.**

---

[2] The inclusion of this request and response is for the purpose of setting forth a complete
record of Mr. Kishore's relationship with EOUSA. A review of the complaint raises a question
as to whether this particular request is, in fact, at issue.

20)     By letter dated October 10, 2006, OIP notified Mr. Kishore that it had received his appeal letter and assigned it number 06-3204. **Exhibit N attached.**

21)     By letter dated November 14, 2006 OIP notified Mr. Kishore that it was affirming EOUSA's response to his numerous questions posed, and recited the legal rationale therefore. **Exhibit O attached**.

**FOIA NO. 07-2264 [re:self]**

22)     EOUSA received a letter dated May 21, 2007 from Mr. Kishore on June 4, 2007, in which reference was made to an unanswered letter dated March 2007.  This letter purportedly requested information related to the afore-referenced investigation in February/March 2003. **Exhibit P attached**.

23)     By letter dated July 23, 2007, EOUSA notified Mr. Kishore that he needed to provide a certification of identity and more sufficiently describe the records sought to allow for their location.  **Exhibit Q attached**.  He was notified that his file was being closed, and was advised of his right to appeal this determination to OIP within 60 days.  *Id*.

24)     Mr. Kishore filed the above-captioned action on July 23, 2007, and filed no appeal of this determination.

## Subsequent Actions

25)     In reviewing all of the above files in connection with this litigation, it appears that file number 05-2020 was not consulted for the certification of identity, and that there was an error in reading the letter associated with this latest letter received and responded to. In addition, on July 12, 2007, this office received a letter dated June 30, 2007 from Mr. Kishore requesting

access to "all records", which letter was among the numerous received by this office and was distributed after the litigation was commenced.  **Exhibit R attached.**  As such, and in conjunction with this litigation, I asked the USAO/WDOK FOIA contact to conduct another search for all of Mr. Kishore's records maintained by the USAO.

26)     The USAO/WDOK conducted an exhaustive search and located records responsive to Mr. Kishore's request.

27)     By letter dated September 5, 2007 EOUSA notified Mr. Kishore that it had performed another search, had located records, and had made the following determinations respecting disclosure of those records: released fourteen (14) pages in their entirety, and one (1) with a portion redacted by application of 5 USC 552(b)(5).  Privacy Act exemption 5 USC 552a(j)(2) was also applied to these records.  Respecting documents identified as originating with the FBI, 11 pages were referred for the FBI's  review and determination regarding disclosure, and direct response to Mr. Kishore. **Exhibit S attached**

<u>**EOUSA'S DISCLOSURE DETERMINATION**</u>

<u>**Identification of Responsive Records**</u>

28)     All of the records reviewed by EOUSA in response to Mr. Kishore's request(s) were located in the USAO/WDOK.  The records are maintained in the Criminal Case File System (Justice/USA-007) and in the criminal case file *State of Oklahoma v. Kishore, Sundeep.*  Two USAO internal numbers 2005v00437, and 2003R00126 were located within the documents. The nature of the file was a criminal investigation and immediate declination, and response to State subpoena in connection with its criminal prosecution of Mr. Kishore.

## ADEQUACY OF THE SEARCH

### Initial Search [FOIA No. 05-2020 re: specific record]

29)     The initial search performed by the USAO/WDOK located "no records
        responsive"

to the specific request for the name of the AUSA involved in the declined prosecution and

discussions with identified FBI Special Agents, nor any record "of him" (i.e., Mr. Kishore). The

FOIA contact advised that Mr. Kishore should possibly be directed by EOUSA to contact the

FBI/OKC directly.

30)      The FOIA contact for the USAO/WDOK advised that he undertook the search in

the following manner, as documented (i.e., "Certification of Search") within the EOUSA file

identified to this number, and of which EOUSA was advised on or about July 22, 2005: the name

searched under was "Mr. Sundee-Kishore", and the FBI internal file number (*omitted*) through

use of the computer systems LIONS and PROMIS, (which databases track all cases within a

given USAO by defendant's name, and district court/USAO internal case numbers), and a manual

review of card file indexes, (which track records and case files prior to the creation of these

computer database systems).  Further, there was no record of such file having been sent to the

Federal Records Center ("FRC") via looking up the log of cases shipped maintained in the

USAO, or any evidence that records had been destroyed.  Finally, the FOIA contact telephoned

the Lead Legal Assistant in the USAO Criminal Division regarding whether or not there was a

record of any file, which also resulted in nothing being located.

31)     It appears from a review of the documentation provided by the USAO/WDOK that

upon receipt of Exhibit J (see above), the "list of questions" later forwarded to EOUSA, the FOIA

contact undertook another search for records and located, after e-mailing various Criminal

Division staff in the USAO, that a misspelling had occurred in Mr. Kishore's name (*i.e.*,

"Shundeep-Kishore") as the result of a communication between the District Attorneys Office for

Oklahoma County and the USAO containing that error, that in fact, records did exist in the

USAO, and through the LIONS database renewed search, the fact of an immediate declination in

a criminal case investigation was ascertained.  It further appears that this was a State of Oklahoma

prosecution file *State v. Shundeep(sic) Kishore, CF 2003-1331, Oklahoma County*, created as a

result of a subpoena that the District Attorney served upon the USAO for records.  The request

letter which triggered this follow-up search was, as set forth above, denied at intake, and not sent

to the USAO/WDOK for any further action, which is where matters remained until the instant

litigation caused a review of all of the Kishore FOIA files, as set forth above.[3]

**Further Search [FOIA No. 07-2264/re:self]**

32)     There was initially no search performed in connection with this file number

because EOUSA received the request letter from Mr. Kishore without a certification of identity,

and without recognizing the connection between the letter and previous files, reacted per policy of

closing the file and sending out the form by which identity of the requester could be verified,

curing the defect.  Once again, the USAO/WDOK had no opportunity to respond to Mr. Kishore's

---

[3]  The USAO/WDOK opened its file to reflect a *Touhy* request from the District
Attorney, who misspelled the name, and that misspelling was reflected in the LIONS database
entry. What was located through this extraordinary search was not responsive to the specific
request, then the only FOIA file connected to the USAO/WDOK and EOUSA.  As this matter
had been an immediate declination on the part of the USAO/WDOK, pursuant to policy, no
independent file had been opened prior to the *Touhy* request from the District Attorney.  In
addition, there was an erroneous assumption made that there would therefore be no records
where there had been an immediate declination of criminal prosecution, as here.

request.

33)     In reviewing all files gathered together in determining the appropriate response to the above-captioned complaint, it became apparent that what was determined defective initially, was in fact, discernable from other files. I thereupon asked the USAO/WDOK to conduct another search for records responsive to Mr. Kishore's request. The file was located in the following manner: the USAO/WDOK contact searched for USAO number 2003R00126 and the file was located in one of the three file rooms used to maintain older records in the USAO. The file had been opened as *"State of Oklahoma v. Kishore, Shundeep"* (misspelling by the District Attorney),

*2005v00437*, a *Touhy* request. The complete contents of this file were forwarded to EOUSA for review and determination as set forth above in paragraph 27.

### JUSTIFICATION FOR NON-DISCLOSURE UNDER THE PRIVACY ACT

34)     EOUSA processes all requests made by individuals for records pertaining to themselves under both the FOIA and PA in order to provide the requester with the maximum disclosure authorized by the Acts.  The Criminal Case Files (Justice/USA-007) are part of the DOJ Privacy Act System of Records.  The Attorney General has promulgated rules exempting these records from the PA's access provisions as authorized by 5 U.S.C.§552a(j)(2), which appears at 28 CFR §16.81.  Subsection (j)(2) exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws.      As the  entire case file pertained to a criminal

prosecution, it

 was necessarily compiled  for law enforcement purposes.  Therefore, EOUSA determined that

the responsive records withheld were not disclosable under the PA.  Accordingly, the records

were then reviewed under the provisions of the FOIA.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

## EXEMPTION 5 U.S.C. §552(b)(5)

35)    Exemption (b)(5) protects disclosure of privileged documents, which are not

ordinarily available to a party in litigation.  Principally, there are three such  privileged

documents or communications protected by this exemption:  attorney work product, deliberative

process, and attorney-client.

36)    EOUSA asserted this exemption to protect information pursuant to the attorney

 work product and deliberative process privileges to a portion of **ONE DOCUMENT** in which

the AUSA set forth and identified reasons and rationale for the immediate declination of

prosecution by the federal government.

37)    The portion of the record to which the attorney work product privilege

 was applied reflect such matters as trial preparation, trial strategy, interpretations, and personal

evaluations and opinions pertinent to Mr. Kishore's criminal case.  The records were prepared by

or at the request or direction of an attorney, and made in anticipation of or during litigation.  The

substance of the records withheld in part or in their entirety are exempt from disclosure pursuant

to this privilege.

38)    In addition, this same portion contains deliberative process of

 the USAO/WDOK and implicitly other federal and state agencies in their consideration of

possible criminal actions against Mr. Kishore.  To disclose this information would reveal pre-

decisional communications among government personnel such as discussions of various litigation issues, alternatives, and strategies.  Disclosure would jeopardize the candid and comprehensive considerations essential for efficient and effective agency decision-making.  The attorney work product and deliberative process are so interwoven as to make it all, in essence, attorney work product.

## SEGREGABILITY

39)     Each document was evaluated to determine if any information could be segregated and released.  No document was withheld in its entirety, and only one document contained any redactions.

40)     Each step in the handling of Mr. Kishore's request, despite unusual facts attending the several request letters, has been consistent with the EOUSA and the USAO's procedures adopted to insure an equitable response to all persons seeking access to records under the FOIA/PA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 9, 2007.


/s/ John F. Boseker

_____

JOHN F. BOSEKER

Attorney Advisor, EOUSA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUNDEEP KISHORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 07-1299 (RMC) |
| | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 211 employees who staff a total of ten (10) FBIHQ units and a field operational service center unit

whose collective mission is to effectively plan, develop, direct, and manage responses to requests

for access to the FBI records and information pursuant to the FOIA; Privacy Act; Executive

Order 12958, as amended; Presidential, Attorney General, and FBI policies and procedures;

judicial decisions; and Presidential and Congressional directives.  The statements contained in

this declaration are based upon my personal knowledge, upon information provided to me in my

official capacity, and upon conclusions and determinations reached and made in accordance

therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am

aware of the treatment which has been afforded the FOIA/Privacy Act requests of plaintiff

Sundeep Kishore in which he seeks access to records pertaining to himself.

(4)     In accordance with Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), this

declaration, which is being submitted in support of the FBI's motion for summary judgment, will

provide the Court and plaintiff with an explanation for the procedures used to search for records

responsive to plaintiff's requests, and provide justifications for the withholding of information

from these records pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552a(j)(2), and FOIA

Exemptions  2, 3, 6, 7(C), 7(D), and 7(E), 5 U.S.C. § 552(b)(2), (b)(3), (b)(6), (b)(7)(C),

(b)(7)(D), and (b)(7)(E).

2

## CORRESPONDENCE RELATING TO PLAINTIFF'S REQUESTS

### Plaintiff's March 3, 2005 Request
### FOIPA No. 1018793

(5)    By letter dated March 3, 2005, plaintiff submitted a request to FBIHQ for "an

expedited review, of 'any and all' information vital for the best interests of my 'due-process'

rights, under the F.O.I. Act, or the 'Open-Records Act.'"  Plaintiff stated in the letter to FBIHQ

that the Oklahoma City Field Office ("OKFO") was in possession of the relevant subject matter

in the FBI's internal file 166C-OC-64741.  Plaintiff further advised in this letter that he had

submitted a request to the "F.B.I.'s OK City Division" of the FBI in early December 2004, for

similar records and received no response.[1]  **(See Exhibit 1.)**

(6)    By letter dated March 11, 2005, FBI returned plaintiff's March 3, 2005 letter

notifying him that he failed to provide sufficient information to conduct an accurate search of the

Central Records System ("CRS") at FBIHQ.  The FBI requested that he provide further

identifying information and that plaintiff sign and return a penalty of perjury statement.  **(See**

**Exhibit 2.)**

(7)    In response to FBI's March 11, 2005 letter, plaintiff provided the requested

information and perjury statement, which was signed and dated March 23, 2005.  **(See**

**Exhibit 3.)**

---

[1] The FBI did not locate the request to the OKFO referred to in plaintiff's March 3, 2005
letter. In order to find this request, the FBI conducted a thorough check of FBI's FOIA
Document Processing System ("FDPS"), the system which houses all FOIA/Privacy Act requests.
FBIHQ also contacted the OKFO by telephone to determine if it had any record of receiving a
request from plaintiff.

(8)     By letter dated April 15, 2005, the FBI notified plaintiff that a search of the automated indices to the CRS at FBIHQ failed to locate records responsive to his request. Plaintiff was also advised of his right to file an administrative appeal with the Department of Justice, Office of Information and Privacy ("DOJ OIP"). **(See Exhibit 4.)**

(9)     By letter dated March 28, 2005, plaintiff submitted a letter to DOJ OIP thanking them for interceding on his behalf with regard to his March 3, 2005 FOIA/Privacy Act request to the FBI.[2] In this letter, plaintiff also requested that DOJ OIP intercede on his behalf with regard to his requests for records submitted to Oklahoma City Metro Violent Crimes Task Force and the Prague City Police Department. **(See Exhibit 5.)**

(10)    By letter dated May 31, 2005, plaintiff advised the FBI that he had not received a response to his FOIA request for a release of records concerning himself.[3] **(See Exhibit 6.)**

(11)    By letter dated June 6, 2005, DOJ OIP advised plaintiff that it had considered Appeal Number 05-1481[4] and was affirmed the FBI's "no records" response to plaintiff for records concerning himself. DOJ OIP further informed plaintiff of his right to seek judicial

---

[2] Plaintiff stated in this March 28, 2005 letter to DOJ OIP that he was thanking them "for answering my letter from 3-10-05." FBIHQ contacted DOJ OIP in order to locate this March 10, 2005 letter and any response by DOJ OIP to this letter. DOJ OIP could not locate any such documents.

[3] Plaintiff states in this May 31, 2005 letter that he faxed a request in at the "end April 2005." The FBI could not locate a request submitted by plaintiff at the end of April. The only request from plaintiff that was received by FBI prior to this May 31, 2005 letter was plaintiff's March 3, 2005 request. Furthermore, the FBI did respond to plaintiff's March 3, 2005 request with a "no records" response. See supra, Paragraph 8.

[4] The FBI contacted DOJ OIP in order to locate plaintiff's appeal from FBI's response to his March 3, 2005 request. DOJ OIP could not locate this appeal letter.

4

review in accordance with 5 U.S.C. § 552(a)(4)(B). **(See Exhibit 7.)**

(12)    By letter dated June 20, 2005, plaintiff submitted a letter to DOJ OIP stating that

he had yet to receive a response from the FBI regarding his FOIA/Privacy Act request and asked

that DOJ OIP intercede on his behalf.[5]  **(See Exhibit 8.)**

(13)    By letter dated August 1, 2005, DOJ OIP responded to plaintiff's letter dated June

20, 2005. This letter advised plaintiff that the FBI had responded to his March 3, 2005 request in

a letter dated April 15, 2005. Plaintiff was also advised that if he was dissatisfied with the FBI's

action on his request, he could appeal again to DOJ OIP, and that his appeal was given number

05-2361.[6] Plaintiff was further advised of his right to seek judicial review in accordance with 5

U.S.C. § (a)(4)(B) if he considered DOJ's action to be a denial of his appeal. **(See Exhibit 9.)**

(14)    By letter dated August 15, 2005, plaintiff submitted a letter to DOJ OIP appealing

DOJ OIP's August 1, 2005 response.[7] **(See Exhibit 10.)**

(15)    By letter dated December 14, 2005, DOJ OIP advised plaintiff that it had received

---

[5] The FBI did respond to plaintiff's March 3, 2005 request with a "no records" response.
See supra, Paragraph 8.

[6] In a telephone conversation, DOJ OIP confirmed that this letter was sent in error. DOJ
OIP stated that Appeal No. 05-2361 was "closed out as not a valid appeal." The appeal of
FOIPA Request No. 1018793, dated March 3, 2005, was handled earlier in a letter dated
June 6, 2005, with Appeal No. 05-1481. See supra, Paragraph 11.

[7] Appeal No. 05-2361, considered in the letter dated August 1, 2005, was "closed out as
not a valid appeal" by DOJ OIP. See supra, Paragraph 13. The appeal of FOIPA Request No.
1018793, dated March 3, 2005, was handled earlier in a letter dated June 6, 2005, with Appeal
No. 05-1481. See supra, Paragraph 11.

his administrative appeal and assigned it appeal number 06-0655.[8]  (See Exhibit 11.)

**Plaintiff's August 8, 2005 Request**
**FOIPA No. 1027586**

(16)    By letter dated August 8, 2005, plaintiff submitted a request to OKFO for

documents related to the FBI's February 2003 investigation concerning himself.  Plaintiff provided

a signed and notarized verification of identity form with this request letter.  (See Exhibit 12.)

(17)    By letter dated August 25, 2005, the FBI acknowledged receipt of plaintiff's

FOIA/Privacy Act request and assigned it FOIPA Request No.1027586.  The FBI also advised

plaintiff that it was searching the indices to the CRS for the information he requested, and that he

would be informed of the results as soon as possible.  (See Exhibit 13.)

(18)    By letter on or about September 8, 2005,[9] the FBI advised plaintiff that the material

responsive to his request was exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A) and

(b)(7)(C).  Plaintiff was advised of his right to file an administrative appeal with DOJ OIP.  (See

Exhibit 14.)

(19)    By undated letter, received by DOJ OIP on October 3, 2005, plaintiff appealed

FBI's September 8, 2005 decision.  (See Exhibit 15.)

(20)    By letter dated October 13, 2005, DOJ OIP acknowledged receipt of plaintiff's

---

[8] In a telephone conversation, DOJ OIP stated that on or about January 5, 2006, DOJ OIP's letter to plaintiff, dated December 14, 2005, was returned to DOJ OIP via United States Postal Service stamped "return to sender."  Furthermore, it appears that appeal number 06-0655 was assigned in error, since the appeal of FOIPA Request No. 1018793, dated March 3, 2005, was handled earlier in a letter dated June 6, 2005, with Appeal No. 05-1481.  See supra, Paragraph 11.

[9] Due to administrative error, this letter was not dated.

administrative appeal and assigned it appeal number 06-0048.  **(See Exhibit 16.)**

(21).    By letter dated August 31, 2007, DOJ OIP advised plaintiff that his request for
information from the OKFO was being remanded for further processing.  Plaintiff was advised
that as a result of discussions between FBI personnel and DOJ OIP, it had been determined that
Exemption (b)(7)(A) was "no longer applicable to withhold these records in their entireties."
Plaintiff was also advised that the FBI would send any and all releasable portions of the records to
plaintiff directly and that the release of these records was subject to fees.  Further, plaintiff was
advised that he could appeal any future adverse determination made by the FBI and advised of his
right to seek judicial review in accordance with 5 U.S.C. § 552 (a)(4)(B) if he was dissastified
with DOJ OIP's action on his appeal.  **(See Exhibit 17.)**

(22)    By letter dated October 25, 2007, DOJ OIP advised plaintiff that pursuant to 28
C.F.R. § 16.9(a)(3) it was vacating its decision on Appeal No. 06-0047, which was detailed in its
letter to plaintiff dated August 31, 2007.  DOJ OIP based the decision to vacate on the fact that
plaintiff had filed the complaint for this lawsuit on July 23, 2007, in the U.S. District Court for the
District of Columbia.  **(See Exhibit 18.)**

### Plaintiff's October 17, 2005 Request
### FOIPA No. 1018793-001

(23)    By letter dated October 17, 2005, plaintiff submitted a letter to the OKFO
requesting "any and all records" related the FBI investigation of himself.[10]  **(See Exhibit 19.)**

(24)    By letter dated December 13, 2005, the FBI notified plaintiff that the records

---

[10] This request was for the same records as the plaintiff requested in his letter dated
August 8, 2005, which was assigned FOIPA Request No. 1027586

responsive to his request were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A) and

(b)(7)(C). Plaintiff was further advised of his right to file an administrative appeal with DOJ OIP.

**(See Exhibit 20.)**

(25)    On or about January 30, 2006, FBI's letter to plaintiff, dated December 13, 2005,

was returned to the FBI via the United States Postal Service stamped "return to sender". **(See**

**Exhibit 21.)**

### Plaintiff's January 30, 2006 Request
### FOIPA Number: 1067407

(26)    By letter dated January 30, 2006, plaintiff submitted a request to the OKFO for

documents concerning himself. Plaintiff advised that he had written to the FBI several times in

the last two years to no avail.[11]  Plaintiff went on to provide an extended list of questions he had

with regard to the FBI's investigation of himself. **(See Exhibit 22.)**

(27)    By letter dated February 14, 2006, the FBI returned plaintiff's January 30, 2006

request and notified plaintiff that he failed to provide sufficient information to conduct an accurate

search of the CRS. The FBI also requested that plaintiff sign and return a penalty of perjury

statement. **(See Exhibit 23.)**

(28)    Plaintiff provided the requested information and the penalty of perjury statement,

signed January 3, 2007. **(See Exhibit 24.)**

(29)    By letter dated January 18, 2007, the FBI assigned FOIPA number 1067407 to

---

[11] The FBI responded to each of the FOIA requests submitted by plaintiff. See supra,
Paragraphs 8, 18, and 24. One of these responses was returned to the FBI by the United States
Postal Service as undeliverable. See supra, Paragraph 25.

plaintiff's January 30, 2006 request and advised plaintiff that a search of the automated indices of

the CRS at FBIHQ failed to locate any records responsive to his request.[12]  Further, plaintiff was

advised of his right to file an administrative appeal with DOJ OIP.  **(See Exhibit 25.)**

(30)    By letter dated March 5, 2007, plaintiff appealed the FBI's January 18, 2007 "no

records response" to DOJ OIP.  **(See Exhibit 26.)**

(31)    By letter dated April 6, 2007, DOJ OIP acknowledged receipt of plaintiff's

administrative appeal and assigned it Appeal No. 07-1001.  **(See Exhibit 27.)**

(32)    By letter dated June 19, 2007, DOJ OIP advised plaintiff that it was affirming the

FBI's "no records" response.  DOJ OIP notified plaintiff that, although the FBI could locate no

records responsive to plaintiff's request at FBIHQ, DOJ OIP had determined that the OKFO might

have records responsive to his request.  DOJ OIP directed plaintiff to make a new request to

OKFO pursuant to 28 C.F.R. §§ 16.3(a) and 16.41(a).  Additionally, DOJ OIP advised plaintiff of

his right to appeal any future adverse determination made by the FBI.  DOJ OIP provided the

address for OKFO and advised plaintiff of his right to seek judicial review in accordance with 5

U.S.C. § 552(a)(4)(B) if he was dissatisfied with DOJ OIP's action on his appeal.  **(See

Exhibit 28.)**

(33)    In a letter dated August 21, 2007, the FBI advised plaintiff that they had reopened

his January 30, 2006 request due to the fact that the FBI had inadvertently searched its indices for

FBIHQ files only.  Because of this administrative error, the FBI erroneously gave plaintiff a "no

---

[12] Due to administrative error, the FBI searched its FBIHQ indices.  Plaintiff's January 30, 2006 request was made to the OKFO, and consequently OKFO indices should have been searched for records.  See infra, Paragraph 33.

records" response in its letter dated January 18, 2007. Furthermore, the FBI stated that records responsive to his request to the OKFO were no longer being withheld pursuant to Exemption 7(A) and that these responsive records were being scanned for processing and release to plaintiff on a priority basis. (**See Exhibit 29.**)

### FBI's Release of Responsive Documents to Plaintiff

(34)    In response to plaintiff's January 30, 2006 request, the FBI released documents to plaintiff as an enclosure to letter dated November 19, 2007. Plaintiff was advised that 320 pages were reviewed and 308 pages were being released. The FBI also noted that information was being withheld in these responsive records pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions 2, 3, 5, 6, 7(C), 7(D), and 7(E), and that pursuant to 28 C.F.R. §§ 16.11 and 16.49, there was a fee of ten cents per page for duplication, but that no fees were assessed for the first 100 pages of material. Further, FBI requested plaintiff to remit a check or money order payable to the Federal Bureau of Investigation in the amount of $20.80. In addition, plaintiff was advised of his right to file an administrative appeal with DOJ OIP. (**See Exhibit 29.**)[13]

(35)    As of the date of this declaration, plaintiff has failed to pay the duplication fee of $20.80 for the records responsive to his request to the OKFO and 30 days have passed since November 19, 2007, the date of the letter releasing responsive records to plaintiff. Pursuant to 28 C.F.R. § 16.11(i)(3):

> Where a requester has previously failed to pay a properly charged FOIA fee to any component or agency within 30 days of the date of billing, a component may

---

[13] The records responsive to plaintiff's requests to the OKFO are attached to this declaration as **Exhibit 30.**

require the requester to pay the full amount due, plus any applicable interest, and to make an advance payment of the full amount of any anticipated fee, before the component begins to process a new request or continues to process a pending request from the requester.

### EOUSA Referral

(36)    On November 7, 2007, eleven pages of material responsive to plaintiff's request to the Executive Office of United States Attorneys ("EOUSA") was received by the FBI via facsimile. Information normally provided with a cover letter was instead discussed during a telephone conversation between EOUSA and FBI. As this material was faxed without a cover letter, no further documentation exists.

(37)    The FBI processed the records referred to it by EOUSA on November 7, 2007, for direct response to plaintiff. These records were released as an enclosure to a letter to plaintiff dated November 19, 2007, as part of the 308 pages of records released out of 320 pages reviewed.[14] **(See Exhibit 29.)**

### EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM ("CRS")

(38)    The Central Records System ("CRS") enables the FBI to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. CRS is organized into a numerical sequence of files, called FBI "classifications," which are broken down according to subject matter. The subject matter of a file may correspond to an individual, organization, company, publication,

---

[14] The records referred to the FBI by EOUSA are attached to this declaration as Exhibit 30.

11

activity, or foreign intelligence matter (or program). Certain records in the CRS are maintained at

FBIHQ. Records that are pertinent to specific field offices of the FBI are maintained in those field

offices. Although the CRS is primarily designed to serve as an investigative tool, the FBI utilizes

the CRS to conduct searches that are likely to yield documents responsive to FOIA/Privacy Act

requests. The mechanism that the FBI uses to search the CRS is the Automated Case Support

System ("ACS").

(39)    The ACS was implemented for all Field Offices, Legal Attaches ("Legats"), and

FBIHQ in order to consolidate portions of the CRS that were previously automated. ACS can be

described as an internal computerized subsystem of the CRS. Because the CRS cannot

electronically query the case files for data, such as an individual's name or social security number,

the required information is duplicated and moved to the ACS so that it can be searched. More

than 105 million records from the CRS were converted from automated systems previously

utilized by the FBI. Automation did not change the CRS; instead, automation has facilitated more

economic and expeditious access to records maintained in the CRS.

(40)    The retrieval of data from the CRS is made possible through the ACS using the

General Indices, which are arranged in alphabetical order.[15] The entries in the General Indices fall

into two categories:

> (a) A "main" entry --- A "main" entry, or "main" file, carries the name
> corresponding with a subject of a file contained in the CRS.

> (b) A "reference" entry --- "Reference" entries, sometimes called

---

[15] The General Indices are not only automated but also include index cards which allow a
manual search for records that pre-date the implementation of ACS on October 16, 1995.

12

"cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

(41)    Searches made in the General Indices to locate records concerning a particular subject, such as Sundeep Kishore, are made by searching the subject requested in the index.

(42)    The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

(a)    Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs"). When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by all FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation. Using file number "166-OC-64741," which is one of the files containing records responsive to plaintiff's request, as an example, an explanation of the UCFN is as follows: "166 " indicates the classification for the specific type of investigation, i.e., Interstate Transactions in Aid of Racketeering-Murder for Hire; "OC" is the abbreviated form used for the OO of the investigation, which in this case is Oklahoma City; and "64741" denotes the individual case file number for the particular investigation.

(b)    Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept

in that only the creator of a document serializes it into a file. This provides a single-source entry

of serials into the computerized ECF system. All original serials are maintained in the OO case

file. Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a

complete subject/case index to all investigative and administrative cases. Only the OO is required

to index; however, the LOs may index additional information as needed. UNI, an index of

approximately 100.0 million records, functions to index names to cases, and to search names and

cases for use in FBI investigations. Names of individuals or organizations are recorded with

identifying applicable information such as date or place of birth, race, sex, locality, Social

Security number, address, and/or date of event.

(43)    The decision to index names other than subjects, suspects, and victims is a

discretionary decision made by the investigative FBI Special Agent ("SA") assigned to work on

the investigation, the Supervisory SA ("SSA")  in the field office conducting the investigation,

and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that

information considered pertinent, relevant, or essential for future retrieval. Without a "key"

(index) to this enormous amount of data, information essential to ongoing investigations could not

be readily retrieved. The FBI files would thus be merely archival in nature and could not be

effectively used to serve the mandated mission of the FBI, which is to investigate violations of

federal criminal and national security statutes. Therefore, the General Indices to the CRS files are

the means by which the FBI can determine what retrievable information, if any, the FBI may have

in its CRS files on a particular subject matter or individual, i.e., Sundeep Kishore.

14

## ELECTORNIC SURVEILLANCE "ELSUR" INDICES

(44)    The Electronic Surveillance ("ELSUR") indices are used to maintain information on subjects whose electronic and/or voice communications have been intercepted as the result of a warrantless (consensual) electronic surveillance or a court-ordered (and/or sought) electronic surveillance conducted by the FBI. The ELSUR indices date back to January 1, 1960. On or about October 9, 1991, the ELSUR indices were automated. Since that time, FBIHQ and all FBI field offices have electronically generated, maintained, modified and accessed all ELSUR records created since October 9, 1991.

(45)    The ELSUR indices are a separate system of records from the CRS which, prior to automation, consisted of index cards on individuals who had been the subject of a microphone or telephone surveillance by the FBI from 1960. As stated above, the previous manual index card system was converted to an automated system on or about October 9, 1991. These indices include individuals who were the (1) targets of direct surveillance, (2) participants in monitored conversations, and (3) owners, leasers, or licensors of the premises where the FBI conducted electronic surveillance. In addition to the names of individuals in the above categories, the cards in the ELSUR index contain the date the voice was monitored, a source number to identify the individual on whom the surveillance was installed, and the location of the FBI field office that conducted the monitoring. The ELSUR indices are published as a separate records system in the Federal Register because not all names contained in the ELSUR index can be retrieved through the General Index and CRS. See 52 Fed. Reg. 8482 (1992).

(46)    The FBI field offices that have conducted electronic surveillance at any time

15

from1960 to the present also maintain ELSUR indices. Since January 1, 1960, the field offices have been including in their ELSUR indices and reporting to FBIHQ for inclusion in its index, the names of all persons whose voices have been monitored through a FBI microphone installation or a telephone surveillance. The names of monitored subjects are retrievable through the FBIHQ or local field office ELSUR indices.

### CRS SEARCH FOR RECORDS CONCERNING SUNDEEP KISHORE

(47)    In response to plaintiff's FOIPA requests, RIDS personnel conducted a search of the automated indices for responsive documents at FBIHQ and OKFO. A search of the CRS by using the name "Sundeep Kishore" covered a phonetic breakdown of his name. For example, this search would locate records using the phonetic sounds of the last and first name relating to the following names: "Kishore, Sundeep" and "Kishore, S." RIDS personnel also used plaintiff's date of birth and Social Security number to facilitate the identification of additional responsive records. The search located one main file--166-OC-64741, two subfiles--166-OC-064741-1A and 166-OC-64741-GJ; one control file--197A-OC-C649578; and one cross reference--281C-OC-54808-A-39.

### ELSUR SEARCH FOR RECORDS CONCERNING SUNDEEP KISHORE

(48)    In response to plaintiff's FOIA/Privacy Act request dated January 30, 2006, RIDS personnel conducted a search of the ELSUR Indices maintained at FBIHQ.[16] The search parameters used to conduct this search consisted of plaintiff's name, date of birth, and Social Security number. This search produced four (4) intercepts. These intercepts have been denied in

---

[16]Please note, a search of the ELSUR indices at FBIHQ encompasses all field offices to include OKFO.

their entireties pursuant to Exemption (b)(7)(D).

## EXPLANATION OF FORMAT USED FOR THE
## JUSTIFICATION OF DELETED MATERIAL

(49)    All documents have been thoroughly reviewed to ensure that the redacted

information is being withheld consistent with current FOIA guidelines. Every effort was made to

provide plaintiff with all material in the public domain and with all reasonably segregable portions

of releasable material. Copies of the responsive records are attached hereto as Exhibit 30 and

each page of this Exhibit is consecutively Bates numbered Kishore 1-320 in the lower right-hand

corner.

(50)    Copies of the documents contain, on their face, coded categories of exemptions

which detail the nature of the information withheld pursuant to the provisions of the FOIA. The

coded categories are provided to aid the Court and plaintiff's review of the FBI's explanation for

FOIA exemptions used to withhold the protected material. Accordingly, a review of this

information will reveal that all material withheld is exempt from disclosure pursuant to a FOIA

exemption.

## MECHANICS OF USING THE CODED FORMAT
## WITH THE EXEMPTION CATEGORIES

(51)    Each withholding of information at issue has a coded exemption next to it that

details the nature of the information withheld pursuant to the provisions of the FOIA as well as a

numerical designation which more specifically identifies the exact nature of the withheld

information. For example, on Bates page 3 of Exhibit 30, Exemption (b)(7)(C)-1 is cited to

protect the name of an FBI Special Agent. The "(b)(7)(C)" designation refers to Exemption

17

(b)(7)(C) of the FOIA concerning Unwarranted Invasion of Personal Privacy. The numerical

designation "1" following the (b)(7)(C) narrows the category of protected information from the

main category to the more specific subcategory of "Names and/or Identifying Information of FBI

Special Agents and Support Personnel." These coded categories are used to assist the Court and

plaintiff in their review of the FBI's withholding of information in these records.

(52)    A listing of the exemption categories and justifications for the withheld

information are discussed below.

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(2)** | **INTERNAL AGENCY RULES AND PRACTICES** |
| **(b)(2)-1** | FBI Telephone and Facsimile Numbers |
| **(b)(2)-2** | Internal Rules and Practices |
| **Category (b)(3)** | **INFORMATION PROTECTED BY STATUTE** |
| **(b)(3)-1** | Federal Grand Jury Information |
| **Category (b)(6)** | **CLEARLY UNWARRANTED INVASION OF PRIVACY** |
| **(b)(6)-1** | Names and/or Identifying Information of FBI Special Agents and Support Personnel (Cited in conjunction with (b)(7)(C)-1.) |
| **(b)(6)-2** | Names of Non-FBI Federal Law Enforcement Employees (Cited in conjunction with (b)(7)(C)-2.) |
| **(b)(6)-3** | Names and/or Identifying Information of State and Local Law Enforcement Personnel. (Cited in conjunction with (b)(7)(C)-3.) |
| **(b)(6)-4** | Names and/or Identifying Information of a Victim (Cited in conjunction with (b)(7)(C)-4.) |

| CODED CATEGORIES | INFORMATION WITHHELD |
|---|---|
| (b)(6)-5 | Names and/or Identifying Information of Third Parties Who Provided Information. (Cited in conjunction with (b)(7)(C)-5, (b)(7)(D)-1, and (b)(7)(D)-2.) |
| (b)(6)-6 | Names and/or Identifying Information of Third Parties Merely Mentioned (Cited in conjunction with (b)(7)(C)-6.) |
| Category (b)(7)(C) | UNWARRANTED INVASION OF PRIVACY |
| (b)(7)(C)-1 | Names and/or Identifying Information of FBI Special Agents and Support Personnel (Cited in conjunction with (b)(6)-1.) |
| (b)(7)(C)-2 | Names of Non-FBI Federal Law Enforcement Employees (Cited in conjunction with (b)(6)-2.) |
| (b)(7)(C)-3 | Names and/or Identifying Information of State and Local Law Enforcement Personnel. (Cited in conjunction with (b)(6)-3.) |
| (b)(7)(C)-4 | Names and/or Identifying Information of a Victim (Cited in conjunction with (b)(6)-4.) |
| (b)(7)(C)-5 | Names and/or Identifying Information of Third Parties Who Provided Information. (Cited in conjunction with (b)(6)-5, (b)(7)(D)-1, and (b)(7)(D)-2.) |
| (b)(7)(C)-6 | Names and Identifying Information of Third Parties Merely Mentioned (Cited in conjunction with (b)(6)-6.) |
| Category (b)(7)(D) | CONFIDENTIAL SOURCE MATERIAL |
| (b)(7)(D)-1 | Name and Identifying Information of a Third Party Who Provided Information to the FBI with an "Express" Assurance of Confidentiality. (Cited in conjunction with (b)(6)-5 and (b)(7)(C)-5.) |
| (b)(7)(D)-2 | Name and Identifying Information of a Third Party Who Provided Information to the FBI with an "Implied" Assurance of Confidentiality. (Cited in conjunction with (b)(6)-5 and (b)(7)(C)-5.) |
| (b)(7)(D)-3 | Information Provided by State and Local Law Enforcement Agencies |
| Category (b)(7)(E) | INVESTIGATIVE TECHNIQUES AND PROCEDURES |

| (b)(7)(E)-1 | FD-515: Investigative Accomplishment Reports and Narratives |
|---|---|
| (b)(7)(E)-2 | Details of an FBI Operations Order |

## JUSTIFICATION FOR REDACTIONS

(53)    The FBI's rationale for withholding each particular category of information under the specific exemption categories is explained below.

## PRIVACY ACT EXEMPTION (j)(2)

(54)    Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . . ."

(55)    The investigatory records at issue in this matter are part of the FBI's CRS and concern criminal investigations of plaintiff conducted by the FBI and the State of Oklahoma. The criminal charges against plaintiff include murder for hire and embezzlement. Accordingly, the documents contained in this file, insofar as they pertain to plaintiff Sundeep Kishore, are exempt from disclosure pursuant to the Privacy Act, 5 U.S.C. § 552a(j)(2), in conjunction with 28 C.F.R. § 16.93. Although access to these records was denied pursuant to the Privacy Act, they were then considered for release pursuant to the access provisions of the FOIA.

## EXEMPTION (b)(2)
## INTERNAL AGENCY RULES AND PRACTICES

(56)    5 U.S.C. § 552 (b)(2) exempts from disclosure information "related solely to the internal personnel rules and practices of an agency." This exemption protects routine internal

administrative matters and functions of the FBI which have no effect on the public at large. Disclosure of this information could impede the effectiveness of the FBI's internal law enforcement procedures.

### (b)(2)-1        FBI Telephone and Facsimile Numbers

(57)    Exemption (b)(2)-1 has been asserted to protect FBI telephone and facsimile numbers. These telephone and facsimile numbers relate directly to the internal practices of the FBI in that these numbers are routinely used by FBI Special Agents and support employees during the performance of their investigative duties. Disclosure of the internal telephone and facsimile numbers used by these FBI employees could subject the FBI to harassing telephone calls and facsimiles which could disrupt the official business of the FBI by impeding their ability to conduct and conclude law enforcement investigations in a timely manner. Additionally, in the current technological environment, it is now possible for persons so inclined to utilize an automated dialing system to repeatedly dial the same telephone numbers resulting in an inundation of facsimiles and telephone calls thus rendering the telephones and facsimile machines useless to the FBI.

(58)    Disclosure of routine internal administrative information such as FBI telephone and facsimile numbers would not result in any benefit to the public at large and there is no legitimate public interest to be served in the disclosure of these numbers. Accordingly, these internal FBI telephone and facsimile numbers have been exempted from disclosure pursuant to Exemption (b)(2)-1 on the following pages of Exhibit 30: Kishore 24, 26, 29, 46, 63, 73, 103,

105, 107, 110-112, 122-123, 125, 130, 133, 142, 151, 153, 155-156, 227, 243, 245, 253-254, 259-260, and 275.

### (b)(2)-2    Internal Rules and Practices

(59)    Form FD-515 is a form used by FBI investigative SAs to report investigative accomplishments. This form is submitted at various stages of an investigation to report statistical accomplishments such as an arrest, the recovery of stolen property, and other law enforcement acheivements. At the upper right hand side of this form is a block captioned "Investigative Assistance and Techniques Used." This block lists investigative techniques, some of which were used by the investigative personnel during the investigation of plaintiff and others. Opposite each investigative technique is a rating column that records a numerical rating from 1 to 4 to rate each technique used by investigative personnel during the course of the investigation. The numerical rating evaluates the effectiveness of each technique used in bringing the investigation to a successful conclusion. The entire rating column has been deleted to protect from release the various techniques used in the investigation of plaintiff and others in the records responsive to plaintiff's request. If the rating columns were released along with the ratings of each technique used, plaintiff and others involved in similar criminal enterprises could change their activities and modus operandi in order to avoid detection and/or surveillance in the future. Therefore, protection of these rating columns is essential to prevent future circumvention of the law by criminals. The FBI will use the same or similar techniques to bring similar future investigations to a successful conclusion.

(60)    Exemption (b)(2)-2 has also been asserted at times in conjunction with (b)(7)(E)-2

22

to protect the detailed description of the manner in which the FBI arranged and executed arrest

and search operations during the criminal investigation of plaintiff.  The details of the arrest and

search operations are clearly an internal practice and are memorialized on a form entitled

Oklahoma City Division Operations Order.  If the FBI were to disclose the procedures of how it

conducts arrest and search operations and release details of the specific techniques used, it could

jeopardize the effectiveness of any future FBI arrest and search operations by providing the

criminal element with a birds eye view of what to anticipate with relation to FBI arrest and search

procedures.  Exemption (b)(2)-2 has been asserted on the following pages of Exhibit 30: Kishore

40, 42-44, 69, 71-73, 75-76, 301-302, 304, and 307.

## EXEMPTION (b)(3)
## INFORMATION PROTECTED BY STATUTE

(61)    5 U.S.C. § 552 (b)(3) exempts from disclosure information which is:

specifically exempted from disclosure by statute . . . provided that such statute (A)
requires that the matters be withheld from the public in such a manner as to leave
no discretion on the issue, or (B) establishes particular criteria for withholding or
refers to particular types of matters to be withheld.

### (b)(3)        Federal Grand Jury Information

(62)    Exemption (b)(3) was asserted in conjunction with Rule 6(e) of the Federal Rules

of Criminal Procedure to withhold Federal Grand Jury information.  It is well-established that

Rule (6)(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury material

regardless of the substance in which the material is contained.  In the investigative files responsive

to plaintiff's request, only that information which explicitly discloses matters occurring before a

Federal Grand Jury has been withheld pursuant to Exemption (b)(3).  Specifically, Federal Grand

Jury subpoenas, as well as the names, identifying information of individuals subpoenaed to testify

before the Federal Grand Jury, and information that identifies specific records subpoenaed by the

Federal Grand Jury were withheld pursuant to this exemption. Accordingly, any such disclosure

would clearly violate the secrecy of the grand jury proceedings and could reveal the inner

workings of the grand jury that considered this case. The FBI has properly withheld this

information pursuant to Exemption (b)(3) on the following pages of Exhibit 30: Kishore 179-189,

249-253, and 281.

### FOIA EXEMPTION (b)(6)
### CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

(63)    5 U.S.C. § 552 (b)(6) exempts from disclosure:

personnel and medical files and similar files when the disclosure of such
information would constitute a clearly unwarranted invasion of personal privacy.

(64)    When withholding information pursuant to this exemption, the FBI is required to

balance the privacy interests of the individuals mentioned in these records against any public

interest in disclosure. In asserting this exemption, each item of information has been scrutinized

to determine the nature and strength of the privacy interest of every individual whose name and/or

identifying information appears in the documents at issue. When withholding the information,

each individual's privacy interests are balanced against the public's interest in disclosure. When

conducting this analysis, the public interest in disclosure of this information is determined by

whether the information in question would inform plaintiff and the general public about the FBI's

performance of its mission to protect and defend the United States against terrorist and foreign

intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide

24

leadership and criminal justice services to federal, state, municipal, and international agencies and partners. In each instance where information was withheld pursuant to Exemption (b)(6), the FBI determined that the individual's privacy interests were not outweighed by any public interest in disclosure. To reveal the names, personal identifiers and other identifying information of third party individuals in the context of these records could reasonably be expected to cause embarrassment and humiliation thus constituting a clearly unwarranted invasion of personal privacy. Every effort has been made to release all segregable information contained in these records without invading the privacy interests of third parties.

### (b)(6)-1    Names and/or Identifying Information of FBI Special Agents and Support Personnel

(65)    Exemption (b)(6)-1 has been asserted in conjunction with Exemption (b)(7)(C)-1 to protect the names of FBI Special Agents (SAs )who are responsible for conducting, supervising, and/or maintaining the investigative activities reported in this murder for hire and embezzlement investigation. Identifying information includes the names of FBI SAs and FBI telephone numbers. Publicity, adverse or otherwise, regarding any particular investigation conducted by SAs may seriously impair their effectiveness in conducting future investigations. The privacy consideration also protects SAs from unnecessary, unofficial questioning as to the conduct of an investigation, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into violations of various criminal statutes, counter-terrorism, and national security cases. They come into contact with all strata of society and conduct searches and make arrests, both of which result in reasonable, but nonetheless serious disturbances in the lives

25

of individuals. It is possible for a person targeted by such law enforcement action to carry a grudge which may last for years, and to seek revenge on the SAs involved in the investigation. The publicity associated with the release of the identity of an FBI SA in connection with a particular investigation could trigger hostility towards the SA by such persons.

(66)    The names and identifying information of FBI support personnel have also been withheld pursuant to Exemption (b)(6)-1 in conjunction with Exemption (b)(7)(C)-1. Support personnel are assigned to handle tasks relating to FBI investigations. These individuals are in positions to access information concerning official law enforcement, counter-terrorism, and national security investigations. They could therefore become targets of harassing inquiries for unauthorized access to FBI investigations if their identities were released.

(67)    The FBI also examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs and support employees referenced in the responsive records. The FBI could not identify any discernible public interest. In particular, the FBI could not determine how the disclosure of the names and telephone numbers of these FBI SAs and support employees would shed any light on the operations and activities of the FBI. Thus, the FBI determined that the SAs and support employees' privacy interests outweighed any public interest in disclosure, and that disclosure of the names and telephone numbers of the FBI SAs and support employees would constitute a clearly unwarranted invasion of privacy. There is no legitimate public interest to be served in releasing the names or identifying information of these FBI SAs and support employees. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(6) on the following pages of Exhibit

26

30: Kishore 3-18, 20-21, 24, 26, 29-30, 33, 35, 38-40, 42-44, 46-48, 56-59, 63, 67-68, 70, 73, 81-82, 85, 93-100, 102-103, 105, 107-113, 116-117, 119-120, 122-126, 129-133, 135, 138-139, 141-145, 149-156, 158, 165, 169, 172-173, 179, 181, 183–186, 190, 192, 194, 205, 208, 211-213, 217, 224-230, 233–247, 249-250, 252-256, 259-263, 265-270, 274-278, 280-281, 283-287, 289, 293-300, 303-310, and 318-320.

### (b)(6)-2        Names of Non-FBI Federal Law Enforcement Employees

(68)    Exemption (b)(6)-2 has been asserted in conjunction with (b)(7)(C)-2 to protect the names of non-FBI federal law enforcement employees who are employed with the Drug Enforcement Agency (DEA) and the Immigration and Customs Enforcement. Accordingly, the rationale for protecting FBI Special Agent and support personnel identities found at Paragraphs 65-67, supra, also pertains to withholding the name of these non-FBI federal law enforcement employees. To release the identity of these non-FBI federal law enforcement employee could subject them to unnecessary, unwarranted harassment. Furthermore, they could become a prime target for compromise, if their identity were known.

(69)    The FBI also examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the non-FBI federal law enforcement employees referenced in the responsive records. The FBI could not identify any discernible public interest. In particular, the FBI could not determine how the disclosure of the names of these individuals would shed any light on the operations and activities of the FBI. Thus, the FBI determined that the non-FBI federal law enforcement employees' privacy interest outweighed any public interest in disclosure, and that disclosure of the names of these employees

27

would constitute a clearly unwarranted invasion of privacy. There is no public interest to be served in releasing the identity of these individuals. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(6) on the following page of Exhibit 30: Kishore 18-19, 142, 283, and 307.

### (b)(6)-3    Names and Identifying Information of State and Local Law Enforcement Personnel

(70)    Exemption (b)(6)-3 has been asserted in conjunction with (b)(7)(C)-3 to protect the names and identifying information of one state and two local law enforcement employees. These local law enforcement employees are members of the Oklahoma State Bureau of Investigation, Oklahoma City Fire Department, and the Prague City Police Department. These employees were acting in their official capacity in the law enforcement investigation of plaintiff's involvement in murder for hire and embezzlement, as documented in the records responsive to plaintiff's request. In some instances, these employees were acting as part of a task force comprised of FBI SAs and Prague City Police Officers. The rationale for protecting the identities of FBI SAs and support personnel explained in Paragraphs 65-67, supra, also pertains to withholding the names and identifying information of these local law enforcement employees. To release the identities of these law enforcement employees could subject them as individuals to unnecessary, unwarranted harassment. Furthermore, these individuals could become a prime target for compromise, if their identities were known.

(71)    The FBI examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the state and local law enforcement employees referenced in the responsive records. The FBI could not identify any discernible public

28

interest in disclosure. In particular, the FBI determined that disclosure of the names and

identifying information of these state and local law enforcement employees would shed no light

on the internal operations and activities of the FBI. Thus, the FBI determined that the state and

local law enforcement employees' privacy interests outweighed any public interest in disclosure,

and that disclosure of the names and/or identifying information of these employees would

constitute a clearly unwarranted invasion of privacy. Accordingly, the FBI has properly withheld

this information pursuant to Exemption (b)(6) on the following pages of Exhibit 30: Kishore 38,

48, 68, 70, 72, 89, 91, 181, 229-231, 249, and 298.

### (b)(6)-4          Names and/or Identifying Information of a Victim

(72)    Exemption (b)(6)-4 has been asserted in conjunction with (b)(7)(C)-4 to protect the

name of the victim in a murder for hire plot orchestrated by plaintiff. Plaintiff attempted to set

plans in motion to have this individual murdered or conduct the murder himself. This victim was

unaware of this murder plot and in fact completely trusted and considered plaintiff to be a best

friend, as cited in a newspaper article concerning the crime committed by plaintiff. To release this

victim's name to the general public could re-open old emotional wounds caused by the betrayal of

the man considered to be a best friend. Also, based upon the fact that this murder for hire plot

was sensationalized in the local media, it may spark new media interest causing unnecessary

anguish in the life of the victim. The FBI sees no reason to violate this victims's privacy or force

the victim to relive this traumatic event in his life.

(73)    The FBI examined the records at issue to determine whether there was any public

interest that outweighed the substantial privacy interests of this victim referenced in the

29

responsive records. The FBI could not identify any discernible public interest to be served in

releasing the name of this victim. In particular, the FBI determined that disclosure of the name of

this victim would shed no light on the internal operations and activities of the FBI. Thus, the FBI

determined that victim's privacy interests outweighed any public interest in disclosure, and that

disclosure of the victim's name would constitute a clearly unwarranted invasion of privacy.

Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(6) on the

following pages of Exhibit 30: Kishore 3-17, 45, 63, 65, 103, 105-107, 111-112, 122-123, 127,

130, 133, 142, 226, 234, 236, 238, 241, 244, 252-253, 293, 295-297, 307, and 317-320.

### (b)(6)-5    Names and/or Identifying Information of Third Parties who Provided Information

(74)    Exemption (b)(6)-5 has been asserted in conjunction with Exemption (b)(7)(C)-5

to protect the names and identifying information of third parties who provided information to the

FBI. Disclosure of the identities of these third parties could have a detrimental effect on the

current and future cooperation of other individuals willing to provide information to the FBI

inasmuch as they would have little or no faith in the FBI's ability to maintain their information in

confidence. Thus, their names and any specific information provided by these third parties, which

could ultimately identify them, has been protected.

(75)    The FBI examined the records at issue to determine whether there was any public

interest that outweighed the substantial privacy interests of the individuals who provided

information to the FBI referenced in the responsive records. The FBI could not identify any

discernible public interest to be served in releasing the names and/or identifying information of

these individuals. In particular, the FBI determined that disclosure of the names of these

individuals would shed no light on the internal operations and activities of the FBI. Thus, the FBI determined that the privacy interests of individuals who provided information to the FBI outweighed any public interest in disclosure, and that disclosure of the names and/or identifying information of these individuals would constitute a clearly unwarranted invasion of privacy. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(6) on the following pages of Exhibit 30: Kishore 11-14, 18-19, 27-28, 30-38, 59-62, 65, 67, 69-72, 89-90, 93-97, 107, 113-116, 125-126, 158-171, 173-181, 185-186, 190-216, 224-226, 228, 236, 238-239, 249-250, 301-307, 311, and 317-320.

### (b)(6)-6    Names and/or Identifying Information of Third Parties Merely Mentioned

(76)    Exemption (b)(6)-6 has been asserted in conjunction with (b)(7)(C)-6 to protect the names and identifying information of third parties that were merely mentioned in the documents at issue. Identifying information concerning these individuals includes their complete physical descriptions, addresses, dates of birth, and Social Security numbers. These individuals are not of investigative interest to the FBI. To release this type of information about private citizens, without notarized authorizations permitting such release, violates the individual's legitimate privacy interests. If the FBI disclosed their names and other personal information, the disclosure would reveal that these third parties were at one time connected with an FBI investigation in some way. Disclosure of their identities could subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them.

(77)    The FBI also examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the third parties merely

31

mentioned in the responsive records. The FBI could not identify any discernible public interest. In particular, the FBI could not determine how the disclosure of the names, and/or identifying information of these individuals would shed any light on the operations and activities of the FBI. Thus, the FBI determined that the these individuals privacy interests outweighed any public interest in disclosure, and that disclosure.of the names and/or identifying information of the third parties merely mentioned would constitute a clearly unwarranted invasion of privacy. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(6) on the following pages of Exhibit 30: Kishore 6-8, 12-14, 18-19, 27, 31, 34-37, 47-56, 58-62, 66-67, 69, 77, 84, 89-90, 93, 95-102, 107-110, 112-116, 121, 129, 133-140, 149-153, 160-164, 166-168, 170-171, 174-176, 178-179, 182, 187-188, 193-204, 206, 212, 214-216, 218-223, 234, 236, 238, 251-252, 261, 278-280, 284-290, 305-306, and 313-316.

### EXEMPTION 7

### EXEMPTION 7 THRESHOLD

(78)    Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. See 5 U.S.C. § 552(b)(7). In this case, the harm that could reasonably be expected to result from disclosure concerns invasion of personal privacy, revealing the identity of confidential sources, and revealing sensitive investigative techniques.

(79)    Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement

purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency. The FBI received information that caused it to initiate a criminal investigation into a possible solicitation to commit murder. This investigation was conducted pursuant to 18 U.S.C. § 1958, jointly by the FBI's Violent Crimes Task Force[17] and the Prague Oklahoma, Police Department. Investigators learned that plaintiff was in the process of purchasing a $100,000 life insurance policy on a business partner and was then planning to take the partner on a business trip oversees where he was going to murder him. Thus, there is no doubt that this investigation falls within the law enforcement duties of the FBI. Accordingly, the information readily meets the threshold requirement of Exemption 7.

(80)    Because the records clearly meet the Exemption 7 threshold, the remaining inquiry is whether its disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," "disclose the identity of confidential sources," or "reveal law enforcement techniques."

### EXEMPTION (b)(7)(C)
### UNWARRANTED INVASION OF PERSONAL PRIVACY

(81)    5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy.

---

[17] The FBI's Violent Crimes Task Force is comprised of investigators from the FBI, Oklahoma City Police Department, and the Oklahoma County Sheriff's Office.

(82)    When withholding information pursuant to this exemption, the FBI is required to

balance the privacy interests of the individuals mentioned in the documents against any public

interest in disclosure. In asserting this exemption, each piece of information was examined to

determine the degree and nature of the privacy interest of any individual whose name and

identifying information, including telephone numbers, appears in these records. The public

interest in disclosure of the information is determined by whether the information in question

would inform plaintiff or the general public about the FBI's performance of its mission to protect

and defend the United States against terrorist and foreign intelligence threats, to uphold and

enforce the criminal laws of the United States, and to provide leadership and criminal justice

services to federal, state, municipal, and international agencies and partners. In each instance

where (b)(7)(C) information was withheld, it was determined that individual privacy interests

were not outweighed by any public interest in disclosure. To reveal the names and identifying

information, including telephone numbers, of third party individuals in the context of these

records could reasonably be expected to cause embarrassment and humiliation, and thus constitute

an unwarranted invasion of personal privacy. Every effort has been made to release all reasonably

segregable information contained in these records without invading the privacy interests of third

parties. As explained below, there is no legitimate public interest in the information withheld

pursuant to Exemption (b)(7)(C).

### (b)(7)(C)-1    Names and/or Identifying Information of FBI Special Agents and Support Personnel

(83)    Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemption (b)(6)-1

to protect the names of FBI Special Agents (SAs) who are responsible for conducting,

supervising, and/or maintaining the investigative activities reported in this murder for hire and embezzlement investigation. Identifying information includes the names of FBI SAs and FBI telephone numbers. Publicity, adverse or otherwise, regarding any particular investigation conducted by SAs may seriously impair their effectiveness in conducting future investigations. The privacy consideration also protects SAs from unnecessary, unofficial questioning as to the conduct of an investigation, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into violations of various criminal statutes, counter-terrorism, and national security cases. They come into contact with all strata of society and conduct searches and make arrests, both of which result in reasonable, but nonetheless serious disturbances in the lives of individuals. It is possible for a person targeted by such law enforcement action to carry a grudge which may last for years, and to seek revenge on the SAs involved in the investigation. The publicity associated with the release of the identity of an FBI SA in connection with a particular investigation could trigger hostility towards the SA by such persons.

(84)    The names and identifying information of FBI support personnel have also been withheld pursuant to Exemption (b)(7)(C)-1 in conjunction with Exemption (b)(6)-1. Support personnel are assigned to handle tasks relating to FBI investigations. These individuals are in positions to access information concerning official law enforcement, counter-terrorism, and national security investigations. They could therefore become targets of harassing inquiries for unauthorized access to FBI investigations if their identities were released.

(85)    The FBI also examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs and support

35

employees referenced in the responsive records. The FBI could not identify any discernible public interest. In particular, the FBI could not determine how the disclosure of the names and telephone numbers of these FBI SAs and support employees would shed any light on the operations and activities of the FBI. Thus, the FBI determined that the SAs and support employees' privacy interests outweighed any public interest in disclosure, and that disclosure of the names and telephone numbers of the FBI SAs and support employees could constitute an unwarranted invasion of privacy. There is no legitimate public interest to be served in releasing the names or identifying information of these FBI SAs and support employees. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(7)(C) on the following pages of Exhibit 30: Kishore 3-18, 20-21, 24, 26, 29-30, 33, 35, 38-40, 42-44, 46-48, 56-59, 63, 67-68, 70, 73, 81-82, 85, 93-100, 102, 103, 105, 107-113, 116-117, 119-120, 122-126, 129-133, 135, 138-139, 141-145, 149-156, 158, 165, 169, 172-173, 179, 181, 183-186, 190, 192, 194, 205, 208, 211-213, 217, 224-230, 233-247, 249-250, 252-256, 259-263, 265-270, 274-278, 280-281, 283-287, 289, 293-300, 303-310, and 318-320.

### (b)(7)(C)-2    Names of Non-FBI Federal Law Enforcement Employees

(86)    Exemption (b)(7)(C)-2 has been asserted in conjunction with (b)(6)-2 to protect the names of non-FBI federal law enforcement employees who are employed with the Drug Enforcement Agency (DEA) and the Immigration and Customs Enforcement. Accordingly, the rationale for protecting FBI Special Agent and support personnel identities found at Paragraphs 83-85, supra, also pertains to withholding the names of these non-FBI federal law enforcement employees. To release the identity of these non-FBI federal law enforcement employee could

subject them to unnecessary, unwarranted harassment. Furthermore, they could become a prime target for compromise, if their identity were known.

(87)    The FBI also examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the non-FBI federal law enforcement employees referenced in the responsive records. The FBI could not identify any discernible public interest. In particular, the FBI could not determine how the disclosure of the names of these individuals would shed any light on the operations and activities of the FBI. Thus, the FBI determined that the non-FBI federal law enforcement employees' privacy interest outweighed any public interest in disclosure, and that disclosure of the names of these employees could constitute an unwarranted invasion of privacy. There is no public interest to be served in releasing the identity of these individuals. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(7)(C). Exemption (b)(7)(C)-2 has been asserted on the following page of Exhibit 30: Kishore 18, 19, 142, 283, and 307.

### (b)(7)(C)-3    Names and Identifying Information of State and Local Law Enforcement Personnel

(88)    Exemption (b)(7)(C)-3 has been asserted in conjunction with (b)(6)-3 to protect the names and identifying information of one state and two local law enforcement employees. These local law enforcement employees are members of the Oklahoma State Bureau of Investigation, Oklahoma City Fire Department, and the Prague City Police Department. These employees were acting in their official capacity in the law enforcement investigation of plaintiff's involvement in murder for hire and embezzlement, as documented in records responsive to plaintiff's requests. In some instances, these employees were acting as part of a task force comprised of FBI SAs and

37

Prague City Police Officers. The rationale for protecting the identities of FBI SAs and support personnel explained in Paragraphs 83-85, supra, also pertains to withholding the names and identifying information of these local law enforcement employees. To release the identities of these law enforcement employees could subject them as individuals to unnecessary, unwarranted harassment. Furthermore, these individuals could become a prime target for compromise, if their identities were known.

(89)     The FBI examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the state and local law enforcement employees referenced in the responsive records. The FBI could not identify any discernible public interest in disclosure. In particular, the FBI determined that disclosure of the names and identifying information of these state and local law enforcement employees would shed no light on the internal operations and activities of the FBI. Thus, the FBI determined that the state and local law enforcement employees' privacy interests outweighed any public interest in disclosure, and that disclosure of the names and/or identifying information of these employees could constitute an unwarranted invasion of privacy. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(7)(C) on the following pages of Exhibit 30: Kishore 38, 48, 68, 70, 72, 89, 91, 181, 229-231, 249, and 298.

**(b)(7)(C)-4     Names and/or Identifying Information of a Victim**

(90)     Exemption (b)(7)(C)-4 has been asserted in conjunction with (b)(6)-4 to protect the name of the victim in a murder for hire plot orchestrated by plaintiff. Plaintiff attempted to set plans in motion to have this individual murdered or conduct the murder himself. This victim was

38

unaware of this murder plot and in fact completely trusted and considered plaintiff to be a best

friend, as cited in a newspaper article concerning the crime committed by plaintiff. To release this

victim's name to the general public may re-open old emotional wounds caused by the betrayal of

the man considered to be a best friend. Also, based upon the fact that this murder for hire plot

made front page news in the local media, it may spark new media interest causing unnecessary

anguish in the life of the victim. The FBI sees no reason to violate this victims's privacy or force

the victim to relive this traumatic event in his life.

(91)     The FBI examined the records at issue to determine whether there was any public

interest that outweighed the substantial privacy interests of this victim referenced in the

responsive records. The FBI could not identify any discernible public interest to be served in

releasing the name of the victim. In particular, the FBI determined that disclosure of the name of

this victim would shed no light on the internal operations and activities of the FBI. Thus, the FBI

determined that victim's privacy interests outweighed any public interest in disclosure, and that

disclosure of the victim's name could constitute an unwarranted invasion of privacy. Accordingly,

the FBI has properly withheld this information pursuant to Exemption (b)(7)(C) on the following

pages of Exhibit 30: Kishore 3-17, 45, 63, 65, 103, 105-107, 111-112, 122-123, 127, 130, 133,

142, 226, 234, 236, 238, 241, 244, 252-253, 293, 295-297, 307, and 317-320.

### (b)(7)(C)-5     Names and/or Identifying Information of Third Parties Who Provided Information

(92)     Exemption (b)(7)(C)-5 has been asserted in conjunction with Exemption (b)(6)-5

to protect the names and identifying information of third parties who provided information to the

FBI. Disclosure of the identities of these third parties could have a detrimental effect on the

current and future cooperation of other individuals willing to provide information to the FBI inasmuch as they would have little or no faith in the FBI's ability to maintain their information in confidence. Thus, their names and any specific information provided by these third parties, which could ultimately identify them, has been protected.

(93)    The FBI examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the individuals who provided information to the FBI referenced in the responsive records. The FBI could not identify any discernible public interest to be served in releasing the names and/or identifying information of these individuals. In particular, the FBI determined that disclosure of the names of these individuals would shed no light on the internal operations and activities of the FBI. Thus, the FBI determined that the individuals who provided information to the FBI privacy interests outweighed any public interest in disclosure, and that disclosure of the names and/or identifying information of these individuals could constitute an unwarranted invasion of privacy. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(7)(C) on the following pages of Exhibit 30: Kishore 11-14, 18-19, 27-28, 30–38, 59-62, 65, 67, 69-72, 89-90, 93-97, 107, 113-116, 125-126, 158-171, 173-181, 185-186, 190-216, 224-226, 228, 236, 238-239, 249-250, 301-307, 311, 317-320.

### (b)(7)(C)-6    Names and/or Identifying Information of Third Parties Merely Mentioned

(94)    Exemption (b)(7)(C)-6 has been asserted in conjunction with (b)(6)-6 to protect the names and identifying information of third parties that were merely mentioned in the documents at issue. Identifying information concerning these individuals includes their complete physical

descriptions, addresses, dates of birth, and Social Security numbers. These individuals are not of

investigative interest to the FBI. To release this type of information about private citizens,

without notarized authorizations permitting such release, violates the individual's legitimate

privacy interests. If the FBI disclosed their names and other personal information, the disclosure

would reveal that these third parties were at one time connected with an FBI investigation in some

way. Disclosure of their identities could subject these individuals to possible harassment or

criticism and focus derogatory inferences and suspicion on them.

(95)    The FBI also examined the records at issue to determine whether there was any

public interest that outweighed the substantial privacy interests of the third parties merely

mentioned in the responsive records. The FBI could not identify any discernible public interest.

In particular, the FBI could not determine how the disclosure of the names, and/or identifying

information of these individuals would shed any light on the operations and activities of the FBI.

Thus, the FBI determined that the these individuals privacy interests outweighed any public

interest in disclosure, and that disclosure of the names and/or identifying information of the third

parties merely mentioned could constitute an unwarranted invasion of privacy. Accordingly, the

FBI has properly withheld this information pursuant to Exemption (b)(7)(C) on the following

pages of Exhibit 30: Kishore 6-8, 12-14, 18-19, 27, 31, 34-37, 47-56, 58-62, 66-67, 69, 77, 84,

89-90, 93, 95-102, 107-110, 112-116, 121, 129, 133-140, 149-153, 160-164, 166-168, 170-171,

174-176, 178-179, 182, 187-188, 193-204, 206, 212, 214-216, 218-223, 234, 236, 238, 251-252,

261, 278-280, 284-290, 305-306, and 313-316.

### EXEMPTION (b)(7)(D)
### CONFIDENTIAL SOURCE MATERIAL

(96)    5 U.S.C. § 552 (b)(7)(D) provides protection for:

records or information compiled for law enforcement purposes, but only to the extent that
the production of such law enforcement records or information . . . could reasonably be
expected to disclose the identity of a confidential source, including a State, local or foreign
agency or authority or any private institution which furnished information on a
confidential basis, and, in the case of a record or information compiled by a criminal law
enforcement authority in the course of a criminal investigation or by an agency conducting
a lawful national security intelligence investigation, information furnished by a
confidential source.

(97)    Numerous informants report to the FBI on a regular basis and are informants in the

common meaning of the term. During the course of an investigation, individuals are interviewed

under circumstances from which an assurance of confidentiality can reasonably be inferred.

These individuals are considered to be confidential sources since they furnish information only

with the understanding that their identities and the information provided will not be divulged

outside the FBI. Information provided by these individuals is singular in nature and if released,

could reveal the informant's identity.

(98)    During the course of the FBI's Violent Crimes Task Force and the Prague Police

Department investigation of Sundeep Kishore, FBI Special Agents interviewed and gained the

assistance of numerous individuals who provided information. This information greatly aided the

successful conclusion of the investigation. Information was provided by third parties under both

implied and express assurances of confidentiality.

(99)    These individuals were placed directly in positions that could subject them to acts

of reprisal, harassment, or an unnecessary amount of public attention if their cooperation with the

FBI was disclosed. The FBI has learned through experience that individuals who provide information about subjects under investigation must be free to do so without fear of reprisal should their identities or information they provided be disclosed outside their confidential relationship with the FBI. Individuals who provide investigative information must be free to furnish that information to the FBI with complete candor and without the understandable tendency to hedge or withhold information out of fear that their names or their cooperation with the FBI will later be made public. Those who provide information in these investigations should be secure in the knowledge that their assistance and their identities will be held in confidence.

### (b)(7)(D)-1    Name and Identifying Information Furnished by a Third Party Who Provided Information to the FBI with an "Express" Assurance of Confidentiality

(100)    Exemption (b)(7)(D)-1 has been asserted in conjunction with (b)(6)-5 and (b)(7)(C)-5 to protect the name, identifying information, and the information furnished by a third party who was interviewed during the course of the FBI's investigation to gain information about the criminal activities of Sundeep Kishore. This information was provided to the FBI by a third party under an express assurance of confidentiality. In this case, an individual specifically requested that his/her identity not be disclosed. Prior to conducting the interview, the FBI expressly promised this interviewee that his/her identity and the information he/she provided would not be released. This is evidenced by the word "PROTECT" when this individual's name is referenced in the file. The word "PROTECT" is a positive indication supporting an express assurance of confidentiality.

(101)    The FBI protected the content of this individual's interview as the release of this

43

information would clearly allow plaintiff to determine his/her identity. This source provided

valuable information that is extremely detailed and singular in nature. The disclosure of the

identity or information provided by this individual could endanger his/her life and/or physical

safety. In addition, disclosure of the identity of this confidential source who was expressly

promised confidentiality has wider implications. If the FBI disclosed the identities of confidential

sources that entered into express confidentiality agreements, that revelation could have a chilling

effect on the activities and cooperation of other FBI confidential sources. The FBI has found that

it is only with the understanding of complete confidentiality that the aid of such sources can be

enlisted, and only through this confidence that these sources can be persuaded to continue

providing valuable assistance in the future. The FBI has released as much segregable information

as possible without disclosing the sources' identification. Thus, the FBI has properly withheld this

information pursuant to Exemption (b)(7)(D) on the following pages of Exhibit 30: Kishore

301–320.

### (b)(7)(D)-2    Name and/or Identifying Information of a Third Party Who Provided Information to the FBI with an "Implied" Assurance of Confidentiality

(102)    Exemption (b)(7)(D)-2 has been asserted in conjunction with (b)(6)-5 and

(b)(7)(C)-5 to protect the name, identifying information, and the information furnished by a third

party who was interviewed during the course of the FBI's investigation into the criminal activities

of Sundeep Kishore. This individual was interviewed under circumstances from which an

assurance of confidentiality can be implied based on the violent nature of the crime for which

plaintiff was being investigated. Namely, murder for hire. Interviews conducted under such

assurances of confidentiality warrant the protection of the interviewee's name as well as the

information provided by the interviewee, but only to the extent that the information would identify

the interviewee. Any specific information provided by this source could possibly reveal his/her

identity to persons knowledgeable of the circumstances surrounding this investigation. When

processing these records concerning plaintiff, the objective was to release as much segregable

information as possible without revealing the identity of the individual who was interviewed.

Therefore, the primary concern in processing these documents became the protection of the

interviewee's identity. If the interviewee's identity was released, it could subject him/her to

embarrassment, humiliation, or possible physical harm not only for him or herself but also for

his/her family. Protection extends beyond the name of the interviewee, and includes all other

possible identifying information about the interviewee. To breach the anonymity that this witness

expected when he/she agreed to cooperate with the FBI in this investigation could seriously

undermine any credibility the FBI would have in getting cooperation in future investigations.

Thus, the FBI has properly withheld this information pursuant to Exemption (b)(7)(D) on the

following pages of Exhibit 30: Kishore 89-92 and 133-134.

### (b)(7)(D)-3    Information Provided by State and Local Law Enforcement Agencies

(103)   Exemption (b)(7)(D)-3 has been asserted to protect investigative information

provided by state and local law enforcement agencies. This information was compiled by

criminal law enforcement agencies, provided on a confidential basis, and was not intended for

dissemination outside of the law enforcement community. To disseminate this information to the

general public could breach the level of trust that these law enforcement agencies have with the

45

FBI and could sever the FBI's relationship with these state and local agencies. Further, if the FBI were to disclose this information, other local, county, and state law enforcement agencies could refuse to cooperate and provide the FBI with essential information during future investigations. Moreover, because the FBI relies on the close cooperation of federal, state, and local law enforcement agencies, it is clear that any such disclosure could result in destructive, far-reaching consequences for the FBI's other law enforcement endeavors. Accordingly, it is clear that these state and local law enforcement agencies provided this information with the expectation of complete confidentiality. Thus, the FBI has properly withheld this information pursuant to Exemption (b)(7)(D) on the following pages of Exhibit 30: Kishore 107, 110, and 230-231.

## EXEMPTION (b)(7)(E)

## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(104)   5 U.S.C. § 552(b)(7)(E) provides for the withholding of:

> law enforcement records which would disclose techniques and
> procedures for law enforcement investigations or prosecutions,
> or would disclose guidelines for law enforcement investigations
> or prosecutions if such disclosure could reasonably be expected
> to risk circumvention of the law.

### (b)(7)(E)-1     FD-515: Investigative Accomplishment Reports and Narratives

(105)   Exemption (b)(7)(E)-1 has been asserted in conjunction with (b)(2)-2 to protect certain information on FBI Form FD-515, which is a form used by FBI SAs to report investigative accomplishments. This form is submitted at various stages in an investigation to report statistical results such as an arrest, the recovery of stolen property, and other law enforcement acheivments. At the upper right hand side of this form is a block captioned "Investigative Assistance and

46

Technique Used." This block lists 27 publicly known investigative techniques and/or assistance of which some were used by the investigative personnel during this murder for hire investigation. Opposite each investigative technique and assistance is a rating column which records a numerical rating from 1-4 for each technique/assistance used by investigative personnel during the course of the investigation into plaintiff's criminal activity. The numerical rating evaluates the effectiveness of each technique/assistance used in bringing the investigation of plaintiff to a successful conclusion. The entire rating column is deleted in order to protect from release the techniques and assistance used in the investigation of plaintiff and others in records responsive to plaintiff's request. If the rating column were released along with the ratings of each technique and assistance used, plaintiff and others involved in similar criminal enterprises could change their activities and modus operandi in order to avoid detection and/or surveillance in the future. Therefore, protection of this rating column is essential in order to prevent future circumvention of the law by criminals. The FBI will use the same or similar techniques to bring similar future investigations to successful conclusions. Thus, the FBI has properly withheld this information pursuant to (b)(7)(E) on the following pages of Exhibit 30: Kishore 40, 42-44.

### (b)(7)(E)-2    Details of an FBI Operations Order

(106) Exemption (b)(7)(E)-2 has been asserted in conjunction with (b)(2)-2 to protect the detailed description of the manner in which the FBI arranged and executed arrest and search operations during the criminal investigation of plaintiff. The details of the arrest and search operations are clearly an internal practice and are memorialized on a form entitled Oklahoma City Division Operations Order. If the FBI were to disclose the procedures of how it conducts arrest

and search operations and release details of the specific techniques used, it could jeopardize the effectiveness of any future FBI arrest and search operations by providing the criminal element with a birds eye view of what to anticipate with relation to FBI arrest and search procedures. Exemption (b)(7)(E)-2 has been asserted on the following pages of Exhibit 30: Kishore 69, 71-72, 302, 304, and 307.

## CONCLUSION

(107)    The FBI has processed and released all reasonably segregable information from the records responsive to plaintiff's request to the FBI and the documents referred to the FBI by the EOUSA.  No reasonably segregable information has been withheld pursuant to Privacy Act (j)(2), 5 U.S.C. § 552a; and FOIA Exemptions 2, 3, 6, 7(C), 7(D), and 7(E), 5 U.S.C. §§ 552 (b)(2), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Furthermore, the FBI carefully examined the responsive documents and determined that the information withheld from plaintiff, if disclosed, could reasonably be expected to reveal internal administrative information, information protected by statute, cause an unwarranted invasion of personal privacy, disclose the identities of confidential sources, impede the effectiveness of the FBI's internal law enforcement procedures, by disclosing the effectiveness of techniques and procedures for law enforcement investigations and/or disclosing techniques and procedures risking circumvention of the law.  Accordingly, the FBI has released all reasonably segregable, nonexempt information to plaintiff in response to his FOIA/Privacy Act requests to the FBI and information referred by the EOUSA.

48

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits 1-30 attached hereto are true and correct copies.

Executed this __4th__ day of January, 2008.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

49

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                          )
                                          )
        Plaintiff,                        )
                                          )
              v.                          )        Civ. Action No. 07-1299 (RMC)
                                          )
                                          )
U.S. DEPARTMENT OF JUSTICE, <u>et al.</u>,  )
                                          )
        Defendants.                       )

# Exhibit 1

To,
Mr. David M. Hardy                                    3-3-05
F.B.I.
935 Pennsylvania Avenue N.W.
Washington D.C. 20535-0001

RE: 1) Freedom of Information Act
    2) Open-Records Act

Dear Sir,
My name is Sundeep-Kishore, and I have been
charged in Oklahoma County, OK, under CF: 2003-
1331, and CF: 2004-5785. The Oklahoma City Division
of the F.B.I., has the relevant subject matter
in the F.B.I.'s internal File No 166C-OC-64741.
I was investigated, and arrested by the F.B.I.'s
SA Wagner, and SA Swareni on 3-1-03.
As my trial is eventually supposed to start on
the 22nd of April 05 I am requesting for an
expedited review, of "any and all" information,
vital for the best interests of my "due-process"
rights, under the F.O.I Act, or the "Open-Records"
Act.
I am sure that none of the subject matter,
is of a threat to national security, or
classified information, nor of a senitive
nature.

2

I am trying to find out, if the investigation was done in an arbitrary fashion, or was I the suspect, or in the 'near-suspect' classification, or did I fit a certain racial profile. I have requested the F.B.I's local OK City Division in early Dec 2004, and got no response. I would be grateful if you could advise me, of what is the best possible way, of getting access to the required information.

Thanking You,

Respectfully,

Kishore

SUNDEEP-KISHORE
8 A 23
201 N. SHARTEL
OKC  OK-73102-2227

Pages 1-2

Copy:
1) Mr. James B Comey  Deputy Attorney General Dept of Justice
2) Ms Melanie Ann Putsay Deputy Director Dept of Justice
3) Mr. Drew Edmondson Attorney General OK.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SUNDEEP KISHORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 07-1299 (RMC) |
| | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# Exhibit 2



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

March 11, 2005

Mr. Sundeep Kishore
8 A 23
201 North Shartel
Oklahoma City, OK  73102-2227

Dear Mr. Kishore:

      Your Freedom of Information-Privacy Acts (FOIPA) request is being returned.  Your letter did not contain sufficient information to conduct an accurate search of the central records system at FBI Headquarters. The following information is necessary:

Full Name: _____

Current Address: _____

Date of Birth: _____ Place of Birth: _____

Daytime Telephone Number: _____

      You may also wish to provide prior addresses, employments, aliases, etc., which you believe may assist the FBI in locating the information you seek._____

_____

_____

      Under penalty of perjury, I hereby declare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a(1)(3) as a misdemeanor and by a fine of not more than $5,000.

Signature_____ Date_____

      To initiate your FOIPA request, please returned the original request letter with the requested information. Please note that mail addressed to the FBI is delayed several weeks due to increased security procedures now in place.  You may fax your response directly to the RID Section at 202-324-3752.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

To,
Mr. David M. Hardy                                    3-3-05
F.B.I.
935 Pennsylvania Avenue N.W.
Washington D.C. 20535-0001

RE: 1) Freedom of Information Act
2) Open-Records Act

Dear Sir,
My name is Sundeep-Kishore, and I have been
charged in Oklahoma County, OK, under CF: 2003-
1331, and CF: 2004-5785. The Oklahoma City Division
of the F.B.I, has the relevant subject matter
in the F.B.I's internal File No 166C-OC-64741.
I was investigated, and arrested by the F.B.I's
SA Wagner, and SA. Swabens on 3-1-03.
As my trial is eventually supposed to start on
the 22nd of April 05, I am requesting for an
expedited review, of "any and all" Information,
vital for the best interests of my "due-process"
rights, under the F.O.I Act, or the "Open-Records"
Act.
I am sure that none of the subject matter,
is of a threat to national security, or
classified information, nor of a sensitive
nature.

2

I, am trying to find out if the investigation was done in an arbitrary fashion, or was I the suspect, or in the 'near-suspect' classification, or did I fit a certain racial profile. I have requested the F.B.I's local OK City Division in early Dec 2004, and got no response. I would be grateful if you could advise me, of what is the best possible way, of getting access to the required information.

THANKING You,
Respectfully
Kishore

SUNDEEP-KISHORE
8 A 23
201 N. SHARTEL
OKC  OK-73102-2227

PAGES 1-2

COPY:
1) MR. JAMES B. COMEY  DEPUTY ATTORNEY GENERAL  DEPt OF JUSTICE
2) MS. MELANIE ANN PUTSAY  DEPUTY DIRECTOR  DEPt OF JUSTICE
3) MR. DREW EDMONDSON  ATTORNEY GENERAL  OK.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                          )
                                          )
        Plaintiff,                        )
                                          )
            v.                            )        Civ. Action No. 07-1299 (RMC)
                                          )
                                          )
U.S. DEPARTMENT OF JUSTICE, et al.,       )
                                          )
        Defendants.                       )
                                          )

# Exhibit 3



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

March 11, 2005

Mr. Sundeep Kishore
8 A 23
201 North Shartel
Oklahoma City, OK 73102-2227

Dear Mr. Kishore:

Your Freedom of Information-Privacy Acts (FOIPA) request is being returned. Your letter did not contain sufficient information to conduct an accurate search of the central records system at FBI Headquarters. The following information is necessary:

Full Name: SUNDEEP - KISHORE

Current Address: 8 A 23 201 N. SHARTEL OKC OK 73102

Date of Birth: 12-7-59 / 12-7-61    Place of Birth: LUCKNOW (INDIA)

Daytime Telephone Number: (405) 713-1930

You may also wish to provide prior addresses, employments, aliases, etc., which you believe may assist the FBI in locating the information you seek.

NB11 1706, Hwy 99 South PRAGUE OK 74864

Under penalty of perjury, I hereby declare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a(i)(3) as a misdemeanor and by a fine of not more than $5,000.

Signature _____    Date 3-23-05

To initiate your FOIPA request, please returned the original request letter with the requested information. Please note that mail addressed to the FBI is delayed several weeks due to increased security procedures now in place. You may fax your response directly to the RID Section at 202-324-3752.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
    Dissemination Section
Records Management Division

To,
Mr. David M Hardy                                                3-3-05
F.B.I
935 Pennsylvania Avenue N.W.
Washington D.C. 20535-0001

                    RE: 1) Freedom of Information Act
                          2) Open-Records Act


Dear Sir,
My name is Sundeep-Kishore and I have been
charged in Oklahoma County, OK, under CF-2003-
1331 and CF-2004-5785. The Oklahoma City Division
of the F.B.I, has the relevant subject matter
in the F.B.I's internal File No. 166C-OC-64741.
    I was investigated and arrested by the F.B.I's
SA Wagner and SA Swareni on 3-1-03
As my trial is eventually supposed to start on
the 22nd of April 05 I am requesting for an
expedited review of "any and all" information,
vital for the best interests of my "due-process"
rights, under the F.O.I Act, or the "Open-Records"
Act.

I am sure that none of the subject matter,
is of a threat to national security, or
classified information, nor of a sensitive
nature.

2

I am trying to find out if the investigation was done in an arbitrary fashion, or was I the suspect, or in the 'near-suspect' classification, or did I fit a certain racial profile. I have requested the F.B.I.'s local OK City Division in early Dec 2004, and got no response. I would be grateful if you could advise me of what is the best possible way, of getting access to the required information.

Thanking You,
Respectfully,

Kishore

Sundeep-Kishore
8 A 23
201 N. Shartel
OKC  OK- 73102-2227


Pages 1-2


Copy:
1) Mr. James B. Comey  Deputy Attorney General  Dept of Justice
2) Ms Melanie Ann Putsay  Deputy Director  Dept of Justice
3) Mr. Drew Edmondson  Attorney General  OK.

Rec'd 03-09-05

To,

MELANIE ANN PUSTAY                                      3-3-05

DEPUTY - DIRECTOR

Office of INFORMATION and PRIVACY

SUITE 570, FLAG BUILDING

DEPARTMENT of JUSTICE

FAX (202) - 514 - 1009


RE: 1) FREEDOM of INFORMATION ACT
     2) OPEN - RECORDS ACT


Dear Madam,

My name is SUNDEEP-KISHORE, and I have been charged in OKLAHOMA COUNTY, OK, under CF: 2003-1331 and CF: 2004-5785. THE OKLAHOMA CITY DIVISION of the F.B.I. has the subject matter in the F.B.I's internal FILE No. 166C - OC- 64741.
I was investigated and arrested by the F.B.I, SA WAGNER and SA SWARENS on 3-1-03
As my trial is eventually supposed to start on the 22nd of April 05, I am requesting for an expedited review of "any and all" information vital for the best interests of my "due-process" rights, under the F.O.I Act, or "Open-Records" Act
I am sure that none of the subject matter is of a threat to national security, or classified information.

2

I am trying to find out, if the investigation was done in an arbitrary fashion, or was I the suspect or in the near-suspect classification or did I fit a certain racial-profile. I have requested the F.B.I's local OK City Division in early Dec 2004, and got no response. I would be grateful if you could advise me, of what is the best possible way, of getting access to the required information.

Thanking You,
Respectfully,

Kishore

Sundeep-Kishore
8 A 23
201 N. Shartel
OKC OK- 73102- 2227

Pages 1-2.

Copy:
1) Mr. James B. Comey  Deputy Attorney General Deptt of Justice
2) Mr. David M. Hardy  F.B.I  Washington D.C.
3) Mr. Drew - Edmondson  Attorney General Oklahoma

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                    )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )        Civ. Action No. 07-1299 (RMC)
                                    )
U.S. DEPARTMENT OF JUSTICE, et al., )
                                    )
        Defendants.                 )

# Exhibit 4



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

April 15, 2005

Mr. Sundeep Kishore
8 A 23
201 North Shartel
Oklahoma City, OK  73102-2227

Request No.:  1018793- 000
Subject:  Kishore, Sundeep

Dear Mr. Kishore:

This is in response to your Freedom of Information/Privacy Acts (FOIPA) request noted above.

A search of the automated indices to the central records system files maintained at FBI Headquarters located no records responsive to your FOIPA request.

Although no records responsive to your FOIPA request were located, we are required to inform you that you are entitled to file an administrative appeal if you so desire.  Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Suite 570, Flag Building, Washington, D. C. 20530, within 60 days from the date of this letter.  The envelope and the letter should be clearly marked "Freedom of Information Appeal" and the request number should be cited.

If you believe there may be responsive documents in one of our field office, you must write directly to the field office.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                          )
                                          )
        Plaintiff,                        )
                                          )
            v.                            )        Civ. Action No. 07-1299 (RMC)
                                          )
                                          )
U.S. DEPARTMENT OF JUSTICE, et al.,       )
                                          )
        Defendants.                       )
                                          )

# Exhibit 5

To,
PRISCILLA JONES
Chief, ADMINISTRATIVE STAFF
OFFICE of INFORMATION and PRIVACY
U.S. DEPARTMENT of JUSTICE
WASHINGTON. D.C. 20530.

05-1481

file with?
prior/late?

3-28-05
PA
(A)
FBI

affirm
no
ree

& no Q

RE: PAJ. CIH

DEAR. MRS. JONES,
I thank you for answering my letter from 3-10-05,
and in providing me the necessary impetus, for the
F.B.I. to comply with my requests for information.
As this was a multi-task force supported by the
OKLAHOMA CITY METRO VIOLENT CRIMES TASK FORCE, OCPD
701 N. COLCORD DRIVE OKC. OK 73102, and the
PRAGUE CITY POLICE, BROADWAY PRAGUE OK- 74864, an
that both of these agenics refuse to answer my
requests for 'Open Records' Act, and the F.O.I. Act. I
was hoping you could intercede, on my behalf to
make sure these agencies comply, and do not violat
my rights.
THANKING YOU,
Respectfully,
Kishore
SUNDEEP- KISHORE.    8 A 23  201 N. SHARTEE OK- 73102

**OFFICE OF INFORMATION AND PRIVACY**

**APR 0 6 2005**

**RECEIVED**

Copy
1) SUE- HALE EXECUTIVE DIRECTOR THE OKLAHOMAN

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                      )
                                     )
        Plaintiff,                    )
                                     )
            v.                        )        Civ. Action No. 07-1299 (RMC)
                                     )
                                     )
U.S. DEPARTMENT OF JUSTICE, et al.,   )
                                     )
        Defendants.                   )
                                     )

# Exhibit 6

To,
Mr. David. M. Hardy
Chief Record / Information
Records Management Division
F. B. I.
Department of Justice
Washington D.C. 20535-0001

5-31-05

RE: Request for Processing
F.O.I., Privacy Act Request.

Dear Sir,
I had faxed a request to your office
for a release of records pertaining to
myself, end April 2005.
I have not received any communication
from your office, even though I had filled
the appropriate form.
I hope you can be of assistance.
Thanking you,
Respectfully

Sundeep- Kishore
8 A 23
201 N. Shartel
OKC
OK 73102 2227

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SUNDEEP KISHORE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. Action No. 07-1299 (RMC) |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) ) ) | |
| Defendants. | ) ) | |

# Exhibit 7



**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

                                   **JUN 0 6 2005**
                                      6/6/05

Mr. Sundeep Kishore
No. 8-A-23
201 North Shartel              Re:  Appeal No. 05-1481
Oklahoma City, OK  73102-2227       RLH:ADW

                                   FoIPA 1018793

Dear Mr. Kishore:

     You appealed from the action of the Headquarters Office of the
Federal Bureau of Investigation on your request for access to records
concerning you.

     After carefully considering your appeal, I have decided to
affirm the FBI's action on your request.

     The FBI informed you that it could locate no records responsive
to your request.  It has been determined that the FBI's response is
correct.

     Regarding your suggestion that this Office intercede on your
behalf with the Oklahoma authorities, the Freedom of Information Act
was enacted by Congress as a vehicle by which individuals could
obtain access to agency records maintained by the federal government.
The function of the Office of Information and Privacy is limited to
the adjudication of appeals from the denials of access to information
pursuant to the FOIA by components of the Department of Justice.
Accordingly, this Office does not have the authority to comply with
your request.

     If you are dissatisfied with my action on your appeal, you may
seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

                              Sincerely,



                              Richard L. Huff
                              Co-Director

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                        )
                                        )
        Plaintiff,                      )
                                        )
            v.                          )        Civ. Action No. 07-1299 (RMC)
                                        )
                                        )
U.S. DEPARTMENT OF JUSTICE, et al.,     )
                                        )
        Defendants.                     )

# Exhibit 8

rec' d 6-28-05                    05-2361

To,
PRISCILLA JONES                              6-20-05
Chief Administrative Staff
Office of Information + Privacy
U.S. Department of Justice
Washington D.C. 20530

RE: PAJ: CIH

Dear Miss Jones,
In response to my previous requests
regarding F.O.I./P.A., I have sent
numerous requests to Mr. David Hardy
Chief of Records F.B.I., and am unable
to get an answer.
I would appreciate if you could
intercede on my behalf.

Thanking You,
Respectfully

Bishore

Sundeep-Kishore
8 A 23
201 N. Shartel
OKC
OK- 73102-2227

**RECEIVED**

JUN 2 8 2005

Office of Information and Privacy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                          )
                                          )
    Plaintiff,                         )
                                          )
        v.                       )          Civ. Action No. 07-1299 (RMC)
                                          )
                                          )
U.S. DEPARTMENT OF JUSTICE, et al.,       )
                                          )
    Defendants.                        )
                                          )

# Exhibit 9



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

AUG 0 1 2005
8 - 1 - 05

Mr. Sundeep Kishore                    Re:    Appeal No. 05-2361
No. 8 A 23                                    Request No. ~~105793~~  1018793
201 North Shartel                             RLH:PAJ:CIH
Oklahoma, OK  73102-2227

Dear Mr. Kishore:

    This responds to your letter dated June 20, 2005, in which you sought to appeal from the failure
of the Federal Bureau of Investigation to respond to your request for records.

    It is my understanding that the FBI responded to your request by letter dated April 15, 2005.
For your convenience, I am enclosing a copy of that response. If you are dissatisfied with the FBI's
action on your request, you may appeal again to this Office.

    If you consider my action to be a denial of your appeal, you may seek judicial review in
accordance with 5 U.S.C. § 552 (a) (4) (B).

                            Sincerely,



                            Richard L. Huff
                            Co-Director

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUNDEEP KISHORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 07-1299 (RMC) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) |
| | ) |
| Defendants. | ) |

# Exhibit 10

8-15-05

Co-Director                    06-0655
Office of Information and Privacy
Suite 570, Flag Building
Washington D.C. 20530

"Administrative Appeal" F.O.I.P.A.

I am hereby appealing Mr. Richard L. Huff Co-Director's answer of Aug 1, 2005, wherein he confirmed Mr. David M. Hardy Section Chief F.B.I.'s confirmation that there were no records responsive to my request of FOIPA.
My Appeal No. is 05-2361, ~~00000~~ and my Request Number was 108793 by the Department of Justice.
My F.B.I. Request No. is 1018793-000
I am wondering if there is no record, how was a grand jury subpoena form, granted to the F.B.I., as even the Western District of Oklahoma U.S Attorney's office finds no records.
Thanking You,
Sincerely
Bish~~

Sundeep- Kishore
8 A 23
201 N. Shartel
OKC   OK- 73102-2227

OFFICE OF INFORMATION
AND PRIVACY

AUG 17 2005

RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUNDEEP KISHORE,<br><br>    Plaintiff,<br><br>          v.<br><br>U.S. DEPARTMENT OF JUSTICE, <u>et al.</u>,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civ. Action No. 07-1299 (RMC) |

# Exhibit 11



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

Mr. Sundeep Kishore                DEC 1 4 2005
No. 8A23                           12-14-05
201 N. Shartel
Oklahoma City, OK 73102-2227

      Re: Request No. 1018793

Dear Mr. Kishore:

      This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation on your request for information from the files of the Department of Justice was received by this Office on August 17, 2005.

      The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **06-0655**. Please mention this number in any future correspondence to this Office regarding this matter.

      We will notify you of the decision on your appeal as soon as we can. The necessity of this delay is regretted and your continuing courtesy is appreciated.

                      Sincerely,

                      Priscilla Jones
                      Chief, Administrative Staff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                          )
                                          )
        Plaintiff,                        )
                                          )
                v.                        )          Civ. Action No. 07-1299 (RMC)
                                          )
                                          )
U.S. DEPARTMENT OF JUSTICE, et al.,       )
                                          )
        Defendants.                       )

# Exhibit 12

To,
F.O.I. / Privacy Act Unit Officer.
Federal Bureau of Investigation
Oklahoma City                                    8-8-05
3301 West Memorial Road
OKC  OK- 73134

            RE: Records pertaining to Sunderi Kishore

Dear Sir/Maam,
    I have tried numerous times to gain access to
the records mantained by the F.B.I., in connection
with an investigation against me in February 2003.
    I have sent numerous letters, and my last
attempt was when I faxed a request to the
F.B.I. OKC off. fax number at 405-290-3663, on
the 15th December 2004.
    I have been asked by Melanie Ann Pustay
Deputy Director Office of Information, and Privacy,
U.S. Department of Justice, and Mr. David M. Hardy
Chief Records Management Division F.B.I. Washington
D.C. to again send my FOIA request to your
office.
    I hope to easily get a response, and I am
enclosing a F.B.I., Privacy Act request form

2

together with a verification of IDENTITY.
I hope you could respond to my request.

THANKING YOU,
Sincerely

*(signature)*

SUNDEEP. KISHORE
8 A 23
201 N. SHARTEL
OKC  OK - 73102 - 2227



U.S. Department of Justice

Federal Bureau of Investigation
Washington, D.C. 20535

### Privacy Act Request

The following information is necessary in order to file a Freedom of Information-Privacy (FOIPA) request.

Full Name: _SUNDEEP KAPOOR_

Aliases used: _GOLDY_

Current Address: _201 N. SHARTEL OKC OK-73102_

Date of Birth: _12-7-59_   Place of Birth: _LUCKNOW INDIA_
_12-7-61_

Daytime Telephone Number: _____

Social Security Number (optional): _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_

You may also wish to provide prior addresses, employments, etc., which you believe may assist the FBI in locating the information you seek: _PRAGUE NBU-1706 HW 9? S OK-14804_
_501 SMILING A_ _?_ _?_

Under penalty of perjury, I hereby declare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a(i)(3) as a misdemeanor and by a fine of not more than $5,000.

Signature _____   Date _8-8-05  8ᵗʰ Aug 05_

. Please note that mail addressed to the FBI is delayed several weeks due to increased security procedures now in place. You may fax your response directly to the Record/Information Dissemination Section (RIDS) at 202-324-3752.

VERIFICATION of IDENTITY

I, SUNDEEP-KISHORE, attest I am the stated person, and state the contents in the Privacy Act request form filled by me are true to the best of my knowledge.

Affiant       *Kishore*

SUNDEEP-KISHORE

Signed and sworn to me before the 31st day May 2005

By Deborah Cannon

NOTARY PUBLIC

My Commission Expires Dec 17, 2007
Commission Number 030145041

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                           )
                                           )
        Plaintiff,                         )
                                           )
                                           )
                v.                         )        Civ. Action No. 07-1299 (RMC)
                                           )
                                           )
U.S. DEPARTMENT OF JUSTICE, et al.,        )
                                           )
        Defendants.                        )
                                           )

# Exhibit 13



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

*August 25, 2005*

MR SUNDEEP KISHORE
201 NORTH SHARTEL
OKLAHOMA CITY, OK 73102

Request No.: 1027586- 000
Subject: KISHORE, SUNDEEP

Dear Mr. Kishore:

☒    This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request
to the FBI. The FOIPA number listed above has been assigned to your request. Your
request was forwarded to FBI Headquarters from our Oklahoma City Field Office.

☐    For an accurate search of our records, please provide the complete name, alias, date
and place of birth for the subject of your request. Any other specific data you could
provide such as prior addresses, or employment information would also be helpful. If
your subject is deceased, please include date and proof of death.

☐    To make sure information about you is not released to someone else, we require your
notarized signature or, in place of a notarized signature, a declaration pursuant to Title
28, United States Code 1746. For your convenience, the reverse side of this letter
contains a form which may be used for this purpose.

☐    If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for
your arrest record, please follow the enclosed instructions in Attorney General Order
556-73. You must submit fingerprint impressions so a comparison can be made with
the records kept by CJIS. This is to make sure your information is not released to an
unauthorized person.

☒    We are searching the indices to our central records system at FBI Headquarters for the
information you requested, and will inform you of the results as soon as possible.

☐    Processing delays have been caused by the large number of requests received by the
FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all
correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                          )
                                          )
        Plaintiff,                        )
                                          )
                v.                        )    Civ. Action No. 07-1299 (RMC)
                                          )
                                          )
U.S. DEPARTMENT OF JUSTICE, et al.,       )
                                          )
        Defendants.                       )

# Exhibit 14



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

MR SUNDEEP KISHORE
201 NORTH SHARTEL
OKLAHOMA CITY, OK 73102

Request No.: 1027586- 000
Subject: KISHORE, SUNDEEP

Dear Mr. Kishore:

This is in reference to your Freedom of Information-Privacy Acts (FOIPA) request for information pertaining to the above subject.

The material you requested is located in an investigative file which is exempt from disclosure pursuant to Title 5, United States Code, Section 552, subsection (b)(7)(A)and(b)(7)(C). For an explanation of these exemptions see enclosed Form OPCA-16a. Please note if this file is reviewed under FOIPA in the future, additional exemptions may be applied at that time.

You may appeal this denial by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C., 20530, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may easily be identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure (1)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                        )
                                        )
        Plaintiff,                      )
                                        )
            v.                          )        Civ. Action No. 07-1299 (RMC)
                                        )
                                        )
U.S. DEPARTMENT OF JUSTICE, et al.,     )
                                        )
        Defendants.                     )
                                        )

# Exhibit 15

OFFICE OF INFORMATION
AND PRIVACY

OCT 0 3 2005

Mr. Richard L. Huff

**RECEIVED**

Co-Director
Office Of Information and Privacy
United States Department of Justice
Flag Building  Suite 570
Washington D.C. 20530-0001

RE:" Freedom of Information Appeal "
F.O.I.P.A. No. 1027586-000
Subjects Name: Sundeep Kishore

Dear Sir,

I am appealing the decision of Mr. David
M. Hardy, Section Chief Records, from the F.B.I.,
stating that the investigative file is exempt
from disclosure pursuant to Title 5, U.S. Code
Section 552, subsection (b)(7)(A), and (b)(7)(C).
This letter is undated, but the envelope is
stamped 11-8-2005. I will quote this statute:
records or information compiled for law-enforcement
purposes, but only to the extent that the
production of such law enforcement records or
information;

(A) could reasonably be expected to interfere with
enforcement proceedings :

(C) could reasonably be expected to constitute an
unwarranted invasion of privacy.

2

1) When this request was originally made to the F.B.I. in Washington D.C. and, their Oklahoma City office, in March 2005, they simply refused to answer.

After I wrote to you personally, to intervene on my behalf, I received an answer from you RE: Appeal No. 05-2361
    Request Number: 108793-000  )
    RLH:PAJ:CIH
on the 1st of August, 2005 stating that the F.B.I., responded to my request - by stating there were "no records" responsive to my request dated April 15, 2005. (Copy enclosed labeled 1-a)

2) On the 6th of June, 2005, I received a letter from the office of, Mr. Richard L. Huff, Co-Director, Office of Information and Privacy U.S. Department of Justice:
RE: Appeal No - 05-1481
RLH: ADW - again confirming that the F.B.I., could locate "no records" responsive to my request, and that the U.S. Department of Justice, confirms that the F.B.I., answer of "no records" is correct.
(See Copy enclosed 1b)

3

3) I had also made a request through the EXECUTIVE OFFICE for UNITED STATES ATTORNEYS', U.S. DEPARTMENT of JUSTICE, WASHINGTON D.C., REQUEST NUMBER: 05-2020
SUBJECT: SELF
and they replied to me on 4-12-05 stating, A search for records located in the UNITED STATES ATTORNEY(s) OFFICE(s) for the WESTERN DISTRICT of OKLAHOMA has revealed "no records." (See copy enclosed lc)

AFTER all these denials, of having no records of me, it is very surprising that suddenly MR. DAVID HARDY SECTION CHIEF F.B.I., sends a undated letter, and requesting exemption from disclosure.

There is no real valid reason for this decision, just a vague attempt of attempting a cover up.

THEREFORE, the OFFICE for INFORMATION and PRIVACY should grant this appeal in my favor as:
a) there is no validity in the claim of interfering with law enforcement proceedings. THE proceedings ended MARCH of 2003.

4

b) The only invasion of privacy was mine.

The F.B.I., also knowingly gave false information to me, and to Mr. Richard L. Huff, Co-Director Of Information and Privacy, who in turn, attested to me, that there were no records.

The two Special Agents, from the F.B.I. OKC office:
a) S.A. Christopher Wagner
b) S.A. Robert Swarens

F.B.I., SA Christopher W. Wagner in the meantime has pled guilty, to unlawfully, willfully, wrongfully and without probable cause _____ police report. He pled guilty in Cleveland County, State of Oklahoma CM-2005-1379 (See copy _____ Id)

S.A. Wagner and Swarens conspired and destroyed evidence in my suit, and this is proven by the fact that the Oklahoma City F.B.I. office, does not want any records released.

5

THE behavior of these two agents is a conspiracy to keep records hidden, and violate my civil and constitutional rights.

From the beginning, this was an effort by these two agents to have their own agenda, against people of certain ethnic backgrounds.

I hope you decide this appeal in my favor.

THANKING You,
Sincerely,

Kishore

SUNDEEP- KISHORE
8 A 23 201 N. SHARTEL
OKC  OK- 73102

PAGES 1-5

ENCLOSURE: 1(a) 1(a2), 1(b), 1(c), 1(d), 1(e) 1(f).

COPY: 1) INGRID McKINNON   EMBASSY of AUSTRIA
CONSULAR ATTACHE, LEGAL AND SOCIAL AFFAIR
3524 INTERNATIONAL COURT N.W.
WASHINGTON D.C. 20008-3027

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUNDEEP KISHORE, )<br><br>Plaintiff, )<br><br>v. )<br><br>U.S. DEPARTMENT OF JUSTICE, <u>et al.</u>, )<br><br>Defendants. ) | Civ. Action No. 07-1299 (RMC) |

# Exhibit 16



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

OCT 1 3 2005

Mr. Sundeep Kishore
No. 8-A-23
201 North Shartel
Oklahoma, OK 73102-2227

      Re: Request No. 1027586-000

Dear Mr. Kishore:

      This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation on your request for information from the files of the Department of Justice was received by this Office on October 3, 2005.

      The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **06-0048**. Please mention this number in any future correspondence to this Office regarding this matter.

      We will notify you of the decision on your appeal as soon as we can. The necessity of this delay is regretted and your continuing courtesy is appreciated.

                      Sincerely,

                      Priscilla Jones
                      Chief, Administrative Staff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                          )
                                          )
        Plaintiff,                        )
                                          )
              v.                          )        Civ. Action No. 07-1299 (RMC)
                                          )
                                          )
U.S. DEPARTMENT OF JUSTICE, et al.,       )
                                          )
        Defendants.                       )
                                          )

# Exhibit 17



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**AUG 3 1 2007**

Mr. Sundeep Kishore
ODOC No. 517067
Lawton Correctional Facility          Re:      Appeal No. 06-0048
8607 Southeast Flower Mound Road               Request No. 1027586
Lawton, OK 73501                               ADW:SRO

Dear Mr. Kishore:

     You appealed from the action of the Oklahoma City Field Office of the Federal Bureau of Investigation on your request for access to records pertaining to yourself. I regret the delay in responding to your appeal.

     After carefully considering your appeal, and as a result of discussions between FBI personnel and a member of my staff, I am remanding your request for further processing of the records responsive to your request. The FBI withheld these records from you initially pursuant to 5 U.S.C. § 552(b)(7)(A), which protects from disclosure records or information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings. I have determined, however, that Exemption 7(A) is no longer applicable to withhold these records in their entireties. Consequently, the FBI will send any and all releasable portions of them to you directly, subject to any applicable fees. You may appeal any future adverse determination made by the FBI.

     If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Janice Galli McLeod
Associate Director

FBI

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                          )
                                          )
        Plaintiff,                        )
                                          )
               v.                         )        Civ. Action No. 07-1299 (RMC)
                                          )
                                          )
U.S. DEPARTMENT OF JUSTICE, et al.,       )
                                          )
        Defendants.                       )
                                          )

# Exhibit 18



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*          *Washington, D.C. 20530*

## OCT 25 2007

Mr. Sundeep Kishore
ODOC No. 517067
Lawton Correctional Facility          Re:    Appeal No. 06-0048
8607 Southeast Flower Mound Road             Request No. 1027586
Lawton, OK 73501                             ADW:SRO

Dear Mr. Kishore:

    You appealed from the action of the Federal Bureau of Investigation on your request for access to records pertaining to yourself.

    By letter dated August 31, 2007, this Office remanded your request for further processing of the records responsive to your request. However, based on new information received by this Office after the August 31, 2007 remand, I am vacating that decision. Specifically, I have been informed that on July 23, 2007, subsequent to the filing of your appeal with this Office, you filed a complaint seeking judicial review of your Freedom of Information Act request in the United States District Court for the District of Columbia. Inasmuch as this matter is now before the Court, I am closing your appeal file in this Office in accordance with 28 C.F.R. § 16.9(a)(3) (2007).

                                    Sincerely,

                                      Janice Galli McLeod
                                    Associate Director



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SUNDEEP KISHORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civ. Action No. 07-1299 (RMC) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) |
| | ) |
| Defendants. | ) |

# Exhibit 19

To,

10-17-05

SPECIAL AGENT in CHARGE

MR SALVADOR HERNANDEZ

F.B.I.

OK- City OFFICE

3301 W. MEMORIAL ROAD

OKC  OK- 73134

RE:, F.B.I. Investigation    Feb/March 2003

2) F.B.I. Request No. 1018793-000

3) D.O.J. Appeal No. 05-1481

4) E.O.U.S.A. Request No. 05-2020

F.O.I.P.A. Unit./ SUNDEEP KISHORE

DEAR Sir,

I was investigated by the F.B.I.'s OK City office, Feb/March 2003.

I was arrested by the F.B.I.'s S.A. WAGNER on 3-1-03, and booked in the OKLAHOMA COUNTY JAIL on 3-2-03 by S.A. SWARENS.

THE NAMES of the F.B.I.'s agents who took part in this investigation are as follows:

2

SPECIAL AGENTS:
CHRIS WAGNER, ROBERT B. SWARENS, ROBERT S.
GILLESPIE, JORGE PEREIRA, JAMES D. BARNETT

T.F.O. RONALD J. BRADFORD

and VICTIM WITNESS SPECIALIST, from F.B.I.,
DAWN WOODY and KIM WEEMS.

Under the FEDERAL F.O.I. and PRIVACY ACT UNIT
I have been trying to get records of "any
and all records" of this investigation.

I was told by the F.B.I. and D.O.J. that
no records exist.

I was wondering how is this possible, especially
when more than five agents testified, albeit
not truthfully, during my state trial.

THESE agents violated my constitutional rights,
withheld evidence, tampered with evidence,
lied under oath etc.

3

I do not intend to forget this matter.

Till the truth eventually comes out, I will persevere and, show how the OKLAHOMA city F.B.I. office works.

I would be grateful, if you would intercede on my behalf. The F.B.I. could investigate as to what really happened, instead of trying to hide evidence.

THANKING YOU,
Respectfully

SUNDEEP. KISHORE

PAGE 1-3.

COPY:
1) MELANIE ANN PUSTAY, D.O.J. WASHINGTON D.C.
2) MRS. RICHARDSON  EMBASSY of AUSTRIA WASHINGTON D.C.

SUNDEEP. KISHORE
8 A 23
201 N. SHARTEL
OKC
OK - 73102.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                   |   |                              |
|-----------------------------------|---|------------------------------|
| SUNDEEP KISHORE,                  | ) |                              |
|                                   | ) |                              |
| Plaintiff,                        | ) |                              |
|                                   | ) |                              |
| v.                                | ) | Civ. Action No. 07-1299 (RMC) |
|                                   | ) |                              |
|                                   | ) |                              |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) |                            |
|                                   | ) |                              |
| Defendants.                       | ) |                              |
|                                   | ) |                              |

# Exhibit 20



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

December 13, 2005

MR SUNDEEP KISHORE
8 A 23
201 NORTH SHARTEL
OKLAHOMA CITY, OK 73102 2227

Request No.: 1018793- 001
Subject: KISHORE, SUNDEEP

Dear Mr. Kishore:

 This is in reference to your Freedom of Information-Privacy Acts (FOIPA) request for information pertaining to the above subject.

 The material you requested is located in an investigative file which is exempt from disclosure pursuant to Title 5, United States Code, Section 552, subsection (b)(7)(A)and(C). For an explanation of these exemptions see enclosed Form OPCA-16a. Please note if this file is reviewed under FOIPA in the future, additional exemptions may be applied at that time.

 You may appeal this denial by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C., 20530, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may easily be identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
 Dissemination Section
Records Management Division

Enclosure (2)
OPCA-16a
FBI File Fact Sheet



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

# FBI FILE FACT SHEET

- The primary function of the FBI is law enforcement.
  The FBI does not keep a file on every citizen of the United States.

- The FBI was not established until 1908 and we have very few records prior to the 1920's.

- FBI files generally contain reports of FBI investigations of a wide range of matters, including counterterrorism, foreign counter-intelligence, organized crime/drugs, violent crime, white-collar crime, applicants, and civil rights.

- **The FBI does not issue clearances or nonclearances for anyone other than its own personnel or persons having access to FBI facilities.** Background investigations for security clearances are conducted by many different Government agencies. Persons who received a clearance while in the military or employed with some other government agency should write directly to that entity.

- **An FBI identification record or "rap sheet" is NOT the same as an FBI "file"** - it is simply a listing of information taken from fingerprint cards submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. The subject of a "rap sheet" may obtain a copy by submitting a written request to FBI, CJIS Division, Attn: SCU, Mod. D-2, 1000 Custer Hollow Road, Clarksburg, West Virginia 26306. Each request must have proof of identity which shall consist of name, date and place of birth and a set of rolled-ink fingerprint impressions placed upon fingerprint cards or forms commonly utilized for applicant or law enforcement purposes by law enforcement agencies, plus **payment of $18.00** in the form of a certified check or money order, payable to the Treasury of the United States.

- The National Name Check Program (NNCP) conducts a search of the FBI's Universal Index to identify <u>any</u> information contained in FBI records that may be associated with an individual and provides the results of that search to the requesting Federal, State or local agency. For the NNCP, a name is searched in a multitude of combinations and phonetic spellings to ensure all records are located. The NNCP also searches for both "main" and "cross reference" files. A main file is an entry that carries the name corresponding to the subject of a file while a cross reference is merely a mention of an individual contained in a file. The results from a search of this magnitude can result in several "hits" and "idents" on an individual. In each instance where UNI has identified a name variation or reference, information must be reviewed to determine whether it is applicable to the individual in question.

- The Record/Information Dissemination Section/Freedom of Information-Privacy Acts (FOIPA) search for records provides copies of FBI files relevant to a FOIPA request for information. FOIPA provides responsive documents to requesters seeking "reasonably described information." For a FOIPA search, the subject name, event, activity, business, or event is searched to determine whether there is an investigative file associated with the subject. This is called a "main file search" and differs from The NNCP search.

**FOR GENERAL INFORMATION ABOUT THE FBI,
CHECK OUT OUR WEBSITE AT
http://www.fbi.gov**

3-23-04

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                    )
                                    )
        Plaintiff,                  )
                                    )
              v.                    )       Civ. Action No. 07-1299 (RMC)
                                    )
                                    )
U.S. DEPARTMENT OF JUSTICE, et al., )
                                    )
        Defendants.                 )
                                    )

# Exhibit 21

Department of Justice
al Bureau of Investigation

ennsylvania Avenue. NW
ngton, D.C. 20535-0001

business
or Private Use $300



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

December 13, 2005

MR SUNDEEP KISHORE
8 A 23
201 NORTH SHARTEL
OKLAHOMA CITY, OK 73102 2227

Request No.: 1018793- 001
Subject: KISHORE, SUNDEEP

Dear Mr. Kishore:

This is in reference to your Freedom of Information-Privacy Acts (FOIPA) request for information pertaining to the above subject.

The material you requested is located in an investigative file which is exempt from disclosure pursuant to Title 5, United States Code, Section 552, subsection (b)(7)(A)and(C). For an explanation of these exemptions see enclosed Form OPCA-16a. Please note if this file is reviewed under FOIPA in the future, additional exemptions may be applied at that time.

You may appeal this denial by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C., 20530, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may easily be identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Records Management Division

Enclosure (2)
OPCA-16a
FBI File Fact Sheet

OPCA-16a (Rev. 12-3-96)

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b) (1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(b) (2)  related solely to the internal personnel rules and practices of an agency;

(b) (3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b) (4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b) (5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b) (6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b) (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law or (F) could reasonably be expected to endanger the life or physical safety of any individual;

(b) (8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b) (9)  geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d) (5)  information compiled in reasonable anticipation of a civil action proceeding;

(j) (2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k) (1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k) (2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k) (3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k) (4)  required by statute to be maintained and used solely as statistical records;

(k) (5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k) (6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k) (7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                           )
                                           )
        Plaintiff,                         )
                                           )
                v.                         )        Civ. Action No. 07-1299 (RMC)
                                           )
                                           )
U.S. DEPARTMENT OF JUSTICE, et al.,        )
                                           )
        Defendants.                        )
                                           )

# Exhibit 22

To,
Special Agent in Charge
F.B.I. OKC                                    1-30-06
3301 W. Memorial Blvd  P.O. Box 568801
OKC   OK  73156-8801


RE: F.O.I./PA Unit Appeal
Request For Documents
Sundeep- Kishore

Dear Sir,

In pursuit of information, from the F.B.I. and
the U.S. Attorney's office investigation concerning
me, I am once again requesting for the
specific information I require.

I am enclosing a copy of this letter to the
U.S. D.O.J. office of Information and Privacy,
and to the Embassy of Austria, and the U.S.
Senate Judicial Committee.

I have written to your agency several times
to no avail, in the last two years.

I am documenting, the policy of total
dis-regard for the defendants rights, and
for dis-closure.

2

Did the S. Agents follow the manual on standard procedures of the U.S. Justice Department on investigations.

Who were the S. Agents responsible to for gathering data? Who was the co-case agent who oversaw the investigation.

Who matched and verified the information from electronic, wire or oral communications, and from the video surveillance?

Who ran the wiretap's, body wires etc. Who took the product, deciphered it, and disseminated it. Who dictated the FD-302's, and who evaluated it. Who handed these reports over to the U.S. Attorney's office?

Which S. Agent, or "agent of mass-destruction" was responsible for destroying the evidence, on the morning of 3-1-03. Was this S. Agent the same one, who was responsible for making the decision, to make the so called informant enter the office/residence, of my then spouse. The S. Agent knew the defendant was not there, so was the informant sent, that he could plant drugs, to further entrap the defendant.

3

What kind of body transmitter's were used? Was there a dedicated line, to the wiretap equipment for monitoring. Who all were the wiretap attendant's. Who all signed off, to apply for authority to intercept communication.

Who was the S-A-C who checked on compliances? Who was the "briefer" for the F.B.I. OKC, to the U.S. Attorney's office. Who co-ordinated the information between the F.B.I. and the U.S. Attorney's office. Did the S-A-C turn over all document's to the U.S. Attorney's office. Who was the liaison to the U.S. Attorney's office, from the F.B.I. OKC office. Who were the supervisory agent's, and field supervisor's, from the "heaviest badge in town."

Who took the evidence to the locker room, and who secured the evidence. Who was the group supervisor. Which S Agent "controlled" the so called informant.

Who was responsible for the filing system of this case, or the 'non-filing' Who decided not to file report's on the F.B.I.'s Automated Case Support System.

4

Were the F.B.I. Leg at in AUSTRIA, or INDIA ever contacted?

Who was responsible from the federal prosecutor's office, in observing this investigation.

Are all the official or confidential files or "dossiers", not filed, so that these reports could be "sanitized", or 'erasures' made, or was it done to obstruct justice.

Where have all the 302's disappeared. The carbons should have been in F.B.I. head quarters, either sent there by mail, air tel or teletype. Are all the tel-cons, mem-cons, air-tels - gone.

The record of all people who touched the evidence. What happened to these records.

Which S. AGENT checked and verified, the insurance information.

Who headed the F.B.I.'s PRESS office, and released the media report. Who verified the authencity of the information.

5

Was a "grand-jury" summoned? Did they issue subpoena's? Who testified at these hearings. Was a decision made to indict? Who was the U.S Attorney, or his deputy who represented the federal governments.

Was the U.S Attorney, or the S-A-C of the F.B.I. OKC, responsible for making all the S. Agent's testify falsely.

Were they also responsible for denying me a Bond hearing, and also a failure to disclose information

Were they also responsible for denying me all "the privileges and immunities granted in the Bill of Rights.

The U.S. government was complicit through the hand's of the U.S Attorney, office, and the F.B.I OKC, in their illegal behavior, to deprive me of all my rights.

Thanking You,
Sincerely
Kishore                    Page 5-5.
Sundeep- Kishore    LCF GEO # 517067
8607 SE Flower Mound Rd  Lawton OK- 73501.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SUNDEEP KISHORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Action No. 07-1299 (RMC) |
| ) | |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

# Exhibit 23



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

February 14, 2006

Mr. Sundeep Kishore
**517067  Lawton Criminal Facility
8607 Southeast Flower Mound Road
Lawton, OK  73501

Dear Mr. Kishore:

Your Freedom of Information-Privacy Acts (FOIPA) request is being returned. Your request was forwarded to FBI Headquarters from the Oklahoma City Field Office. Your letter did not contain sufficient information to conduct an accurate search of the central records system at FBI Headquarters. The following information is necessary:

Full Name: _____

Current Address: _____

Date of Birth: _____ Place of Birth: _____

Daytime Telephone Number: _____

You may also wish to provide prior addresses, employments, aliases, etc., which you believe may assist the FBI in locating the information you seek._____

_____

Under penalty of perjury, I hereby declare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a(1)(3) as a misdemeanor and by a fine of not more than $5,000. **All signatures under the certification of perjury statement MUST be an original and legible signature, as the FBI is no longer accepting faxed signatures and signatures that are not legible.**

Signature_____ Date_____

To initiate your FOIPA request, please returned the original request letter with the requested information. Please note that mail addressed to the FBI is delayed several weeks due to increased security procedures now in place. **You must MAIL your request with your original signature, as the FBI is no longer accepting faxed signatures after the perjury statement and signatures that are not legible.**

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
Dissemination Section
Records Management Division

To,
Special Agent in Charge                                    1-30-06
F.B.I   OKC
3301 W. Memorial Blvd  P.O. Box 568801
OKC  OK  73156-8801


RE: F.O.I / PA Unit Appeal
Request For Documents
Sundeep- Kishore


Dear Sir,

In pursuit of information, from the F.B.I. and
the U.S. Attorney's office investigation concerning
me, I am once again requesting for the
specific information I require.

I am enclosing a copy of this letter to the
U.S.D.O.J. office of Information and Privacy,
and to the Embassy of Austria, and the U.S.
Senate Judicial Committee.

I have written to your agency several times
to no avail, in the last two years.

I am documenting, the policy of total
dis-regard for the defendant's rights, and
for dis-closure.

2

Did the S. AGENT's follow the manual on standard procedures of the U.S. JUSTICE DEPARTMENT on investigations.

Who were the S. AGENT's responsible to for gathering data? Who was the co-case agent who oversaw the investigation.

Who matched and verified the information from electronic, wire or oral communications, and from the video surveillance?

Who ran the wiretap's, body wires etc. Who took the product, deciphered it, and disseminated it. Who dictated the FD-302's and who evaluated it. Who handed these reports over to the U.S. ATTORNEY's office?

Which S. AGENT, or "agent of mass-destruction" was responsible for destroying the evidence, on the morning of 3-1-03. Was this S. AGENT the same one, who was responsible for making the decision, to make the so called informant enter the office/residence of my then spouse. The S. AGENT knew the defendant was not there, so was the informant sent, that he could plant drugs, to further entrap the defendant.

3

What kind of body transmitter's were used? Was there a dedicated line, to the wiretap equipment for monitoring. Who all were the wiretap attendant's. Who all signed off to apply for authority to intercept communication.

Who was the S-A-C who checked on compliances? Who was the "briefer" for the F.B.I. OKC, to the U.S. Attorney's office. Who co-ordinated the information between the F.B.I. and the U.S. Attorney's office. Did the S-A-C turn over all document's to the U.S. Attorney's office. Who was the liaison to the U.S. Attorney's office, from the F.B.I OKC office. Who were the supervisory agent's, and field supervisor's, from the "heaviest badge in town."

Who took the evidence to the locker room, and who secured the evidence. Who was the group supervisor. Which S Agent "controlled" the so called informant.

Who was responsible for the filing system of this case, or the 'non-filing'. Who decided not to file report's on the F.B.I.'s Automated Case Support System.

4

Were the F.B.I. Leg. at in Austria, or India ever contacted?

Who was responsible from the federal prosecutor's office, in observing this investigation.

Are all the official or confidential files or "dossiers", not filed, so that these reports could be "sanitized", or 'erasures' made, or was it done to obstruct justice.

Where have all the 302's disappeared. The carbons should have been in F.B.I. headquarters, either sent there by mail, air tel or teletype. Are all the tel-con's, mem-con's, air-tels gone.

The record of all people who touched the evidence. What happened to these records.

Which S. Agent checked and verified, the insurance information.

Who headed the F.B.I.'s Press office, and released the media report. Who verified the authenticity of the information.

5

Was a "grand-jury" summoned? Did they issue subpoena's? Who testified at these hearings. Was a decision made to indict? Who was the U.S. Attorney, or his deputy who represented the federal government.

Was the U.S. Attorney, or the S-A-C of the F.B.I. OKC, responsible for making all the S. Agent's testify falsely.

Were they also responsible for denying me a Bond hearing, and also a failure to disclose information

Were they also responsible for denying me all "the privileges and immunities granted in the Bill of Rights

The U.S. government was complicit through the hand's of the U.S. Attorney's office, and the F.B.I OKC, in their illegal behavior, to deprive me of all my rights

Thanking You,
Sincerely
Kishore          Page 5-5.
Sundeep - Kishore    LCF GED # 517067
8607 SE Flower Mound Rd    Lawton OK - 73501.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SUNDEEP KISHORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 07-1299 (RMC) |
| | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# Exhibit 24



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

February 14, 2006

Mr. Sundeep Kishore
\*\*517067 Lawton Criminal Facility
8607 Southeast Flower Mound Road
Lawton, OK  73501

*[handwritten]* Records from 3-1-03,
F.B.I. Agents Swarens, Wagner, Sgt. Bradford
Guillespie, Dawn Woody, Kim Weems

Dear Mr. Kishore:

Your Freedom of Information-Privacy Acts (FOIPA) request is being returned. Your request was forwarded to FBI Headquarters from the Oklahoma City Field Office. Your letter did not contain sufficient information to conduct an accurate search of the central records system at FBI Headquarters. The following information is necessary:

Full Name: _Sundeep-Kishore_

Current Address: _8607 S.E. Flower Mound Rd, Lawton OK-73501_

Date of Birth: _12-7-59_    Place of Birth: _Lucknow (U.P.) India_

Daytime Telephone Number: _____

You may also wish to provide prior addresses, employments, aliases, etc., which you believe may assist the FBI in locating the information you seek. _Hwy 99 South PRAGUE, Lincoln County, OK_

Under penalty of perjury, I hereby declare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a(1)(3) as a misdemeanor and by a fine of not more than $5,000. **All signatures under the certification of perjury statement MUST be an original and legible signature, as the FBI is no longer accepting faxed signatures and signatures that are not legible.**

Signature _Kishore_    Date _1-3-07_

To initiate your FOIPA request, please returned the original request letter with the requested information. Please note that mail addressed to the FBI is delayed several weeks due to increased security procedures now in place. You must MAIL your request with your original signature, as the FBI is no longer accepting faxed signatures after the perjury statement and signatures that are not legible.

*[handwritten]* in Oklahoma County
CF-2003-1331, CF-2004-5785
and in Lincoln County, Oklahoma
CF-2003-123

Sincerely yours,

*[signature]* David M. Hardy

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                        )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        Civ. Action No. 07-1299 (RMC)
                                        )
                                        )
U.S. DEPARTMENT OF JUSTICE, <u>et al</u>.,  )
                                        )
            Defendants.                 )
                                        )

# Exhibit 25



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

January 18, 2007

MR. SUNDEEP KISHORE
**517067
LAWTON CRIMINAL FACILITY
8607 SOUTHEAST FLOWER MOUND ROAD
LAWTON, OK 73501

Request No.: 1067407- 000
Subject: KISHORE, SUNDEEP

Dear Requester:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

To promptly respond to requests, we concentrate on identifying main files in the central records system at FBI Headquarters. No records responsive to your FOIPA request were located by a search of the automated indices.

You may file an administrative appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

Enclosed for your information is a copy of the FBI File Fact Sheet.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                    )
                                    )
        Plaintiff,                  )
                                    )
              v.                    )        Civ. Action No. 07-1299 (RMC)
                                    )
U.S. DEPARTMENT OF JUSTICE, et al., )
                                    )
        Defendants.                 )

# Exhibit 26

1

# F.O.I. Appeal

Director                                                      3-5-07
Office of Information and Privacy
U.S. Department of Justice
1425 New York Ave. Site 11050
Washington D.C. 20530-0001

OFFICE OF INFORMATION
AND PRIVACY

MAR 23 2007

**RECEIVED**

RE: Request No. 1067407-000
Subject: Kishore Sundeep

I am appealing from the decision of
Mr. Hardy Section Chief Record - FBI, stating
"no records" responsive to my request were
found, as per his letter of Jan 18, 2007.

I have given the exact information - the case
numbers where the FBI Special Agents have
testified in CF-2003-1331 in Oklahoma County,
CF-2004-5785 also in Oklahoma County, OK,
and CF-2003-~~753~~ 00123 in Lincoln County
OK - and this stems from an FBI investigation
done in February, March of 2003 by the
FBI - OKC.
    The name of the Special Agents involved
are Mr. C. Wagner, Mr. Swareni,
Mr. Gillespie, Sgt. Bradford and the FBI

2

squad leader was supervisor SPECIAL Agent SCOTT CHAFIN, besides numerous other FBY Agents.

I am sure that these Agents filed some reports of this investigation, and of the various surveillance and, information got from the various "bugging techniques" used.

SPECIAL Agent SWARENS testified under oath that he testified at a federal grand jury hearing in OKC-.

It is impossible to believe that the FBI has "no records" concerning any of this.

There is no way I can get a fair trial when the FBI does not disclose the information it has.

I would request the FBI to release the information gathered from the investigation against me.
THANKING You.
Sincerely

PAGE 2-2.   Kishore  SUNDEEP- KISHORE
Kishore #517067 LCF 8607 S.E. FLOWER MOUND RD
LAWTON OK. 73501-9765

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUNDEEP KISHORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Action No. 07-1299 (RMC) |
| ) | |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

# Exhibit 27



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                          *Washington, D.C. 20530*

APR 0 6 2007

Mr. Sundeep Kishore
No. 517067
8607 SE Flower Mound Road
Lawton, OK 73501-9765

      Re: Request No. 1067407

Dear Mr. Kishore:

      This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation was received by this Office on March 23, 2007.

      The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number 07-1001. Please mention this number in any future correspondence to this Office regarding this matter.

      We will notify you of the decision on your appeal as soon as we can. We regret the necessity of this delay and appreciate your continued patience.

                        Sincerely,

                        Priscilla Jones
                        Supervisory Administrative Specialist

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUNDEEP KISHORE,                        )
                                        )
        Plaintiff,                      )
                                        )
            v.                          )        Civ. Action No. 07-1299 (RMC)
                                        )
                                        )
U.S. DEPARTMENT OF JUSTICE, et al.,     )
                                        )
        Defendants.                     )
                                        )

# Exhibit 28



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**JUN 1 9 2007**

Mr. Sundeep Kishore                    Re:    Appeal No. 07-1001
No. 517067                                     Request No. 1067407
8607 SE Flower Mound Road                      ADW:RMF
Lawton, OK  73501-9765

Dear Mr. Kishore:

        You appealed from the action of the Headquarters Office of the Federal Bureau of
Investigation on your request for access to records pertaining to yourself.

        After carefully considering your appeal, I am affirming the FBI's action on your request.
The FBI informed you that it could locate no records responsive to your request in its automated
indices.  I have determined that the FBI's response was correct.

        Although the FBI could locate no records responsive to your request at its Headquarters
Office, my staff has looked into this and found that the Oklahoma City Field Office might have
records responsive to your request.  If you have not done so already, I suggest that you submit a
new request directly to the Oklahoma City Field Office.  See 28 C.F.R. §§ 16.3(a), 16.41(a)
(2006) (requests for records held by FBI field offices must be submitted to the field offices
directly).  You may appeal any future adverse determination made by the FBI.  The address for
the Oklahoma City Field Office is:

                    Federal Bureau of Investigation
                    Oklahoma City Field Office
                    3301 W. Memorial Drive
                    Oklahoma City, OK  73134

        If you are dissatisfied with my action on your appeal, you may seek judicial review in
accordance with 5 U.S.C. § 552(a)(4)(B).

                                Sincerely,

                                *[signature]*

                                Janice Galli McLeod
                                Associate Director

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SUNDEEP KISHORE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 07-1299 (RMC) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) | |
| Defendants. | ) | |

# Exhibit 29



**U.S. Department of Justice**

Federal Bureau of Investigation

---

Washington, D. C. 20535-0001

August 21, 2007

Mr. Sundeep Kishore
**517067
Lawton Criminal Facility
Lawton, OK 73501

      Re: FOIPA No: 1067407-000
      Subject: Sundeep Kishore

Dear Mr. Kishore:

   This is to advise you that we are re-opening your captioned request. The Oklahoma City Field Office documents previously requested by you are now available for review and release determination.

   You were initially denied access to these documents pursuant to FOIA exemptions (b)(7)(A) and (b)(7)(C). Your subsequent request to the Oklahoma Field Office was forwarded to FBI Headquarters (FBIHQ). Upon receipt of your request, FBIHQ inadvertently searched our indices for Headquarters files only, and as a result erroneously responded to you with a no record determination. This letter is to correct the record and advise you that the assertion of (b)(7)(A) is no longer warranted.

   The Oklahoma City documents have been received at FBI Headquarters and are currently being scanned into our Freedom of Information Act Document Processing System.

   The FBI recognizes the delay in accurately responding to your request and, as a result, your request will be prioritized based on the date of your January 30, 2006 letter and processed for release accordingly.

      Sincerely yours,

      David M. Hardy
      Chief
      Record/Information
       Dissemination Section
     Records Management Division



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

MR. SUNDEEP KISHORE
**517067
LAWTON CRIMINAL FACILITY
8607 SOUTHEAST FLOWER MOUND ROAD
LAWTON, OK 73501

November 19, 2007

Subject: KISHORE, SUNDEEP

FOIPA No. 1067407- 001

Dear Requester:

      The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Explanation of Exemptions form:

| **Section 552** | | **Section 552a** |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☒(b)(2) | ☐(b)(7)(B) | ☒(j)(2) |
| ☒(b)(3)  FRCP, RULE 6 (e) | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☒(b)(7)(D) | ☐(k)(2) |
| _____ | ☒(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☒(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

320 **page(s)** were reviewed and 308 **page(s)** are being released.

☐ Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

    ☐ referred to the OGA for review and direct response to you.

    ☐ referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

☒ You have the right to appeal any denials in this release. Appeals should be directed in writing to the Director, Office of Information and Privacy, U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other

individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☒ See additional information which follows.

Enclosed are copies of documents from two main files, one cross-reference and an 11 page EOUSA referral that are responsive to your request. A cross-reference is the mention of you in a file relating to other individuals, or matters. When processing this reference, the only pages considered for release were the pages which mentioned you and any surrounding pages showing the context in which you were mentioned.

Pursuant to Title 28, Code of Federal Regulations, Sections 16.11 and 16.49, there is a fee of ten cents per page for duplication. No fees are assessed for the first 100 pages. Please remit a check or money order, payable to the Federal Bureau of Investigation in the amount of $20.80. Please include the above referenced FOIPA number with your payment.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
    Dissemination Section
Records Management Division

Enclosure(s)

**EXPLANATION OF EXEMPTIONS**

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could be reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could be reasonably expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)     testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)     material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ