# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**SUNDEEP KISHORE,**                    )
                                        )
            **Plaintiff,**              )
                                        )
      **v.**                            )      **Civil Action No. 07-1299 (RMC)**
                                        )
**U.S. DEPARTMENT OF JUSTICE,** *et al.,*)
                                        )
            **Defendants.**             )
_____)

## MEMORANDUM OPINION

In this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, plaintiff Sundeep Kishore sues the Department of Justice ("DOJ") and two DOJ components,

the Federal Bureau of Investigation ("FBI") and the Executive Office for United States Attorneys

("EOUSA"), for allegedly improperly withholding records responsive to his FOIA requests.

Defendants move collectively to dismiss the complaint pursuant to Federal Rule of Civil Procedure

12(b)(1) and (b)(6) and for summary judgment pursuant to Rule 56.  Upon consideration of the

parties' submissions and the entire record, and for the following reasons, the Court will deny

defendants' motion to dismiss and will grant in part and deny in part defendants' motion for

summary judgment.

## I.  BACKGROUND

*FBI Records*

In March 2005, Mr. Kishore requested from FBI Headquarters ("FBIHQ") "any and

all" information deemed vital to his due process rights.  Declaration of David M. Hardy ("Hardy

Decl.") ¶ 5 & Ex. 1.  Mr. Kishore indicated that the Oklahoma City Field Office ("OKFO") may have

records and that he had received no response to his request for similar records made to that office in December 2004. *Id*. After requesting and receiving additional materials from Mr. Kishore, the FBI performed a search by checking the Central Records System ("CRS") at FBIHQ. On April 15, 2005, the FBI informed Mr. Kishore that its search had located no responsive records. *Id*. ¶ 8 & Ex. 4. Mr. Kishore unsuccessfully appealed the "no records" response to DOJ's Office of Information and Privacy ("OIP"). *Id*. ¶ 11 & Ex. 7.

In August 2005 and October 2005, Mr. Kishore submitted FOIA requests to the OKFO for records pertaining to the FBI's investigation of him in 2003. *Id*. ¶¶ 16, 23. On September 8, 2005, and December 13, 2005, the FBI notified Mr. Kishore that the records he requested were protected from disclosure pursuant to FOIA exemptions 7(A) and 7(C).[1] *Id*. ¶¶ 18, 24 & Exs. 14, 20. Mr. Kishore appealed the September 8, 2005 decision and on August 31, 2007, was notified by OIP that his request was being remanded for further processing because Exemption 7(A) no longer applied. *Id*. ¶ 21 & Ex. 17. On October 25, 2007, OIP informed Mr. Kishore that it was vacating its remand decision because of his filing of this lawsuit on July 23, 2007. *Id*. ¶ 22 & Ex. 18.

On January 30, 2006, Mr. Kishore submitted yet another FOIA request to the OKFO for records about himself, which included a lengthy list of questions about the FBI's investigation of him. *Id*. ¶ 26. On January 18, 2007, the FBI informed Mr. Kishore that a search of "the automated indices of the CRS at FBIHQ failed to locate" responsive records. *Id*. ¶ 29. On June 19, 2007, OIP notified Mr. Kishore that it was affirming the FBIHQ's "no records" response but added that the OKFO may have responsive records. It directed Mr. Kishore to submit a new request directly with the OKFO at the address provided and advised him of his appeal rights. Hardy Decl.

---

[1] *See* 5 U.S.C. § 552(b).

¶ 32.  On August 21, 2007, however, the FBI acknowledged its mistake in searching only the files at FBIHQ, reopened Mr. Kishore's January 30, 2006 request, and eventually located responsive records at the OKFO.  *Id.*  ¶¶ 33-34.  On November 19, 2007, the FBI informed Mr. Kishore that it had located 320 pages of responsive records, of which 308 pages were being released to him.  The FBI assessed a duplication fee of $20.80 for records exceeding the first 100 pages.  The FBI withheld 12 pages of material under Privacy Act Exemption (j)(2), *see* 5 U.S.C. § 552a, and FOIA exemptions 2, 3, 5, 6, 7(C), 7(D), and 7(E). Hardy Decl. ¶ 34 & Ex. 29.  The FBI has no record of Mr. Kishore's payment of the assessed fee. *Id*. ¶ 35.

### EOUSA Records

In March 2005, EOUSA received from its office in the Western District of Oklahoma ("WDOK") Mr. Kishore's request dated March 23, 2005, inquiring "to which U.S. Attorney FBI S.A. Swarens and Wagner reported [], in connection with the investigation, under this file no., and which supposedly ended on 3-1-03."  Declaration of John F. Boseker ("Boseker  Decl."), Ex. A.  On April 15, 2005, EOUSA notified Mr. Kishore that he needed to provide proof of identity before his request could be fulfilled, informed him of his appeal rights and closed the FOIA request file. Boseker Decl. ¶¶ 7-8 & Ex. B.

Meanwhile, on April 12, 2005, EOUSA received a letter from Mr. Kishore requesting expedition of his request forwarded from the WDOK.  *Id*. ¶ 9 & Ex. C.  On August 8, 2005, EOUSA informed Mr. Kishore that a search of the files at the WDOK located no responsive records and further informed him of his appeal rights.  *Id*. ¶ 12 & Ex. F.  Mr. Kishore unsuccessfully appealed the "no records" response to OIP.  *Id*. ¶¶ 13-15.

On February 6, 2006, EOUSA received from the WDOK Mr. Kishore's letter containing several questions concerning the FBI's investigation of him in 2003.  EOUSA responded

that the FOIA applies to existing records and that  it was not required "to conduct research, create

new records or answer questions disguised as FOIA requests."  Boseker Decl., Ex. K.  Plaintiff

unsuccessfully appealed this decision to the OIP.  *Id.*, Exs. M, O.

In a letter dated May 21, 2007, Mr. Kishore complained to EOUSA about the lack

of a response to his request made "in March 2007" for information pertaining to the FBI's

investigation "supervised by" the WDOK, which resulted in criminal charges against him in

Oklahoma.  Boseker Decl., Ex. P.  He requested a search of "your Central System and your core of

five file keeping system, specifically the criminal flag master-filed, and the criminal immediate

declination file, and the criminal charged file."  *Id.*  On July 23, 2007, EOUSA informed Mr. Kishore

that he needed to provide a certification of identity and a sufficient description of the records sought.

It further advised Mr. Kishore of his appeal rights and closed the file.  *Id.*, Ex. Q.

During the course of this litigation, the WDOK conducted "another search for all of

Mr. Kishore's records" and located responsive records.  Boseker Decl. ¶¶ 25-26.  On September 5,

2007, EOUSA released to Mr. Kishore 14 unredacted pages and one redacted page of information.

It withheld portions from the one page pursuant to FOIA Exemption 5 and Privacy Act Exemption

(j)(2).  In addition, EOUSA referred 11 pages to the FBI to determine the releasability of those

records.  Boseker Decl., Ex. S.  The FBI released the referred pages as part of the aforementioned

308 pages it released to plaintiff on November 19, 2007.

## II.  LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is

appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as

a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party.  *Anderson*, 477 U.S. at 255; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).  The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.  The mere existence of a factual dispute is not enough to bar summary judgment, and the non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To be material, the fact must be capable of affecting the outcome of the litigation; to be genuine, the issue must be supported by admissible evidence sufficient for a reasonable trier of fact to find in favor of the nonmoving party.  *See Anderson*, 477 U.S. at 247-48; *Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). Finally, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion."  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir.1992) (*quoting Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir.1982)).

Summary judgment is the frequent vehicle for resolution of a FOIA action because

the pleadings and declarations in such cases often provide undisputed facts on which the moving

parties are entitled to judgment as a matter of law.  *McLaughlin v. U.S. Dep't of Justice*, 530 F.

Supp.2d 210, 212 (D.D.C. 2008) (citations omitted).  Agencies may rely on affidavits or declarations

of government officials, as long as they are sufficiently clear and detailed and submitted in good

faith.  *See Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The Court

may award summary judgment solely on the basis of information provided in such affidavits or

declarations when they describe "the documents and the justifications for nondisclosure with

reasonably specific detail, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981);

*see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

A "court shall accord substantial weight to an affidavit of an agency concerning the agency's

determination as to . . . subsection (b)" exempted material.  5 U.S.C. § 552(a)(4)(B).

An inadequate search for records also constitutes an improper withholding under the

FOIA.  *See Maydak v. U.S. Dep't of Justice*, 254 F. Supp.2d 23, 44 (D.D.C. 2003) (citations

omitted).  Thus, when an agency's search is questioned, the Court must determine the adequacy of

the agency's search, guided by principles of reasonableness.  *See Campbell v. United States Dep't

of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).  The agency is required "to make a good faith effort to

conduct a search for the requested records, using methods which can reasonably be expected to

produce the information requested."  *Oglesby*, 920 F.2d at 68.  Such methods include following

through "on obvious leads."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir.

1999) (citation omitted).  Although an agency need not search every record system, it "cannot limit

its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.   Because the agency is the possessor of the records and is responsible for conducting the search, the Court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena*, 180 F.3d at 326 (quoting *Oglesby*, 920 F.2d at 68).   Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search.   *Id*.   "[T]he [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search," however. *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 390-91 (D.C. Cir. 2007)  (citations omitted).

## III.  DISCUSSION

1.  <u>Defendants' Motion to Dismiss</u>

Defendants argue first that subject matter jurisdiction is lacking because Mr. Kishore failed to exhaust his administrative remedies by paying the assessed fee of $20.80 for the FBI's records exceeding 100 pages.   Although a FOIA requester is required to exhaust administrative remedies prior to seeking judicial review, his failure to do so does not deprive the Court of subject matter jurisdiction.   *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) ("exhaustion is a prudential consideration rather than a jurisdictional prerequisite").   Rather, "as a jurisprudential doctrine, [the] failure to exhaust precludes judicial review" if a merits determination would undermine the purpose of permitting an agency to review its determinations in the first instance.   *Hidalgo v. FBI*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003).   The Court therefore denies defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

The Court may reach the merits of a FOIA claim notwithstanding one's failure to

exhaust if the "purposes and policies underlying the exhaustion requirement" are not undermined. *Wilbur*, 355 F.3d at 677. The exhaustion requirement is intended "to prevent premature interference with agency processes, to give the parties and the court benefit of the agency's experience and expertise and to compile an adequate record for review." *Id.*; *see also Center for Biological Diversity v. Gutierrez*, 451 F. Supp.2d 57, 66-67 (D.D.C. 2006) (discussing purposes of exhaustion). Given the following developments, the Court finds it appropriate to proceed to the merits of Mr. Kishore's claim. First, it was during this litigation that the FBI discovered error in its initial processing of Mr. Kishore's request, conducted another search and located records not previously found. Second, defendants claim that they have since released to Mr. Kishore all non-exempt records responsive to his FOIA requests. Third, defendants, through the Hardy and Boseker declarations, have provided a record from which the Court may determine the propriety of any withheld material. Fourth, the OIP closed Mr. Kishore's administrative file upon his filing of this lawsuit.

### 2. Defendants' Motion for Summary Judgment

In two submissions, namely, Plaintiff's Response to Declaration of John F. Boseker [Dkt. No. 27] and Plaintiff's Response to Defendants' Motion to Dismiss [Dkt. No. 29], Mr. Kishore challenges defendants' search for responsive records, their claimed exemptions and their delay in providing records.[2] As to the latter point, defendants rightly counter that a delayed release of records provides no basis for relief under the FOIA because "however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform." *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

---

[2] In what appears to be an electronic scanning error, document number 27 also contains Plaintiff's Reply to Declaration of David M. Hardy, FBI Chief Record (cited hereafter as Pl.'s Resp. to Hardy Decl.).

*FBI Records*

1. <u>Adequacy of the Search</u>

Mr. Kishore questions the FBI's search because the FBI's release of 308 pages did not include certain items referenced in the transcript of his preliminary hearing held in the criminal proceeding. Pl.'s Res. to Mot. at 2-3 & Attach. (Transcript of Preliminary Hearing held August 22, 2006). An agency's disclosure obligations under the FOIA, however, extend only to records in its custody and control at the time of the FOIA request. *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). Thus, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted).

Mr. Hardy states that the FBI "utilizes the CRS [Central Records System] to conduct searches that are likely to yield documents responsive to FOIA/Privacy Act requests." Hardy Decl. ¶ 38. He provides a comprehensive description of the CRS and the methods used to retrieve information from FBI Headquarters and field offices. Hardy Decl. ¶¶ 38-46. Mr. Hardy then states that staff searched "the automated indices for responsive documents at [Headquarters] and OKFO . . . using the name 'Sundeep Kishore'," as well as Mr. Kishore's date of birth and social security number. *Id*. ¶ 47. The name search included "a phonetic breakdown" to locate records by "phonetic sounds of the last and first name relating to . . . 'Kishore, Sundeep' and 'Kishore, S.'." *Id*. This search located one main file, two subfiles, one "control file," and one "cross reference." *Id*.; *see* ¶ 40 (explaining file categories). In addition, a search of the FBI's electronic surveillance indices maintained at Headquarters by the foregoing search terms identified "four [] intercepts." *Id.* ¶ 48.

Mr. Kishore speculates that the FBI has failed to provide him with pertinent

9

information because of "inadvertent actions, or maybe a policy of using this tactic to delay as much as possible in releasing information." Pl.'s Resp. to Hardy Decl. at 1.  But he has not proffered any evidence to rebut the presumption of good faith accorded agency affidavits, "which will withstand purely speculative claims about existence and discoverablility of other documents." *Ground Saucer Watch, Inc. v. C.I.A.*, 692 F .2d 770, 771 (D.C. Cir. 1981).  Simply put, Mr. Kishore has provided no basis for questioning the FBI's search, which the Court finds was adequately structured to locate all responsive records.

### 2.  Claimed Exemptions

The FBI released 308 pages of responsive records and withheld 12 pages in their entirety.  It withheld information under FOIA exemptions 2, 3, 6, 7(C), 7(D) and 7(E).  Mr. Kishore generally contests the FBI's justification for withholding information.

### *Exemption 2*

FOIA Exemption 2 exempts records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  To qualify for this exemption, the document must not only be internal, but must also relate to an existing agency rule or practice.  *See Schwaner v. Department of the Air Force*, 898 F.2d 793, 794-98 (D.C. Cir. 1990).  Hence, the agency must show (1) that the material withheld falls within the terms of the statutory language and, if it does, (2) that "disclosure may risk circumvention of agency regulation," *Department of the Air Force v. Rose*, 425 U.S. 352, 369 (1976), or that "the material relates to trivial administrative matters of no genuine public interest." *Founding Church of Scientology v. Smith*, 721 F.2d 828, 830 n. 4 (D.C. Cir. 1983). Depending on the nature of the information, documents may fall within either the "high 2" category or the "low 2" category.  "High 2" exempts from disclosure documents relating to substantive internal matters. *See Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  To be protected by

10

the "high 2" exemption, information must be "predomina[ntely] internal[]" and must "significantly risk circumvention of agency regulations or statutes."  *See Crooker v. BATF*, 670 F.2d 1051, 1074 (D.C. Cir. 1981) (*en banc*).  Essentially under "high 2," an agency is allowed to withhold records in order to protect techniques and procedures for law enforcement investigations or prosecutions.  *Id.* "Low 2" information refers to internal procedures and practices of an agency where disclosure would constitute an administrative burden unjustified by any genuine and significant public benefit. *Martin v. Lauer*, 686 F.2d 24, 34 (D.C. Cir. 1982).

The FBI invoked the "low 2" category to redact telephone and facsimile numbers that are "routinely used by FBI Special Agents and support employees during the performance of their investigative duties," Hardy Decl. ¶ 57, and that have "no legitimate public interest."  *Id.* ¶ 58.   It invoked the "high 2" category to redact portions of Form FD-515, which is regularly used by Special Agents to report progress on an assignment. *Id.* ¶ 59.  The form includes a section for Special Agents to detail and evaluate search techniques using a numerical rating system.  The "entire rating column [was] deleted to protect from release the various techniques used in the investigation of plaintiff and others . . . to prevent future circumvention of the law by criminals." *Id.*   For similar reasons,  the  FBI applied this exemption, in conjunction with Exemption 7(E), to details about its "arrest and search operations" because their disclosure "could jeopardize the effectiveness of any future [such operations] by providing [targets] with a birds [sic] eye view of what to anticipate with relation to FBI arrest and search procedures."  *Id.* ¶ 60.

Mr. Kishore has not contested the FBI's otherwise proper justification for redacting the foregoing material under Exemption 2.

### Exemption 3

FOIA Exemption 3  covers records that are "specifically exempted from disclosure

by statute . . . provided that such statute either "(A) [requires withholding] in such a manner as to leave no discretion on the issue," or "(B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see Senate of the Commonwealth of Puerto Rico v. U. S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

The FBI applied this exemption to federal grand jury information, "[s]pecifically, [] Grand Jury subpoenas [,] the names, identifying information of individuals subpoenaed to testify . . . and information that identifies specific records subpoenaed by the Federal Grand Jury." Hardy Decl. ¶ 62 & Ex. 30 at 179-89, 249-253, 281. The Federal Rules of Criminal Procedure prohibit disclosure of "matters occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2); *see In re: Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 498-501 (D.C. Cir. 1998). Criminal Rule 6(e) qualifies as a statute under Exemption 3, because it was affirmatively enacted by Congress. *See Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856, 867-68 (D.C. Cir. 1981). The Court of Appeals for the District of Columbia Circuit has limited the grand jury exception to material, which, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Senate of the Commonwealth of Puerto Rico*, 823 F.2d at 582 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980)*(en banc)*). The FBI properly determined that "disclosure [of the foregoing redacted information] would clearly violate the secrecy of the grand jury proceedings and could reveal the inner working of the grand jury that considered [the criminal] case." Hardy Decl. ¶ 62.

Mr. Kishore asserts that the "Jencks Act, as per 18 U.S.C. § 3500(b), enables a defendant to obtain transcripts of grand jury testimony by a government trial witness when that

testimony relates to matters explored on direct examination of the government witness at trial." Pl.'s

Res. to Boseker Decl. at 2.  This argument is immaterial to a FOIA claim because "the Federal Rules

of Criminal Procedure and the FOIA provide two independent schemes for obtaining information.

. . .  FOIA was not intended as a device . . . to enlarge the scope of discovery beyond that already

provided by the Federal Rules of Criminal Procedure." *North v. Walsh*, 881 F.2d 1088, 1094 (D.C.

Cir. 1989) (following *United States v. Murdock*, 548 F.2d 599 (5th Cir. 1977)) (internal citations and

quotation marks omitted); accord *Cucci v. Drug Enforcement Admin.*, 871 F. Supp. 508, 514 (D.D.C.

1994) (rejecting argument that the government's obligation to disclose exculpatory information to

a criminal defendant "trumps the legitimate decision of a federal agency to withhold information

under a particular exemption of the FOIA") (discussing *Johnson v. U.S. Dep't of Justice*, 758 F.

Supp. 2, 5 (D.D.C. 1991)); *see also Citizens for Responsibility and Ethics in Washington v. U.S.

Dep't of Homeland Sec.*, 532 F.3d 860, 866 (D.C. Cir. 2008) (finding "a profound difference . . .

between subpoenas and discovery requests in civil or criminal cases . . . and routine FOIA cases

involving records that may or may not touch on presidential or vice presidential activities").

Mr. Kishore has not created a triable issue on the FBI's otherwise proper application

of Exemption 3 to the redacted grand jury material.

### *Exemption 7(C)*

Invoking FOIA Exemption 6 in conjunction with Exemption 7(C), the FBI redacted

information likely to identify the following categories of individuals:  FBI special agents and support

personnel, non-FBI federal law enforcement employees, state and local law enforcement personnel,

victims, third parties who provided information, and third parties merely mentioned in the files.

Hardy Decl. ¶¶ 63-76.  Because the records at issue were compiled during the FBI's "criminal

investigation [of Mr. Kishore] into a possible solicitation to commit murder," Hardy Decl. ¶ 79, the

13

Court will address only the FBI's invocation of Exemption 7(C) applicable to law enforcement records.[3]

Exemption 7(C) protects from disclosure information compiled for law enforcement purposes when its release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). A criminal law enforcement agency "warrants greater deference" to claims under Exemption 7(C). *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987). Information about individuals that does not directly reveal the operations or activities of the government – which is the focus of FOIA – "falls outside the ambit of the public interest that the FOIA was enacted to serve" and may be protected under Exemption 7(C). *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989). Exemption 7(C) protects the identities of suspects, witnesses and other persons of investigatory interest who are identified in agency records in connection with alleged criminal activity. *Computer Professionals for Soc. Responsibility v. U.S. Secret Service*, 72 F. 3d 897, 904 (D.C. Cir. 1996) (noting "strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity" (quoting *Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990)). For the same kinds of protective reasons, the names of law enforcement officers who work on criminal investigations have usually been protected against release by Exemption 7(C). *Lesar v. DOJ*, 636 F.2d 472, 487 (D.C. Cir. 1980). Because third-party identifying information is "categorically exempt" from disclosure under Exemption 7(C), *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995), the FBI properly

---

[3] *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 758 (1989) (finding "Exemption 7(C)'s privacy language broader than the comparable language in Exemption 6").

redacted it from the released documents.

Disclosure of the otherwise protected information may be compelled upon a showing that the public interest outweighs the privacy interests at stake, *i.e.*, that the withheld information is necessary to confirm or refute "compelling evidence that the agency denying the FOIA request is engaged in illegal activity." *Quinon v. FBI*, 86 F.3d 1222, 1231 (D.C. Cir. 1996) (internal citations omitted). The public interest "sought to be advanced [must be] a significant one more specific than having the information for [one's] own sake," however. *National Archives and Records Administration v. Favish*, 541 U.S. 157, 172 (2004). To obtain disclosure, Mr. Kishore may not rests on "a bare suspicion" but rather "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 174. Otherwise, the requirement to balance the asserted privacy interests against the asserted public interests does not come into play. *Id.* at 175. Mr. Kishore has not pinpointed a public interest, but the most favorable interpretation of his opposition is that disclosure is warranted to challenge his criminal conviction. It is established, however, that the public interest in disclosure "does not include helping an individual obtain information for his personal use" to overturn a conviction. *Oguaju v. U.S.*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 124 S.Ct. 1903 (2004), *reinstated*, 378 F.3d 1115 (D.C. Cir. 2004) (citation omitted).

Mr. Kishore has not presented any evidence to create a triable issue on the FBI's otherwise proper invocation of Exemption 7(C).

*Exemption 7(D)*

FOIA Exemption 7(D) allows the withholding of records if their disclosure "could reasonably be expected to disclose the identity of a confidential source. . . ." 5 U.S.C. § 552(b)(7)(D). "[I]n the case of a record or information compiled by criminal law enforcement

authority in the course of a criminal investigation," the agency may also withhold "information furnished by a confidential source." *Id.* The "paramount objective" of this exemption "is to keep open the Government's channels of confidential information." *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1212 (D.C. Cir. 1986).

When invoking Exemption 7(D), an agency must demonstrate, through the use of reasonably detailed affidavits, that the information was compiled for a law enforcement purpose, that an informant provided the information under either an express or implied promise of confidentiality and that disclosure could reasonably be expected to disclose the source's identity. *DOJ v. Landano*, 508 U.S. 165, 171-72 (1993). An express assurance of confidentiality is shown by an agency's proffer of "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell*, 164 F.3d at 34 (quoting *Davin v. United States Dep't of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995)). Such evidence may take many forms, such as notations on the face of the withheld document, an official's personal knowledge about the source, a statement from the source, or documents discussing practices or policies for dealing with the source at issue or similarly situated sources. *Id.* When the agency claims an implied assurance of confidentiality, the proper inquiry is "whether the particular source spoke with an understanding that the communication would remain confidential." *Landano,* 508 U.S. at 172. An implied assurance of confidentiality may be inferred from evidence showing the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target. *Id; Computer Professionals for Social Responsibility*, 72 F.3d at 905-06.

Under Exemption 7(D), the FBI withheld identifying information of and information supplied by a third-party under an express assurance of confidentiality and by a third party under an implied assurance of confidentiality. It also withheld confidential information provided by state and

16

local law enforcement agencies.

The express grant of confidentiality to an individual interviewed about Mr. Kishore's criminal activity is properly "evidenced by the word 'PROTECT' when [the] individual's name is referenced in the file." Hardy Decl. ¶ 100. The FBI relies on "the violent nature of the crime for which plaintiff was being investigated . . . murder for hire" to justify its claim of an implied grant of confidentiality with regard to another third party who had provided information about Mr. Kishore's criminal activity. *Id*. ¶ 102. "The pertinent question is whether the violence and risk of retaliation that attend this type of crime warrant an implied grant of confidentiality." *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000). It may be reasonably inferred that an individual conveying information about a murder plot would speak in confidence for fear of reprisal from the target of the investigation.

Exemption 7(D) specifically includes among protected sources "a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis." Therefore, the FBI properly withheld "investigative information" obtained from state and local law enforcement agencies that was "provided on a confidential basis . . not intended for dissemination outside of the law enforcement community." Hardy Decl. ¶ 103; *see Putnam v. U.S. Dep't of Justice*, 873 F. Supp. 705, 717 (D.D.C. 1995) (finding reasonable inference that "information provided by a cooperating law enforcement agency" was supplied "with the understanding that it would remain confidential").

Mr. Kishore has not presented any evidence to create a genuine issue of material fact on the FBI's proper application of Exemption 7(D) to the confidential source material.

### Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records that "would

17

disclose techniques and procedures for law enforcement investigation . . . or would disclose guidelines for law enforcement investigations . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  The FBI asserted this exemption in conjunction with Exemption 2 to redact information from Form FD-515.  Hardy Decl. ¶ 105.  This Court has previously  affirmed the FBI's justification for withholding such information under Exemption 7(E).  *See Putnam*, 873 F. Supp. at 717; *Perrone v. FBI*, 908 F. Supp. 24, 28 (D.D.C. 1995); *Pray v. Dep't of Justice*, 902 F. Supp. 1, 4 (D.D.C. 1995), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. 1996).  Mr. Kishore has provided no grounds for a departure here.

The FBI also applied this exemption in conjunction with Exemption 2 to "the detailed description of the manner in which the FBI arranged and executed arrest and search operations" during its investigation of Mr. Kishore.  Hardy Decl. ¶ 106.  Because the Court has found this information properly withheld under Exemption 2, it will not address the propriety of withholding the same information under Exemption 7(E).

### Segregability of FBI Records

The Court of Appeals for the District of Columbia Circuit has held that a District Court in a FOIA case has "an affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  This directive stems from the requirement under 5 U.S.C. § 552(b) that any "reasonably segregable" information must be disclosed – that is, information that can be separated from the rest of a document – even if the document is otherwise exempt from disclosure, unless the exempt and non-exempt portions are "inextricably intertwined with exempt portions." *Id.*; *Mead Data Ctr., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  An agency must provide a "detailed justification" and not just "conclusory statements" to prove that it has released all reasonably

18

segregable information.  *Mead Data Center, Inc.*, 566 F.2d at 261.

Mr. Hardy concludes that "the FBI has released all reasonably segregable, nonexempt information to plaintiff," Hardy Decl. ¶ 107, but he has not identified the 12 pages that were withheld in their entirety and discussed the applicable exemptions.  Hence, the Court is without sufficient evidence to make a segregability finding with respect to those pages.

### EOUSA Records

Since the filing of this action, EOUSA has adequately searched for records, *see* Bosker Decl. ¶ 33, located responsive records in the WDOK, released 15 pages to plaintiff, and referred 11 pages to the FBI, which, in turn, has released them to plaintiff.  EOUSA's release consisted of 14 unredacted pages and one redacted page.  *Id.* ¶¶ 25-27.  Thus, the only issue remaining to be resolved with respect to EOUSA's records is whether EOUSA properly withheld portions of the one record under FOIA Exemption 5.

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters."  *Burka v. United States Dep't of Health and Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996); accord *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1112 (D.C. Cir. 2007) (citing cases).  Describing the redacted information as attorney work product and deliberative process material, EOUSA withheld information that "set forth and identified [the assistant United States attorney's] reasons and rationale for the immediate declination of prosecution by the federal government."  Boseker Decl. ¶ 36.  The attorney work product "reflect[ed] such matters as trial preparation [and] strategy, interpretations, and personal evaluations and opinions

pertinent to Mr. Kishore's criminal case." *Id.* ¶ 37.  The deliberative process material contained "predecisional communications among government personnel such as discussions of various litigation issues, alternatives, and strategies." *Id.* ¶ 38.  EOUSA properly applied Exemption 5 to the redacted material. *See Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)) (The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'"); *Heggestad v. United States Dep't of Justice*, 182 F. Supp.2d 1, 7 (D.D.C. 2000) ("The primary purpose of [the attorney work product privilege] is to protect against disclosure the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation.") (citing Fed. R. Civ. P. 26(b)(3)).  The Court therefore grants judgment to the defendants on this claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court denies the defendants' Rule 12(b)(1) motion to dismiss, grants the defendants' motion for summary judgment on the release of redacted records, and denies without prejudice the defendants' motion for summary judgment on the FBI's withholding of 12 pages of records in their entirety.  A separate Order accompanies this Memorandum Opinion.

Date: September 8, 2008                        _____/s/_____
                                              ROSEMARY M. COLLYER
                                              United States District Judge